UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  16-cv-80502-BLOOM/Valle

JUSTIN BOUTON,

    Plaintiff,

vs.

OCEAN PROPERTIES, LTD.,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Ocean Properties, LTD.'s ("Defendant") Motion to Dismiss, ECF No. [24] (the "Motion"), and Defendant's Request for the Court to Take Judicial Notice of Public Records, ECF No. [25] (collectively, the "Motions"). The Court has carefully reviewed the record, the parties' briefs, and the applicable law.  For the reasons that follow, the Motions are granted.

    **I.**    **BACKGROUND**

Plaintiff Justin Bouton ("Plaintiff") brings a lawsuit "individually and on behalf of others similarly situated" against Defendant for Defendant's alleged violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended ("FCRA").  ECF No. [16] ¶ 1.  Plaintiff initially filed a Complaint on April 1, 2016, which he later amended.  *See* ECF Nos. [1], [16].  The instant Motion seeks to dismiss the First Amended Complaint, ECF No. [16].

In the First Amended Complaint, Plaintiff claims that "Defendant, Ocean Properties, Ltd. [("OPL")] . . . is a Maine corporation whose principal address is 1001 E. Atlantic Ave., Delray

Beach, FL 33483 . . . [that] holds itself out as one of the largest and most dynamic privately held hotel management and development companies in North America." ECF No. [16] ¶¶ 5, 7. According to Plaintiff, Defendant's "hotel properties comprise over a hundred hotels and 17,000 guest rooms, which are booked by thousands of customers each year," and which Defendant "staffs . . . with individuals it recruits and employs, including those individuals who are responsible for generating point of sale receipts, such as front desk agents and bartenders." *Id.* ¶¶ 7-8. Plaintiff states that "[o]n information and belief, OPL owns and controls the hotel properties it manages, or OPL's officers and directors own and control the hotel properties through other entities they own and control, including the Jupiter Beach Resort & Spa" (the "Resort"). *Id.* ¶ 9. "Defendant owns and operates the website www.oplhotels.com," which Plaintiff claims "refers to the Jupiter Beach Resort and Spa as one of its many resort and hotel offerings." *Id.* ¶ 11. Plaintiff claims that at all relevant times, "Defendant was acting by and though its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant." *Id.* ¶ 36.

Plaintiff alleges that on or about March 9, 2016, he used his Visa credit card to pay for his stay at the Resort, "one of Defendant's 'Opal Collection' of resorts." *Id.* ¶ 34. "[U]pon checking out of the hotel Plaintiff was provided with an electronically printed receipt generated from a point of sale terminal device, bearing the expiration date of his credit card." *Id.* ¶ 35. Plaintiff claims that "[i]t is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – i.e., immediately upon receipt of credit card payment," and that "Defendant knowingly and intentionally includes the expiration date of the credit card on its electronically printed receipts." *Id.* ¶¶ 38-39. Plaintiff claims that by issuing the

non-compliant receipt, Defendant's conduct was in "willful and reckless disregard for federal law and the rights of the Plaintiff." *Id.* ¶ 37. Plaintiff brings one count against Defendant for violation of 15 U.S.C. § 1681(c)(g), alleging that "Defendant is liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs." *Id.* ¶¶ 37, 62. Plaintiff defines the proposed class as:

> (i) All persons in the United States (ii) who, when making payment pursuant to a purchase made at one of Defendant's hotels, (iii) made such payment using a credit or debit card (iv) and were provided with a printed receipt (v) which displayed the expiration date of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.

*Id.* ¶ 46.

Defendant initially filed a motion to dismiss the original Complaint, which the Court denied as moot following Plaintiff's filing of the First Amended Complaint. *See* ECF Nos. [9], [17]. Defendant now moves to dismiss the First Amended Complaint with prejudice on a variety of grounds, addressed below. *See* ECF No. [24]. Plaintiff's Response, and Defendant's Reply, timely followed. *See* ECF Nos. [38], [43].

## II. LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; see *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. See *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III. DISCUSSION

Defendant moves to dismiss the Amended Complaint on four primary grounds. First, Defendant claims that it is not the proper Defendant in this matter, as demonstrated by "certified public records of Palm Beach County and records of the State of Florida." ECF No. [24] at 2. Defendant moves the Court to consider these public records. *See* ECF No. [25]. A court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents does not convert a motion to dismiss into one for summary judgment. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (Consideration of "public records that were not subject to reasonable dispute because they were capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned" appropriate on motion to dismiss) (internal quotations omitted); *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider" without "converting a motion to dismiss into a motion for summary judgment."). Plaintiff does not dispute the authenticity or accuracy of the attached public records. *See* ECF No. [38] at 2 n.1. Accordingly, the Court grants Defendant's Motion, ECF No. [25], and will consider the relevant documents attached to the Motion, ECF No. [24], at Exhibits A through D.

In the alternative, Defendant argues that the Court must dismiss the Amended Complaint because Plaintiff has failed to attach a copy of the alleged "receipt" at issue. In addition, Defendant argues that the Amended Complaint is deficient as a matter of law, and that Plaintiff lacks standing to bring the asserted claims. The Court addresses each argument in turn.

### A. Defendant Ocean Properties, Ltd.'s Liability

Congress enacted FACTA, an amendment to the Fair Credit Reporting Act, in an effort to "protect[ ] consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc*., 564 F.3d 1301, 1306 (11th Cir. 2009). FACTA requires the "[t]runcation of credit card and debit card numbers" in certain instances:

(1) In general

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(2) Limitation

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

15 U.S.C. § 1681c(g)(1)-(2). Violators of this section are subject to civil liability. *See Torongo v. Roy*, 2016 WL 1388852, at *2 (S.D. Fla. Apr. 6, 2016). It is axiomatic that a FACTA complaint must sufficiently allege that the listed Defendant is liable for the alleged wrong. Defendant claims that the Amended Complaint fails to so allege because Defendant OPL does not actually "own, operate, or control the Resort." ECF No. [24] at 5. Instead, according to Defendant, that distinction belongs to "Oprock Jupiter Fee LLC" who owns the Resort, Oprock Jupiter TRS, LLC, who leases the "hotel complex" of the Resort, and GHM Jupiter, LLC, who manages the "day-to-day operations of the hotel at the Resort." *Id.* at 5-6. These facts, according to Defendant, require that the Court dismiss the Amended Complaint with prejudice. Plaintiff does not meaningfully challenge Defendant's factual contentions in his Response, but

vigorously argues that Defendant is liable for the alleged FACTA violation under theories of both direct and vicarious liability.  *See* ECF No. [38] at 7.

At this stage of proceedings, Plaintiff need only plausibly allege that Defendant is liable for the claimed FACTA violation.  However, on a motion to dismiss, a court properly analyzes issues of corporate-ownership and subsidiary liability without transforming the motion into one for summary judgment.  *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1395 (S.D. Fla. 2014); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1309 (S.D. Fla. 2003).  As the basis for Defendant's liability, Plaintiff alleges in the Amended Complaint that

> On information and belief, OPL owns and controls the hotel properties it manages, or OPL's officers and directors own and control the hotel properties through other entities they own and control, including the Jupiter Beach Resort & Spa which Plaintiff attended and received the FACTA non-compliant receipt.

ECF No. [16] ¶ 9.  Plaintiff argues that "OPL made numerous public representations on its website confirming that it operates the Jupiter Beach Resort, as well as other properties," reflected in the Amended Complaint.  ECF No. [38] at 3.  Specifically, the Amended Complaint alleges that:

> OPL was founded by Tom Walsh who . . . [i]n the early-1970s . . . purchased five hotels in Florida and formed what is known as 'Ocean Properties Hotels Resorts & Affiliates,' which was incorporated in Maine in 1975 as 'Ocean Properties, Ltd.' . . . OPL's hotel properties comprise over a hundred hotels and 17,000 guest rooms, which are booked by thousands of customers each year.
>
> OPL staffs the hotels with individuals it recruits and employs, including those individuals who are responsible for generating point of sale receipts, such as front desk agents and bartenders.  OPL even recruits for and provides manager training opportunities.
>
> On information and belief, OPL owns and controls the hotel properties it manages, or OPL's officers and directors own and control the hotel properties through other entities they own and control, including the Jupiter Beach Resort & Spa which Plaintiff attended and received the FACTA non-compliant receipt.

>A March 19, 2015 article in *The Island Now*, discussed Defendant's addition of its Opal Collection of properties, including the Jupiter Beach Resort & Spa, by stating that '[Defendant] owns and operates some of our favorite hotels.'
>
>A brochure of Defendant's 'Opal Collection' of properties prominently identifies 'Ocean Properties Ltd.' as affiliated with (and/or owner of) those 'Hotels and Resorts.' The Opal Collection website's terms and conditions also refers to 'Ocean Properties, Ltd.' as the entity which must be contacted regarding the materials displayed on its website
>
>Upon information and belief, Defendant owns and operates the website www.oplhotels.com, which uses the 'Ocean Properties Hotels Resorts & Affiliates' business name. Under the website's tab 'Portfolio' (subheading 'Florida East Coast') it refers to the Jupiter Beach Resort and Spa as one of its many resort and hotel offerings.
>
>In a February 2016 article reporting on the hiring of a new General Manager at the Jupiter Beach Hotel and Spa, Robert Grossman, the article reflected on Mr. Grossman's past affiliation with the 'Ocean Properties, Ltd.' resort in Key West, Florida, and his excitement to continue with 'the OPL family' at Jupiter.

ECF No. [16] ¶¶ 6-12. As illustrated above, many of the factual allegations in the Amended Complaint are not specific to the Resort at issue in this case, and originate from a website and brochure that forms the basis of Plaintiff's claim that Defendant "owns and operates" the Jupiter Beach Resort and Spa. True, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible." *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Ins.*, 2013 WL 1176252, at *3 (S.D. Fla. Mar. 20, 2013). However, Plaintiff's overwhelming reliance on internet marketing materials and third-party editorials as the basis for his "information and belief" that Defendant "owns and operates" the Resort seemingly crumbles upon review of the public records attached to Defendant's Motion. Defendant argues that the "certified public records . . . show conclusively that OPL does not own, operate, or control the Resort." ECF No. [24] at 4-5. A review of those records show that (1) the listed owner of the Resort, according to the Palm Beach County Property Appraiser, is Oprock Jupiter

Fee LLC; (2) a Palm Beach County deed shows a conveyance of the Resort to Oprock Jupiter Fee, LLC; (3) Oprock Jupiter TRS, LLC leases the "hotel complex" at the Resort from Oprock Jupiter Fee, LLC; (4) Oprock Jupiter TRS, LLC employs GHM Jupiter, LLC under a "Management Agreement"; and (5) a liquor license operative at the time of the alleged FACTA violation was issued jointly to Oprock Jupiter Fee, LLC, Oprock Jupiter TRS, LLC, and GHM Jupiter, LLC.  *See id.*, Exhs. A-D; *see also id.* at 5-6.  None of these public documents reference Defendant, and expressly contradict Plaintiff's "general and conclusory allegations" in his Amended Complaint that, "on information and belief," Defendant owns and operates the Resort.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).  Plaintiff does not contest the authenticity of these documents or the information contained therein, and thus, the Court considers the public documents controlling.  *See Horne*, 392 F. App'x at 802 (consideration of public record proper "because they were capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.") (internal quotation omitted); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) ("matters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment.").  Accordingly, the Amended Complaint must be dismissed.

      Defendant moves the Court to dismiss the Amended Complaint with prejudice. However, at this juncture, the Court does not find that "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *see Rance v. Winn*, 287 F. App'x 840, 842 (11th Cir. 2008).  First, while the Court finds that the public documents sufficiently contradict the Amended Complaint's conclusory claims of ownership and operation, Plaintiff additionally pleads that "OPL's officers and directors own and control the hotel properties through other

entities they own and control," and argues, in his Response, that Defendant "jointly" controls or operates the Resort. ECF No. [16] ¶ 9; ECF No. [38] at 10. Importantly, "[l]iability may turn on operation as well as ownership." *United States v. Bestfoods*, 524 U.S. 51, 64 (1998). In fact, the bulk of Plaintiff's legal argument in his Response appears premised on the assumption that Defendant is connected to the Resort through its affiliation with other entities. *See* ECF No. [38] at 9-14. To the extent that Plaintiff argues in his Response that Defendant is jointly liable, or liable based on theories of direct, vicarious, or instrumental liability grounded in OPL's control or affiliation with other entities, the Amended Complaint fails to plead facts sufficient to establish such liability, and Plaintiff's arguments in his Response do not constitute factual allegations upon which the Court may rely.[1] *See Bradley v. Jackson*, 2015 WL 9914193, at *1 (S.D. Ga. Nov. 16, 2015), *report and recommendation adopted*, 2016 WL 309851 (S.D. Ga. Jan. 25, 2016) (citing *Erb v. Advantage Sales & Marketing,* LLC, 2012 WL 3260446, *3 (N.D. Ala. Aug. 3, 2012) ("Motions to dismiss brought pursuant to Rule 12(b)(6) test the sufficiency of the factual allegations contained in the complaint, and a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." (internal quotations omitted))); *see also Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1395 (S.D. Fla. 2014) ("The Court concludes that the SAC must be dismissed as to Kellogg because it simply does not allege a 'mere instrumentality' or 'alter ego' theory of liability."). The Court, therefore, will allow Plaintiff an opportunity to amend his Amended Complaint to include a factual basis for the alternative forms of liability argued in his Response, or to plead facts sufficient to establish Defendant's operation or ownership of the Resort, notwithstanding the uncontested public

---

[1] Relatedly, because Plaintiff does not plead *any* facts in his Amended Complaint to support a claim of liability based on a parent-subsidiary relationship, his reliance on *Aug. v. Boyd Gaming Corp.*, 135 F. App'x 731 (5th Cir. 2005) and similar case law analyzing when a parent company "holds itself out" on a website as an owner/operator, is misplaced. *See* ECF No. [38] at 9, 10, 11.

documents that indicate otherwise. The Court additionally finds that amendment is not futile because, assuming Plaintiff sufficiently pleads Defendant's relationship to the Resort, the Amended Complaint may adequately plead a FACTA violation. The Court addresses Defendant's alternative arguments for dismissal below.

**B.     Failure To Attach Receipt**

Defendant argues that Plaintiff's failure to attach a "receipt" to the Amended Complaint requires dismissal. In the Amended Complaint, Plaintiff alleges that he paid for a stay at the Resort "using his personal VISA credit card and upon checking out of the hotel[,] . . . was provided with an electronically printed receipt generated from a point of sale terminal device, bearing the expiration date of his credit card." ECF No. [16] ¶ 35. Plaintiff did not attach the allegedly improper "receipt" to his Amended Complaint, a defect, Defendant claims, is fatal. As the basis for this novel proposition, Defendant relies on two decisions from this Court, neither of which directly support Defendant's contention. For instance, in *Torongo v. Roy*, *infra*, relied upon heavily by Defendant, the court considered an attached "credit card slip" and "bill for services" because the *defendant* attached the documents to the motion to dismiss and plaintiff did not contest their authenticity. *See* 2016 WL 1388852, at *2 n.1. Had these circumstances not existed, as is the instant case, the court very well may not have considered the documents at the motion to dismiss stage. Either way, Defendant points to no authority that requires a plaintiff to attach the alleged "receipt" to a FACTA complaint or face dismissal.[2] Accordingly, the Court finds Defendant's position unsupported, and rejects it.

---

[2] This includes *Haslam v. Federated Dep't Stores, Inc.*, 2008 WL 5574762, at *4 (S.D. Fla. May 16, 2008), cited by Defendant, where the court found merely that the word "'print' commonly refers to a tangible, paper receipt and not an on-screen computer display."

### C. Failure To State A Claim

#### 1. *Point of sale*

Under FACTA, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Defendant claims that the Amended Complaint "fails to allege where or how [Plaintiff] received the allegedly nonconforming receipt." ECF No. [24] at 16; *see also* ECF No. [43] at 12. Not so. Plaintiff claims that "upon checking out of the hotel," he "was provided with an electronically printed receipt generated from a point of sale terminal device." ECF No. [16] ¶ 35. Plaintiff further alleges that "[i]t is Defendant's policy and procedure to issue an electronically *printed* receipt to individuals at the point of sale – i.e., immediately upon receipt of credit card payment." *Id.* ¶ 38 (emphasis added). These allegations, along with all plausibly derived inferences, sufficiently allege that Plaintiff received the non-conforming receipt "at the point of sale." 15 U.S.C. § 1681c(g)(1). The authority cited by Defendant in its Motion all concern the definition of the term "print," undertaking an analysis of the "point of sale" concept merely to illustrate that *electronic* "receipts" do not qualify. *See Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 800 (7th Cir. 2010); *Smith v. Under Armour, Inc.*, 593 F. Supp. 2d 1281, 1285-86 (S.D. Fla. 2008) (FACTA "'point of sale or transaction' clause makes sense in the context of printed paper receipts"); *Narson v. Godaddy.com, Inc.*, 2008 WL 2790211, at *6 (D. Ariz. May 5, 2008). Under this authority, Plaintiff has sufficiently plead that he received a printed receipt from a point of sale terminal. *See* ECF No. [16] ¶¶ 35, 38. None of Defendant's cited cases require a Plaintiff to plead with the specificity urged by Defendant, and in fact, decisions from this Court appear to reject the notion. *See Narson*, 2008 WL 2790211, at *6 ("the

language of § 1681c(g) as a whole clearly shows that the statute contemplates transactions where receipts are physically printed using electronic point of sale devices like electronic cash registers or dial-up terminals."); *Grabein v. 1-800-Flowers.com, Inc.*, 2008 WL 343179, at *5 (S.D. Fla. Jan. 29, 2008) ("This Court concurs . . . that limiting FACTA's reach because a consumer's computer is located far away from the presence of the seller would undermine Congress's legislative aim of preventing identity theft.") (internal citation omitted); *see also Shlahtichman*, 615 F.3d at 800 ("the citation of the cash register as the lead example of a machine or device used to electronically print a receipt is consistent with the notion that Congress meant to regulate the types of receipts that document in-person transactions between the consumer and the merchant"). Defendant has not provided persuasive authority in support of its argument, and the Court finds that Plaintiff has satisfied the "point of sale" pleading requirement.

### 2. Willfulness

Next on the list of alleged deficiencies, Defendant challenges Plaintiff's willfulness allegations. The Amended Complaint seeks only statutory, and not actual, damages. To recover statutory damages, a plaintiff must sufficiently allege that the FACTA violation was "willful." *See* 15 U.S.C. § 1681n(a)(1)(a). A FACTA violation is "willful" if it is either knowing or reckless. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). To constitute a willful violation, the Supreme Court has held that a plaintiff must allege that "the action is not only a violation under a reasonable reading of the statute's terms, but . . . that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Courts applying *Safeco* have made clear that under FACTA, a plaintiff must allege more than mere negligence. *See Torongo*, 2016 WL 1388852, at *4; *Rosenthal v. Longchamp Coral Gables LLC*, 603 F. Supp. 2d 1359, 1361 (S.D. Fla. 2009).

Plaintiff tersely alleges that Defendant "knowingly and intentionally includes the expiration date of the credit card on its electronically printed receipts," but then supports his allegations with a factual claim that "[t]he digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information." ECF No. [16] ¶¶ 39-40. Plaintiff further alleges that Defendant accepts credit cards from all major issuers, which, by contract, require FACTA compliance. *See id.* ¶¶ 28-30. Moreover, Plaintiff claims that Defendant has been sued for similar violations in the past, indicating that Defendant is aware of the FACTA requirements. *See id.* ¶¶ 31-32. This Court found similar allegations sufficient to plead willfulness under FACTA in *Steinberg v. Stitch & Craft, Inc.*, where it found

> Plaintiff's allegations of willfulness are based on disclosures provided by major credit card companies to merchants following the enactment of FACTA. Plaintiff alleges that Defendant had actual and constructive knowledge of FACTA's requirements several years before it was required to come into compliance, but nonetheless ignored these requirements after FACTA became effective. The Complaint states that major credit card companies 'notified the merchants, including the Defendant, that the FACTA prohibited the printing of more than the last five digits of the credit/debt card number and/or the expiration dates associated with the credit/debit card account and that they were required to comply with the FACTA.' Finally, the Complaint alleges Defendant violated FACTA because it 'did not wish to incur the additional expense of reprogramming or updating its point-of-sale equipment.' These allegations are sufficient to infer that Defendant acted knowingly or recklessly when it violated the statute.

2009 WL 2589142 (S.D. Fla. Aug. 17, 2009) (record citations omitted) (citing *Bauer v. Shell Factory, LC*, 2008 WL 2261764, 2008 U.S. Dist. LEXIS 43116 (M.D. Fla. May 30, 2008); *Follman v. Vill. Squire, Inc.*, 542 F. Supp. 2d 816, 820 (N.D. Ill. 2007); and *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 757 (E.D. Pa. 2007)); *see Lavery v. Radioshack Corp.*, 2014 WL 2819037 (N.D. Ill. June 23, 2014) (finding that similar "allegations have repeatedly been held

14

sufficient to survive the pleading stage."). While Defendant believes *Steinberg* distinguishable because the plaintiff in that case additionally plead that the defendant "did not wish to incur the additional expense of reprogramming its point-of-sale equipment," ECF No. [43] at 13, Defendant's argument fails to consider that a "willful" violation is done either "knowingly" *or* "recklessly," making Plaintiff's allegations regarding Defendant's prior knowledge of FACTA violations and subsequent deficient remedial actions sufficient at this stage of proceedings. Contrary to Defendant's implicit assertion, the Court does not find that that these factual allegations *establish* recklessness. *See* ECF No. [43] at 14. Rather, the Court simply finds recklessness – and thus willfulness – sufficiently plead.

### D. Standing

Finally, Defendants challenge Plaintiff's standing to bring this suit, arguing that Plaintiff has failed to allege any actual injury or that he suffered any actual damages. *See* ECF No. [24] at 18. As recently explained by the Supreme Court in *Spokeo, Inc. v. Robins*, standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." 136 S. Ct. 1540, 1547 (2016) (internal citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (quotations omitted). For the injury to be "concrete," it must be "real," and not "abstract"; however it need not be "tangible." *Id.* at 1548-49.

This Court recently had occasion to review a factually-similar FACTA complaint post-*Spokeo*. *See Guarisma v. Microsoft Corporation*, 2016 WL 4017196 (S.D. Fla. July 26, 2016). As in *Guarisma*, the Court finds Plaintiff's injury is clearly particularized, as Plaintiff allegedly received a receipt that improperly included his personal credit card information. ECF No. [16] ¶ 35. And, consistent with *Guarisma* and for the reasons explained below, the Court finds Plaintiff's injury "concrete," as FACTA "created a substantive right for individuals to receive printed receipts that truncate their personal credit card information, in order to decrease the ever-present threat of identity theft." *Guarisma*, 2016 WL 4017196.

In *Spokeo* the Supreme Court recognized that "Congress may 'elevate to the status of legally cognizable injuries, concrete, *de facto* injuries that were previously inadequate in law." 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578 (alteration omitted)). "In other words, the Supreme Court recognized where Congress has endowed plaintiffs with a *substantive* legal right, as opposed to creating a procedural requirement, the plaintiffs may sue to enforce such a right without establishing additional harm." *Guarisma*, 2016 WL 4017196 (citing *Spokeo*). In this vein, the Eleventh Circuit recently held, in the context of the Fair Debt Collections Practices Act ("FDCPA"), that even without alleging actual damages, a "plaintiff sufficiently alleged a concrete injury because: (1) in enacting the FDCPA, Congress created a substantive right to receive the required disclosures in relevant communications; and (2) the defendant violated this substantive right by failing to provide such disclosures." *Guarisma*, 2016 WL 4017196 (citing *Church v. Accretive Health, Inc.*, 2016 WL 3611543, *3 (11th Cir. July 6, 2016)). Following *Church*, *Guarisma*, and other persuasive authority, the Court similarly finds that FACTA creates a substantive right for consumers to have their personal credit card information truncated on printed receipts, and that Plaintiff has adequately alleged a violation of that right. *See Guarisma*,

2016 WL 4017196 (citing *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014) ("By enacting 15 U.S.C. § 1681c(g)(1), Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number. Appellants contend that Sam's Club invaded this right. . . . Thus, we conclude that appellants have alleged an injury-in-fact sufficient to confer Article III standing."); *Amason v. Kangaroo Exp.*, 2013 WL 987935, at *4 (N.D. Ala. Mar. 11, 2013) ("[T]he statutory provisions invoked by Plaintiffs, 15 U.S.C. §§ 1681c(g) and 1681n, create a substantive right to have one's financial information protected through truncation and also provide a procedural right to enforce that truncation."); *Altman v. White House Black Market, Inc.*, 2016 WL 3946780, at *5 (N.D. Ga. Jul. 13, 2016) (finding Congress, in enacting the FACTA, created a substantive right to receive a truncated credit card receipt, the invasion of which constitutes a concrete injury)); *see also Wood v. Choo USA, Inc.*, 2016 WL 4249953 (S.D. Fla. Aug. 11, 2016) ("Through FACTA, Congress created a substantive legal right for Wood and other card-holding consumers similarly situated to receive receipts truncating their personal credit card numbers and expiration dates and, thus, protecting their personal financial information."). Consistent with this authority, the Court finds that Plaintiff has plead a concrete injury, and that the Court has subject-matter jurisdiction over this case.

IV. CONCLUSION

For the forgoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Request for the Court to Take Judicial Notice of Public Records, **ECF No. [25]**, is **GRANTED**;

2. Defendant's Motion to Dismiss, **ECF No. [24],** is **GRANTED**;

3. Plaintiff has until **August 22, 2016** to file a second amended complaint.

Case No. 16-cv-80502-BLOOM/Valle

**DONE AND ORDERED** in Miami, Florida, this 15th day of August, 2016.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record