# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:16-cv-80502-BB

| | |
|---|---|
| JUSTIN BOUTON, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) **CLASS ACTION** ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| OCEAN PROPERTIES, LTD., a foreign corporation, OPROCK JUPITER FEE, LLC, a foreign limited liability company, OPROCK JUPITER TRS, LLC, a foreign limited liability company, and GHM JUPITER, LLC, a foreign limited liability company, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)[1]

1.      This action arises from Defendants' violation of the Fair and Accurate Credit Transactions Act ("FACTA"), an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). The FACTA, at 15 U.S.C. § 1681c(g), states that, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." Despite the clear language of the statute, Defendants engaged in a common practice as to all putative class members whereby they willfully or knowingly chose not to comply. As such, Plaintiff and certain other consumers who comprise the putative class and subclass conducted business with Defendants during the time frame relevant to this complaint,

---

[1]      Plaintiff amends pursuant to this Court's August 15, 2016 ruling.  ECF No. 44.

each of whom paid for goods and services using a credit or debit card and were provided with a violative receipt, and suffered violations of § 1681c(g). Moreover, by shirking the requirements of a federal privacy statute, Defendants have caused consumers actual harm, not only because consumers were uniformly burdened with an elevated risk of identity theft, but because a portion of the sale from a credit or debit card transaction is intended to protect consumer data, including the masking of credit card or debit card numbers as required by FACTA. As a result of Defendants' reckless conduct, Plaintiff and members of the putative Class and Subclass are entitled to an award of statutory damages and other relief as further detailed herein.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendants conduct business in this district and their contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

4.     Plaintiff Justin Bouton ("Plaintiff") is a natural person, who resides in Broward County, Florida.

5.     Defendant Ocean Properties, Ltd. ("OPL"), is a Maine corporation whose principal address is 1001 E. Atlantic Ave., Delray Beach, FL 33483, and whose registered agent for service of process in the state of Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.  OPL represents that it develops, owns and operates hotels in several states, including Florida.

6.      Defendant Oprock Jupiter Fee, LLC ("Oprock Jupiter Fee") is a limited liability company incorporated in Delaware in May 2007, whose registered agent in Florida is National Corporate Research Ltd., Inc., located at 115 North Calhoun St., Tallahassee, Florida 32301. Oprock Jupiter Fee's stated corporate purpose is limited to real estate investment.[2]   Oprock Jupiter Fee owns the property Jupiter Beach Resort & Spa ("Jupiter Beach Resort"), the hotel at which Plaintiff received a FACTA violative receipt.

7.      Defendant Oprock Jupiter TRS, LLC ("Oprock Jupiter TRS") is a limited liability company incorporated in Delaware in May 2007, whose registered agent in Florida is National Corporate Research Ltd., Inc., located at 115 North Calhoun St., Tallahassee, Florida 32301. Oprock Jupiter TRS's stated corporate purpose is limited to real estate investment.[3]   Oprock Jupiter TRS leases the Jupiter Beach Resort property from Oprock Jupiter Fee.

8.      Defendant GHM Jupiter, LLC ("GHM Jupiter") is a limited liability company incorporated in Delaware in May 2007, whose registered agent in Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.   GHM Jupiter purports to manage the Jupiter Beach Resort property pursuant to a management agreement with Oprock Jupiter TRS.

9.      Defendants OPL, Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter are referred to herein collectively as "Defendants."   Defendants are all privately-owned companies, which are directly and indirectly owned and operated by Tom Walsh and his children.[4]

---

[2]      *See* Exhibit 1 (Oprock Jupiter Fee, LLC's June 4, 2007 Application to Transact Business in Florida).
[3]      *See* Exhibit 2 (Oprock Jupiter TRS, LLC's June 4, 2007 Application to Transact Business in Florida).
[4]      *See* https://web.archive.org/web/20151220164147/http://www.oplhotels.com/employment/benefits-culture (last visited August 26, 2016) ("Ocean Properties, Ltd., a family-owned and managed company, operates a diverse portfolio of award-winning properties") (attached as Exhibit 3).

**DEFENDANTS' CORPORATE STRUCTURE AND OPERATIONS**

10.     Through a byzantine ownership and management structure, and primary use of the OPL legal entity name (*i.e.*, "Ocean Properties, Ltd.") and resources, Defendants operate their hotel businesses as a unitary enterprise.  Defendants share common owners, managers, addresses, and resources, and use the OPL legal name when describing its business operations in a singular fashion.

11.     OPL was founded by Tom Walsh who in the early-1970s purchased five hotels in Florida and formed Defendant "Ocean Properties Ltd."[5]  Over the years, Tom Walsh's children, joined their father in owning and operating OPL and its affiliated entities.[6]  OPL's officers include all of Tom's children, including its President Michael Walsh, Vice President and Treasurer Mark Walsh, Vice President William Walsh, Vice President Suzzane Lanigan (nee Walsh), and Secretary Patrick Walsh.[7]

12.     OPL develops and operates each hotel property jointly with other entities, each of which are not publicly disclosed as operating the hotel businesses as OPL is reported as doing. In the case of the Jupiter Beach Resort & Spa, the hotel at which Plaintiff received the FACTA violative receipt, OPL developed the hotel in 2005 and thereafter, in 2007, established the entities Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter to own and jointly manage that hotel property.[8]  These three entities have overlapping owners, directors and officers with OPL, including the Walsh children.  Mark Walsh is Oprock Jupiter Fee's Vice President and

---

[5]      *See id.*; *see also* http://web.archive.org/web/20151206074846/http://www.oplhotels.com/about-us/history (last accessed July 19, 2016) (attached as Exhibit 4).
[6]      *Id.* (Exhibits 3 & 4).
[7]      *See* Exhibit 5 (OPL's April 14, 2016 Annual Report filed with Florida's Secretary of State).
[8]      *See* Exhibit 4 (OPL's History).

person authorized to act on its behalf.[9]   Oprock Jupiter TRS has as its corporate managing member Oprock Jupiter Fee and has Mark Walsh also as its Vice President and person authorized to act on its behalf.[10]   GHM Jupiter has as its corporate managers Global Hospitality Management LLC ("Global Hospitality"), Mark Walsh, Michael Walsh and Richard Ade. Global Hospitality is a limited liability company incorporated in Florida, has its principal place of business at 1001 East Atlantic Ave., Delray Beach, Florida 33483, and has as its corporate managers Michael, Mark and William Walsh.[11]

13.     OPL's primary business address in Florida, 1001 E. Atlantic Ave., Delray Beach, Florida 33483, is also the business address of the corporate managers (the Walsh children) who operate Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter (as well as Global Hospitality's principal business address).

14.     OPL staffs the hotels with individuals it recruits and employs, including those individuals who are responsible for generating point of sale receipts, such as front desk agents and bartenders.[12]   OPL even recruits for and provides manager training opportunities.[13]

15.     OPL owns and operates the website which markets all of its hotel businesses, and reported on its website that those businesses are "Ocean Properties, Ltd. products and services"

---

[9]        *See* Exhibit 6 (Oprock Jupiter Fee's February 17, 2016 Annual Report filed with Florida's Secretary of State).  Oprock Jupiter Fee has as its corporate managing member Oprock Jupiter Mezz, LLC. Oprock Jupiter Mezz, LLC is a Delaware limited liability company and, on information and belief, includes the Walsh family as involved in its ownership and management.
[10]       *See* Exhibit 7 (Oprock Jupiter TRS's February 16, 2016 Annual Report filed with Florida's Secretary of State).
[11]       *See* Exhibit 8 (GHM Jupiter's February 04, 2016 Annual Report filed with Florida's Secretary of State); Exhibit 9 (Global Hospitality's February 4, 2016 Annual Report filed with Florida's Secretary of State).
[12]       *See* http://www.web.archive.org/web/20151221050229/http://oplhotels.com/employment/openings (last accessed August 26, 2016) (attached as Exhibit 10).
[13]       *See* http://web.archive.org/web/20151220164233/http://www.oplhotels.com/employment/college-recruitment/ (last accessed August 26, 2016) (attached as Exhibit 11).

offerings to its customers.[14]   Under OPL's website tab "Portfolio" (subheading "Florida East Coast") OPL refers to the *Jupiter Beach Resort and Spa* as one of its resort and hotel offerings.[15]

16.     OPL also admits on its website that it jointly operates over 100 hotel properties, including the Jupiter Beach Resort, with its affiliated companies (*e.g.*, Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter, albeit the only legal entity mentioned in these representations is Ocean Properties, Ltd.).[16]   OPL provides the central operation role to those other entities.   To that end, OPL publicly represents that its accounting and administrative functions, including those involved in generating FACTA violative receipts, are "[c]entralized" and "work[] seamlessly together,"[17] and further touts that its centralized operations provides "a strong corporate culture and powerful economies of scale."[18]

17.     More specific to the operations at issue in this case, "Ocean Properties, Ltd." publicly claims to "respect[] the privacy of all our guests, and … are committed to protecting it," which includes guest "financial information (such as credit card number and expiration date, etc.)"[19]  However, as set forth herein, OPL (as well as its affiliated entities Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter) does not secure guests' important private credit card

---

[14]     *See* http://web.archive.org/web/20160103120023/http://www.oplhotels.com/terms-of-use (last visited July 12, 2016) (attached as Exhibit 12).
[15]     *See*     http://web.archive.org/web/20151221114236/http://www.oplhotels.com/portfolio/florida-east-coast/ (last accessed: July 12, 2016) (attached as Exhibit 13).
[16]     *See* https://web.archive.org/web/20151227015516/http://www.oplhotels.com/about-us  (last accessed July 8, 2016) ("In addition to developing and managing hotels and resorts, *Ocean Properties, Ltd.* & Affiliates develop and operate restaurants , spas, golf courses, commercial real estate, marina operations and boating tours") (emphasis added) (attached as Exhibit 14).
[17]     *See* http://web.archive.org/web/20160103115926/http://www.oplhotels.com/hospitality-management/finance (last visited August 26, 2016) (attached as Exhibit 15); and http://web.archive.org/web/20160103120001/http://www.oplhotels.com/hospitality-management/sales-marketing (last visited August 26, 2016) (attached as Exhibit 16).
[18]     *See* http://web.archive.org/web/20160114150840/http://www.oplhotels.com (last visited July 19, 2016) (attached as Exhibit 17).
[19]     *See* http://web.archive.org/web/20160103120023/http://www.oplhotels.com/terms-of-use (last visited July 12, 2016) (attached as Exhibit 12).

information, including expiration dates, and instead prints that sensitive personal information in violation of FACTA.

18.     Individuals both inside and outside Ocean Properties, Ltd. also understand that OPL operates the hotel businesses, including the Jupiter Beach Resort.  A March 19, 2015 article in *The Island Now*, discussed OPL's addition of its Opal Collection of properties, including the Jupiter Beach Resort & Spa, by stating that "Ocean Properties *owns and operates* some of our favorite hotels ….."[20]  A brochure of Defendant's "Opal Collection" of properties prominently identifies "Ocean Properties Ltd." as affiliated with those "Hotels and Resorts."[21]  The Opal Collection website's terms and conditions also refers to "Ocean Properties, Ltd." as the entity which must be contacted regarding the materials displayed on its website (which includes descriptions and reservation details of its hotels).[22]

19.     In a February 2016 article reporting on the hiring of a new General Manager at the Jupiter Beach Hotel and Spa, Robert Grossman, the article reflected on Mr. Grossman's past affiliation with the "Ocean Properties, Ltd." resort in Key West, Florida, and his excitement to continue with "the OPL family" at Jupiter.[23]

20.     A portion of the revenue received from those who patronize Defendants' hotels is intended to finance compliance with certain privacy laws and securing customer data, including

---

[20]     *See* Exhibit 18, Karen Rubin, Going Places, Near & Far: Reimagined Delray Sands Resort Maximizes Advantage of Beachfront Location,  http://www.theislandnow.com/going-places-near-far-reimagined-delray-sands-resort-maximizes-advantage/article_d3ea11aa-ce49-11e4-9d6e-73060734074d.html (last Accessed: April 28, 2016) (emphasis added).

[21]     *See* Exhibit 19 & http://www.youblisher.com/p/936447-Ocean-Properties-Fall-Winter-2014/. The final page of the brochure lists the Media contact (Media Contact, Kerry Morrissey, Ocean Properties, Ltd., 561-274-2313,Kerry.Morrissey@OPLHotels.com) (last Accessed: April 28, 2016).

[22]     *See* Exhibit 20 & http://www.opalcollection.com/terms-conditions/ (last visited May 3, 2016).

[23]     See Exhibit 21, "The Examiner", http://www.examiner.com/article/grossman-new-gm-at-jupiter-beach-resort-spa (last Accessed: April 28, 2016) (emphasis added).

compliance with the FACTA.[24]

21.     Those customers who make purchases from OPL-operated hotels with a credit or debit card do so with the reasonable and commonplace expectation that Defendants will secure their data, protect their personal information, and comply with federal privacy laws.

## ADDITIONAL FACTUAL ALLEGATIONS

### Background of FACTA

22.     In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

23.     Identity theft is a serious issue affecting both consumers and businesses. The Federal Trade Commission, received over 490,000 consumer complaints about identity theft, representing a 47 percent increase over the prior year.[25]

24.     One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

25.     Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***"Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date***

---

[24]     *See generally*, http://web.archive.org/web/20160103120023/http://www.oplhotels.com/terms-of-use (last visited July 12, 2016) (attached as Exhibit 12) ("…You must provide contact information … as well as financial information (such as credit card number and expiration date, etc.) in order for us to process your reservation. … Ocean Properties, Ltd. is committed to the security of the data collected on this Website and treats all information you provide us as confidential.").

[25]     *See* https://www.ftc.gov/news-events/press-releases/2016/01/ftc-announces-significant-enhancements-identitytheftgov (last accessed: April 28, 2016).

*upon any receipt provided to the cardholder at the point of sale or transaction."*

(the "Receipt Provision").

26.     After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

27.     The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . ." [26] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

28.     Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[27]

29.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical

---

[26]     *See* http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html (Last accessed: April 28, 2016).

[27]     *See* http://www.runtogold.com/images/rules_for_visa_merchants.pdf (Last accessed: April 28, 2016).

corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[28]

30.     Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number.  Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

31.     In the interim, Card processing companies continued to alert their merchant clients, including Defendants, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN [Primary Account Number] truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt.             (Please             visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)
>
> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Visa Alert attached hereto as <u>Exhibit 22</u>.

32.     According to data from the Federal Trade Commission's 2012 Consumer Sentinel Network report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also,

---

[28]     *See* https://www.govtrack.us/congress/bills/110/hr4008/text (Last accessed: April 28, 2016).

nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area with 645.4 complaints per 100,000 people.[29]

33.    So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

**Defendants' Prior Knowledge of FACTA**

34.    Most of Defendants' business peers and competitors readily brought their receipt printing process into compliance with FACTA by programming their card machines and other devices to comply with the truncation requirement.  Defendants could have readily done the same.

35.    Not only were Defendants informed it could not print the expiration date of credit cards, it was contractually prohibited from doing so.  Defendants accept credit cards from all major issuers; these companies set forth requirements that merchants, including Defendants, must follow, including FACTA's redaction and truncation requirements.

36.    As noted above, the processing companies have required that credit card expiration dates not be shown since 2003 and still require it.  For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with

---

[29]    *See* http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (last accessed: April 28, 2016).

11

> replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* <u>Exhibit 23</u>, attached hereto.

37.     Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

*See* <u>Exhibit 24</u>, attached hereto.

38.     Despite the plethora of warnings, Defendants chose to not implement necessary devices and systems to comply with privacy laws.  On October 23, 2007, Jessica A. Serota used a credit card to make a purchase at an OPL-operated resort in Highland Beach, Florida (the "Delray Sands Resort," part of the aforementioned "Opal Collection"), at which time she was issued an electronically generated receipt that contained more than the last five digits of her credit card and also the credit card's expiration date.

39.     Ms. Serota filed suit in the Southern District of Florida, *Serota v. Ocean Properties, Ltd.,* No. 08-cv-80624-KLR (S.D. Fla. Filed June 11, 2008) [ECF No. 1], solely against Ocean Properties, Ltd, alleging therein that OPL willfully violated FACTA.   In that litigation, OPL admitted to operating the restaurant located at the hotel which issued the FACTA non-compliant receipt.  *See id.* at ECF No. 4 (Ocean Properties, Ltd.'s Answer at ¶3, attached as Exhibit 25); *see also id*. at ECF No. 11 (Joint Planning and Scheduling Report, at ¶2 (attached as

Exhibit 26), admitting same and stating: "that it accepts credit cards for the transaction of business". After the *Serota* court denied OPL's motion to strike the complaint, OPL settled the FACTA claim for an undisclosed amount. *See id.* at ECF No. 12 (Order denying OPL's motion to strike, attached as Exhibit 27); *id.* at ECF No. 16 (Joint Stipulation of Settlement, attached as Exhibit 28).

40.     Now, Defendants have once again chose to knowingly and willfully violate FACTA by printing receipts displaying the expiration date of its customers' credit cards. Indeed, in OPL's response to certain requests to admit, OPL admitted that it "knew of, was made aware of or was advised about FACTA" prior to March 9, 2016.

### Plaintiff's Factual Allegations

41.     On or about March 9, 2016, Plaintiff used a credit card to pay for his stay at the Jupiter Beach Hotel and Spa, one of Defendants' "Opal Collection" of resorts which Defendants own and operate as part of their unitary business enterprise under the Ocean Properties, Ltd. umbrella.

42.     Plaintiff paid using his personal VISA credit card and upon checking out of the hotel Plaintiff was provided with an electronically printed receipt generated from a point of sale terminal device, bearing the expiration date of his credit card. *See* Exhibit 29.

### Defendants' Misdeeds

43.     At all times relevant herein, Defendants were acting jointly as a unitary enterprise utilizing the resources and legal name of Ocean Properties, Ltd., and by and though their agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants.

44.     Alternatively, at all relevant times Defendant Ocean Properties, Ltd. was acting (i) with the authority of Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter, or (ii) for the benefit of Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter, or (iii) as possessing sufficient authority from Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter.  Ocean Properties, Ltd. is thereby vicariously liable for the misconduct alleged in this complaint.

45.     At all times relevant herein, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiff.

46.     It is Defendants' policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

47.     Consistent with Defendants' policy and procedure, Defendants knowingly and intentionally includes the expiration date of the credit card on its electronically printed receipts.

48.     The digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

49.     A company subject to the FCRA can be liable for willful violations of the FCRA within the meaning of §1681n if they show a "reckless disregard" for the law. *See  Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)

50.     Notwithstanding the fact that it has had years to comply, Defendants continue to issue point of sale receipts, which contain the expiration date of the card number, in direct violation of the Receipt Provision of the FACTA.

51.   Notwithstanding the Receipt Provision, Defendants continue to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FACTA.

52.   Notwithstanding the fact that Defendants had years to comply with FACTA's requirements **and the fact Defendant OPL was previously sued for violating the exact same federal statute**, Defendants continue to act in conscious disregard for the rights of others. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. Sept. 19, 2014) (explaining that issue of willfulness in FACTA class action lawsuit was "straightforward" wherein defendant violated a parallel state statute years earlier).

53.   To paraphrase the words of Judge Posner in *Redman v. RadioShack Corp.*, Defendants have been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Id.* at 627.

## CLASS ACTION ALLEGATIONS

54.   This action is also brought as a Class Action under Fed. R. Civ. P. 23.  Plaintiff proposes the following class and subclass, defined as follows, subject to modification by the Court as required:

a. Class:

> *(i) All persons in the United States (ii) who, when making payment pursuant to a purchase made at any one of Ocean Properties, Ltd.'s operated and/or controlled businesses, (iii) made such payment using a credit or debit card (iv) and were provided with a printed receipt (v) which displayed the expiration date or more than five digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.*

15

   b. Subclass:

> *(i) All persons in the United States (ii) who, when making payment pursuant to a purchase made at Defendants' Jupiter Beach Hotel Resort & Spa (iii) made such payment using a credit or debit card (iv) and were provided with a printed receipt (v) which displayed the expiration date or more than five digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.*

55.     Plaintiff falls within the class definitions and is a member of the class and subclass. Excluded from the class and subclass are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

## Certification Under Either Rule 23(b)(2) or (b)(3) is Proper

56.     The members of the class and subclass are capable of being described without managerial or administrative problems. The members of the class and subclass are readily ascertainable from the information and records in the possession, custody or control of Defendants. In fact, upon information and belief, Defendants, whose business offerings include centralized financial administration and revenue management,[30] maintains records of every guest's identity, address, or drivers license who patronizes each of the hotels they operate.

57.     Defendants operate over 100 hotels including major brands such as Marriott, Hilton, Starwood and Intercontinental, as well as several independent hotels and resorts

---

[30]     *See* http://web.archive.org/web/20160103115926/http://www.oplhotels.com/hospitality-management/finance (last visited August 26, 2016) (attached as Exhibit 15); and http://web.archive.org/web/20160103120001/http://www.oplhotels.com/hospitality-management/sales-marketing (last visited August 26, 2016) (attached as Exhibit 16).

(comprising thousands of guest rooms and suites),[31] accepts credit cards at each and prints receipts reflective of credit card transactions. Therefore, it is reasonable to conclude that the class and subclass is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class and Subclass can be identified through Defendants' records or Defendants' agents' records.

58.    There are common questions of law and fact that predominate over any questions affecting only the individual members of the class and subclass. The wrongs alleged against Defendants are statutory in nature and common to each and every member of the putative class and subclass.

59.    This suit seeks only statutory damages and injunctive relief on behalf of the class and subclass, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class and subclass definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

60.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the class and subclass predominate over questions that may affect individual class members, including the following:

    a.    Whether, within the two years prior to the filing of this Complaint,

---

[31]    *See* http://web.archive.org/web/20160103120023/http://www.oplhotels.com/terms-of-use (last visited July 12, 2016) (attached as Exhibit 12).

Defendants and/or their agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which the expiration date of the credit card was printed;

b.      Whether Defendants' conduct was willful and reckless;

c.      Whether Defendants are liable for damages, and the extent of statutory damages for each such violation; and

d.      Whether Defendants should be enjoined from engaging in such conduct in the future.

61.     As a person that patronized a hotel operated by Defendants and received a receipt upon which the expiration date of the credit card was printed, Plaintiff is asserting claims that are typical of the proposed class and subclass. Plaintiff will fairly and adequately represent and protect the interests of the putative class in that Plaintiff's interests are aligned with the class and subclass, and he has no interests antagonistic to any member of the class or subclass.

62.     The principal question is whether the Defendants violated section 1681c(g) of the FACTA by providing class and subclass members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendants willfully or knowingly provided such electronically printed receipts, despite firsthand knowledge of the unlawful nature of such policy.

63.     Plaintiff and the members of the class and subclass have all suffered harm as a result of the Defendants' unlawful and wrongful conduct.  Absent a class action, the class and subclass, along with countless future patrons of Defendants' many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be

18

allowed to proceed without remedy and Defendants will (as it has already shown) continue such illegal conduct.  Because of the size of the individual class members' claims, few class members could individually afford to seek legal redress for the wrongs complained of herein.

64.     Defendants' defenses are and will be typical of and the same or identical for each of the members of the class and subclass, and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

65.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small. The maximum statutory damages in an individual action for a violation of this statute are minimal compared to the costs of prosecuting such a claim. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

66.     Defendants have acted on grounds generally applicable to the class and subclass, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class and subclass as a whole.

### COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)

67.     Plaintiff incorporates by reference herein the foregoing allegations.

68.     15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

69.     This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

70.     Defendants act in joint and unitary fashion in employing the use of said Devices for point of sale transactions at the various locations and businesses of Defendants.

71.     On or before the date on which this complaint was filed, Plaintiff and members of the class and subclass were provided receipt(s) by Defendants that failed to comply with the Receipt Provision.

72.     At all times relevant to this action, Defendants were aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

73.     Notwithstanding the three year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision, having previously been sued for violating FACTA, and having knowledge of the Receipt Provision and FACTA as a whole, Defendants knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FACTA and the Receipt Provision.

74.     As a result of Defendants' willful violations of the FACTA, Plaintiff and members of the class and subclass continue to be exposed to an elevated risk of identity theft and suffered an injury in fact from Defendants' unlawful conduct.  Defendants are liable to Plaintiff and members of the class and subclass pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff Justin Bouton respectfully requests that this Court enter judgment in his favor and the class, and subclass and against Defendants Ocean Properties, Ltd.,, Oprock Jupiter Fee LLC, Oprock Jupiter TRS LLC and GHM Jupiter LLC for:

     a.      Statutory damages;

     b.      Punitive damages;

     c.      Injunctive relief;

     d.      Attorneys' fees, litigation expenses and costs of suit, and

     e.      Such other and further relief as the Court deems proper under the circumstances.

<u>**JURY DEMAND**</u>

**Plaintiff demands a trial by jury on all counts.**

Dated: August 29, 2016

                            Respectfully submitted,

                            By: _/s/ Scott D. Owens_
                            Scott D. Owens, Esq.
                            Florida Bar No. 0597651
                            SCOTT D. OWENS, P.A.
                            3800 S. Ocean Dr., Ste. 235
                            Hollywood, FL 33019
                            Telephone: (954) 589-0588
                            Facsimile: (954) 337-0666
                            scott@scottdowens.com

                            Bret L. Lusskin, Esq.
                            Florida Bar No. 28069
                            BRET LUSSKIN, P.A.
                            20803 Biscayne Blvd., Ste. 302
                            Aventura, Florida 33180
                            Telephone: (954) 454-5841
                            Facsimile: (954) 454-5844
                            blusskin@lusskinlaw.com

Michael R. Karnuth, Esq.
Admitted *Pro Hac Vice*
KEOGH LAW LTD.
55 W. Monroe, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093
mkarnuth@keoghlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 29, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties below, if any, who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Scott D. Owens
Scott D. Owens, Esq.