**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 9:16-cv-80502-BB

| | |
|---|---|
| JUSTIN BOUTON, individually and, ) <br> on behalf of others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OCEAN PROPERTIES, LTD., ) <br> a foreign corporation, OPROCK JUPITER ) <br> FEE, LLC, a foreign limited liability ) <br> company, OPROCK JUPITER TRS, LLC, ) <br> a foreign limited liability company, and ) <br> GHM JUPITER, LLC, a foreign limited ) <br> liability company. ) <br> ) <br> Defendants. ) | **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT OCEAN PROPERTIES, LTD.'s
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Justin Bouton ("Plaintiff") submits his opposition to Defendant Ocean Properties, Ltd.'s ("OPL") motion to dismiss ("MTD") Plaintiff's Second Amended Complaint ("SAC").

## I.      INTRODUCTION

OPL's sole argument is that it is not a proper defendant because it does not own, lease or manage the property at which Plaintiff received a receipt which violated the Fair and Accurate Credit Transaction Act ("FACTA"), 18 U.S.C. 1681c(g).  It points its finger instead at six other entities who purportedly maintain those roles.  OPL's MTD 9-12. OPL's fact-intensive arguments are premature and ignore (a) Plaintiff's central allegations, (b) the supporting facts showing that OPL was directly involved in violating FACTA, and (c) the legal theories upon which Plaintiff brings his claim, which hold corporation's liable for direct participation in wrongdoing or, alternatively, as a principal or agent for other wrongdoers.  OPL also misstates this Court's decision on its prior motion to dismiss.

*First*, Plaintiff adequately alleged that OPL centralized and controlled the customer receipt generation process throughout all of its OPL-affiliated properties.  SAC ¶¶ 16-17. Although these allegations alone should be sufficient, they are also well supported by evidentiary citations in the complaint.  *Id.* If there was any doubt, however, documents recently produced by OPL confirms its central role, as it spearheaded the correction of the FACTA violations at a dozen of its affiliated properties, including the one Plaintiff received his receipt.  *See* Exhibit 1.[1] Having controlled the FACTA violation correction process, it is reasonable to infer that OPL had control over the process which led to the violations.

OPL's brief fails to address, let alone mention, these specific allegations.  OPL's arguments that other entities own or lease the properties at issue (OPL MTD 10-13) are irrelevant in deciding OPL's liability, as are the arguments that other entities may manage irrelevant aspects of the properties, or that other entities may share responsibility over the relevant receipt-generating operations with OPL.  What matters is whether OPL was involved in operating or controlling (either solely, jointly or as an agent of others) the receipt generation

---

[1]      The Court may take judicial notice of OPL's documents because they are central to Plaintiff's claim and their authenticity is not disputed.  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (allowing "documents … (1) central to plaintiff's claim and (2) undisputed."). "Undisputed means that the authenticity of the document is not challenged." *Id*.

process at its affiliated properties, and Plaintiff's allegations certainly plead more than enough (as further supported by OPL's recently produced documents, Ex. 1) to implicate OPL on those issues. As the master of his complaint, Plaintiff's well supported allegations must be credited over OPL's unsupported argument at the motion to dismiss stage. *See, e.g.*, *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("as we have long recognized, plaintiffs are 'the master of the complaint'") (citing *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004)); *see also Speaker v. U.S. Dep't. of Health & Human Services*, 623 F.3d 1371, 1379-80 (11th Cir. 2010) (recognizing that a district court may not consider unsupported argument outside the complaint when ruling on a motion to dismiss).

*Second*, OPL misstates the liability theories under which Plaintiff brings his claim. Plaintiff's FACTA claim is based on direct and joint liability, which OPL completely ignores, as well as apparent agency. These theories do not require piercing the corporate veil, as OPL argues.[2] FACTA, which is an amendment to the Fair Credit Reporting Act ("FCRA"), allows each of Plaintiff's liability theories. *See, e.g.*, 15 U.S.C. §1681c(g)(1) (barring any "person" from being involved in issuing violative receipts); *id.* at §1681a(b) (broadly defining "person" to include "any … corporation … or other entity"); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1212-13 (C.D. Cal. 2007) (citing *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998) (recognizing "apparent authority" as a viable liability theory under the FCRA). Under Plaintiff's direct theory, OPL is solely or jointly liable with the other named defendants for issuing the unlawful receipts, as OPL was the sole legal entity identified as being responsible for centralizing the administrative operations, including receipt generation, at all its affiliated properties. SAC ¶¶10, 16-17, 43. On the other hand, to the extent that other entities were involved in printing the receipts, OPL is vicariously liable as it was the principal, and the other entities its agents, in the receipt generation process. Consequently, OPL is liable under an apparent authority theory. Furthermore, if the facts ultimately establish that the reverse is true – *i.e.*, OPL acted as an agent for the other entities – it still would be subject to agency liability for its own misconduct. Thus, regardless of which liability theory finally is proven, OPL is unlikely

---

[2] The overlapping ownership and management of OPL with its affiliated entities, and the sharing of common addresses, adds further support to Plaintiff's position that OPL conducts business in a unitary fashion with its affiliated entities, making them jointly liable. These facts, which OPL dwells on and attempts to discredit in part to bolster its strawman veil piercing argument, are not necessary for Plaintiff to establish OPL's direct liability for its own alleged misconduct in generating FACTA violative receipts.

3

to be exonerated from liability and, more importantly, its challenges to those theories are premature factual disputes and should not be decided at the motion to dismiss stage. *See, e.g.*, *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (instructing that complaints need only plead enough to show that the claim is "plausible" and that allegations must be taken as true and inference construed in plaintiff's favor).

*Finally*, OPL misstates the Court's August 15, 2016 decision granting OPL's motion to dismiss Plaintiff's First Amended Complaint ("FAC") in arguing that the Court rejected the same arguments and exhibits Plaintiff plead in his Second Amended Complaint ("SAC"), and that Plaintiff "offers absolutely no new additional material." OPL Br. 2. The Court's ruling explicitly stated it could not address several arguments or materials cited in Plaintiff's opposition to OPL's motion to dismiss Plaintiff's First Amended Complaint because they were not alleged. [ECF No. 44, pp. 9-10] (acknowledging also that Plaintiff sought "direct" and "joint[]" liability against OPL). Plaintiff cured that defect and included those and other allegations in his SAC, including the allegations that the receipt generation process was centralized with OPL. SAC ¶¶ 16-17. The recent documents OPL produced confirm that it was involved in printing the unlawful receipts, as OPL's technology personnel were identified as investigating and addressing correcting that issue with an outside vendor. *See* Exhibit 1 (April 2016 email chain).

## II.  STATEMENT OF FACTS

### A. OPL Publicly Asserts It Is Involved In Operating The Receipt Generation Process And Correcting FACT Violations At Jupiter Beach Resort And Its Other Affiliated Properties

As described above, OPL publicly disclosed (both under its name and the Opal Collection name) that "Ocean Properties, Ltd." is involved in the operations of Jupiter Beach Resort & Spa ("Jupiter Beach Resort"), the property at which Plaintiff was given a receipt, and its other affiliated properties. SAC ¶¶ 12, 15-16. OPL also attributed to itself the role of centralizing the receipt generating function, *Id.* ¶¶16-17, the sole activity at issue in this case, and correcting the FACTA violations at the Jupiter Beach Resort and other properties. Exhibit 1 ("Really need to get Jupiter fixed this morning and the other 10-12 sites asap after").[3]

OPL's brochure further shows that it is affiliated with the Jupiter Beach Resort, as it is one of its "Opal Collection" properties. SAC ¶18. Likewise, news articles identify OPL as also

---

[3]   Exhibit 1 is an April 2016 email chain sent by "Dan Rich * IT Director * Ocean Properties, Ltd." and "Cliff Lazenby, IT Director - Ocean Properties, Ltd." Exhibit 1 at pp. 2-4.

4

operating the Jupiter Beach Resort. *See id.* ¶18 (March 19, 2015 Article, stating: "Ocean Properties owns and operates some of our favorite hotels … includ[ing] the Jupiter Beach Resort & Spa in Florida"); *Id.* ¶19 (news article announcing that the general manager of another "Ocean Properties, Ltd. resort" was transferring to the "Jupiter Beach Resort & Spa" to manage that hotel). These public admissions should be sufficient to survive a summary judgment motion let alone a Rule 12b(6) motion.

### B. OPL's FACTA Violations

On March 9, 2016, Plaintiff used his VISA credit card to pay for his stay at the Jupiter Beach Resort and was given an electronically printed receipt generated from a point of sale device, reporting his name and the expiration date of his credit card. *Id.* at ¶¶ 41-42. Upon receiving the complaint in this case, OPL's technology staff addressed making corrections to avoid further FACTA violations at a dozen properties, including the Jupiter Beach Resort. Exhibit 1 pp. 2-4. OPL was previously put on notice of FACTA's truncation requirements from announcements surrounding the passage of the statute and its amendments, agreements OPL has with credit card processing companies, including American Express, MasterCard and VISA (SAC ¶¶ 22-31, 36-37), and when it was sued in June 2008, by a Florida resident who alleged that OPL willfully generated FACTA violative receipts, which OPL unsuccessfully sought to dismiss and ultimately settled. *Id.* at ¶¶38-39.

### C. OPL's Complex Corporate Structure Does Not Diminish Its Role Or Responsibility In Operating The Receipt Generation Process At The Jupiter Beach Resort And Other Properties

Ocean Properties, Ltd. ("OPL") is a privately owned company, formed by Tom Walsh and controlled and operated by the Walsh family, which purchase, develop, and operate hotel properties and businesses. SAC ¶¶ 5, 11; *see also id.* at ¶ 9 ("Ocean Properties, Ltd., a family-owned and managed company, operates a diverse portfolio of … properties"). OPL's president is Michael Walsh, one of Tom's sons, and Tom's other children (Mark, William, Patrick and Suzanne Lanigan) also serve as OPL officers. *Id.* ¶11.

Through a byzantine corporate structure, OPL operates numerous properties under the Ocean Properties, Ltd. legal name. *Id.* ¶10; *see also id.* ¶12 (OPL "*manage[s] and operate[s] through … various affiliates* over 100 hotels in North America") (emphasis added). OPL affiliates itself with other entities who own, lease and manage the physical properties, but OPL

5

maintains direct, centralized responsibility over certain operations of its affiliated properties, including printing the receipts at issue in this case. *Id.* ¶¶16-17. To that end, OPL maintains a "[c]entralized financial administration" function and "seamlessly" integrates all its "revenue management" processes among its affiliated properties. *Id.* ¶16. OPL touts its centralized structure as providing "powerful economies of scale". *Id.* Even more specific to the credit card receipts at issue in this case, OPL represents to customers that "*Ocean Properties, Ltd.* respects the privacy of all our guests, and we are committed to protecting it," including their "financial information (such as credit card number and expiration date, etc.)." *Id.* ¶ 17. (further stating: "*Ocean Properties, Ltd.* is committed to the security of the data collected…") (emphasis added). No other legal entity is identified as involved with these specific functions. *Id.*

OPL exercised centralized control over the receipt-generating process at the Jupiter Beach Resort. *Id.* ¶¶15-17. OPL's recent document production, an April 2016 email chain, confirms that OPL was intricately involved in correcting the FACTA violative receipt process at a dozen of its affiliated properties, including the Jupiter Beach Resort, and admitted that "showing the expiration date [on receipts issued to customers] is very bad" and a "violation of federal law." Exhibit 1 at pp. 2-4.

With respect to the complex corporate structure of Jupiter Beach Resort, OPL initially owned and developed the property in 2005 (*id.* at ¶12) and public records confirm that OPL continued to do so until at least October 2007. *Id.*; *see also* Exhibits 2, 3 and 4 (Jupiter Beach Resort permit applications filed in 2005, 2006 and 2007, respectively, identifying "Ocean Properties" as owner).[4] In 2007, at least 5 entities were incorporated to own, lease and manage that property while OPL continued to control the "centralized" operations relevant to this case, receipt generation. *Id.* at ¶¶ 12, 16-17. More specifically, Defendants Oprock Jupiter Fee ("OJF"), Oprock Jupiter TRS ("OJT") and GHM Jupiter ("GHM") were formed, *id.* ¶ 12, with OJF owning the property and leasing it to OJT, and GHM managing the property pursuant to an agreement with OJT. *Id.* ¶¶6-8. Two other entities were also formed in 2007, Oprock Jupiter Mezz, LLC ("OJM") (a private Delaware company acting as manager of OJF) and Global Hospitality Management LLC ("Global Hospitality") (a Florida company acting as one of the managers of GHM). *Id.* ¶12.

---

[4] As OPL itself concedes, courts may take judicial notice of public records at the motion to dismiss stage. *See* OPL MTD 6 n. 8 & 9 (citing among others *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999)).

OPL, OJF, OJT, OJM, GHM, and GHM Hospitality are directly and/or indirectly owned, managed and/or operated by the Walsh family. *Id.* at ¶¶ 9-12. OPL's primary business address in Florida is 1001 E. Atlantic Ave., Delray Beach, Florida, SAC ¶ 5, which is also the business address of the Walsh children who manage the Oprock and GHM entities, and is also the principal business address of GHM Hospitality. *Id.* at ¶ 13. OPL's brief further reveals that the Oprock Jupiter Fee and Oprock Jupiter TRS entities are financed by Rockwood Capital ("Rockwood"), *see* OPL MTD 11-12, which indicates that the "Oprock" names are a combination of the "*O*cean *P*roperties, Ltd." and "*Rock*wood Capital" names, with OPL providing the managerial and operational resources and Rockwood providing the financing.

Notably, in response to Plaintiff's interrogatory request seeking the identity of the entity or entities responsible for the receipt generation process, OPL objected and refused to answer until after it was required to answer the complaint. Exhibit 5 (Interrogatory Response No. 23). OPL's gamesmanship in using its complicated corporate structure to "hide the ball" should not be tolerated. Regardless of the complicated business structure, or which related entity owned or leased the hotel, the well supported factual allegations show that OPL is the entity responsible for the receipts at issue.

### III.     STANDARD OF REVIEW

As the movant under Fed. R. Civ. P. 12(b)(6), OPL has the burden of proving the first amended complaint does not adequately plead Plaintiff's FACTA claim. *Sprint Solutions, Inc. v. Fils-Aime*, 44 F. Supp. 2d 1224, 1228 (S.D. Fla. 2014). To adequately plead a claim, the complaint "need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007). This means a complaint need only contain enough facts to make the claim "plausible." *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010), citing *Twombly*, 550 U.S. at 570.

A claim is plausible if, taking Plaintiff's allegations as true and construing them in his favor, the complaint allows the court to reasonably infer that OPL is liable for the conduct alleged. *Speaker*, 623 F.3d at 1380, *citing Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Plausibility does not require specific or detailed allegations. *Erickson*, 551 U.S. at 93 ("Specific facts are not necessary."); *Molina v. Aurora Loan Servs., LLC*, 635 Fed. Appx. 618, 625 (11th Cir. 2015) (same); *Twombly*, 550 U.S. at 555 ("a complaint attacked by a Rule 12(b)(6) motion

7

to dismiss does not need detailed factual allegations"). Also, it is unnecessary to plead facts to show that it is "likely" that the plaintiff will win. *Speaker*, 623 F.3d at 1380 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."), *quoting Bell Atlantic*, 550 U.S. at 556.

Instead, Plaintiff only needs to allege enough facts, taken as true and construed in his favor, to show that his right to recover is not speculative. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Randolph v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 33396, at *5 (S.D. Fla. Mar. 13, 2014) (Rule 8(a)(2) requires only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). Thus, to justify its motion, OPL must prove Plaintiff's allegations are so lacking that his claim is merely speculative. As explained below, OPL has not and cannot meet that burden.

## IV. ARGUMENT

The FACTA's liability provision states:

> no *person* that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number *or the expiration date upon any receipt* provided to the cardholder at the point of the sale or transaction.

15 U.S.C. §1681c(g)(1) (emphasis added).

The term "person" under FACTA is broadly defined and does not require the defendant to have owned, leased or managed the physical property at which the FACTA violative receipt is generated. *See* 15 U.S.C. §1681a(b) (broadly defining "person" to include "any … corporation … or other entity"). *See, e.g.*, *Grabein v. Jupiter Images Corp.*, 2008 U.S. Dist. LEXIS 65828, at *11 (S.D. Fla. July 7, 2008) (rejecting defendant's narrow view of "person" under FACTA and its "fail[ure] to address [a] straightforward reading of the statute;" specifically refusing to exclude corporations from FACTA's reach where a debit card was involved); *Edwards*, 527 F. Supp. 2d at 1211-12 (question of fact remained as to whether company was liable under FACTA along with third-party vendor).

Indeed, as courts have held in other analogous contexts, parties without ownership interests in property at which they committed an unlawful act are still liable for their own

misconduct. *See, e.g.*, *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169-70 (11th Cir. 2014) (reversing dismissal of claims against corporation which contaminated property it did not own); *Darney v. Prods. Co., LLC*, 771 F. Supp. 2d 91, 115 (D. Me. 2011) ("the fact that other persons contribute to a nuisance is not a bar to the defendant's liability for his own contribution"); *Pakootas v. Teck Metals, Ltd.*, 452 F.3d 1066, 1080 (9th Cir. 2006) ("a party need not own the [property] to be liable"); *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 24-25 (1st Cir. 2004) (holding non-owner liable for role in wrongdoing); *United States v. Mottolo*, 629 F. Supp. 56 (D. N.H. 1984) (a party "need not own or possess" property to be subject to direct liability for their unlawful activity at the property); *Hernandez v. Cnty. of Monterey*, 70 F. Supp. 3d 963, 972 (N.D. Cal. 2014) ("To be liable under Title III of the ADA, an entity need not 'own' the location, but may merely 'operate' a place of public accommodation in that space"); *see also Baker v. Major League Baseball Props.*, 2009 U.S. Dist. LEXIS 81982, at *11 (S.D. Cal. Sept. 8, 2009) (citing *Alcarez v. Vece*, 14 Cal. 4th 1149, 1162 ("A defendant need not own, possess *and* control property in order to be held liable; control alone is sufficient") (emphasis in original)).

### A. OPL Is Subject To Direct And Joint Liability For Its Role In Generating FACTA Violative Receipts

OPL completely ignores Plaintiff's allegations that OPL is directly and/or jointly liable for its role in centralizing the receipt generation function and issuing FACTA violative receipts (SAC ¶¶ 16-17), and instead falsely argues that "Plaintiff's latest legal theories rely exclusively on veil piercing." OPL Br. 3 & 16. OPL's strawman argument should be rejected. The FACTA is a clear, broad statute that applies to all corporations involved in issuing violative receipts, as OPL is alleged to have done. *See, e.g.*, *Grabein and Edwards*, supra.

Plaintiff did not allege a veil piercing theory, as OPL wrongly claims, and OPL's red herring cannot undercut Plaintiff's actual allegations. As numerous courts have held, defendants are subject to direct liability whether or not they may also be subject to *alter ego* or veil piercing liability. *See, e.g.*, *Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 915 (S.D. Ohio 2003) ("the fact that the Plaintiffs may not be able to pierce the corporate veil is irrelevant to the issue of Kazinet's personal liability for his own conduct") (citing *Yo-Can, Inc. v. The Yogurt Exch., Inc.*, 778 N.E.2d 80, 91 (Ohio App. Ct. 2002) (recognizing that plaintiffs need not pierce the corporate veil to hold corporate officers liable for the allegedly fraudulent conduct in which they personally engaged); *Graham v. Barolat*, 2004 U.S. Dist. LEXIS 23567, at *5 (E.D. Pa. Nov. 17,

9

2004) ("under the theory of corporate negligence, the hospital is directly liable, as opposed to vicariously liable, for its own negligent acts") (citing *Moser v. Heistand*, 681 A.2d 1322, 1325 (Pa. S. Ct. 1996)); *Gorsuch v. One West Bank, FSB*, 2015 U.S. Dist. LEXIS 63976, at * 23 (N.D. Ohio May 15, 2015) ("Because Gorsuch adequately alleges Balboa and QBEIC's own participation in the enterprise, this Court need not address the parties' successor and vicarious liability arguments"); *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 2016 U.S. Dist. LEXIS 23254, at *6 (M.D. Fla. Feb. 25, 2016) (denying motion to dismiss direct liability claims against defendant based on the court's recognition that plaintiff is not seeking liability under vicarious or derivative theories).

Here, Plaintiff is seeking to hold OPL liable for its own misconduct. Plaintiff alleges, with extensive supporting evidence, that OPL centralized its administrative functions, including printing receipts, for all of its affiliated properties, including Jupiter Beach Resort. SAC ¶¶ 16-17. Not only are the allegations specific on this key point, but they are also well supported. *Id.* (citing OPL's website stating that it has "[c]entralized [its] financial administration" function, "seamlessly" integrated all its "revenue management" processes among its affiliated properties, and touts this approach as providing "powerful economies of scale," and further explicitly representing that "Ocean Properties, Ltd." is "committed to protecting" customer privacy including their "financial information (such as credit card number and expiration date, etc.)"). OPL completely ignores these factual allegations and supporting evidence, and cannot draw any reasonable counter-inference from them. These allegations are further supported by recent discovery received from OPL, confirming that "Ocean Properties, Ltd." technology personnel were involved in correcting the FACTA violative receipt process. Exhibit 1. These allegations, therefore, subject OPL to direct or joint liability, and certainly warrant denying OPL's motion and allowing Plaintiff discovery to resolve this factual dispute. *See, e.g.*, *Desousa v. Anupam Enters.*, 2010 U.S. Dist. LEXIS 56332, at *8-9 (M.D. Fla. May 20, 2010) ("Whether plaintiffs will be able to demonstrate that Citgo is a person that accepts credit cards or debit cards for the transaction of business within the meaning of FACTA will be determined at summary judgment or trial."); *see also Palm Beach Golf Center-Boca, Inc. v. John G. Saris, D.D.S., P.A.*, 781 F.3d 1245, 1249-50 n. 4 (11th Cir. 2015) (reversing summary judgment for defendant on claims seeking direct or vicarious liability, and noting Rule 8's low pleading standards); *Shamblin v. Obama for Am.*, 2015 U.S. Dist. LEXIS 50989, *12-19 (M.D. Fla. Apr. 17, 2015) (finding

10

disputed issues of fact precluded summary judgment on claims brought under direct and vicarious liability theories).

OPL's response does not discuss, let alone counter, these specific, well-pled allegations. Instead, OPL poses a straw man argument: that Plaintiff's claims depend upon piercing the corporate veil, and that such an effort should fail. (OPL Br. 9-12). Indeed, in its efforts to undercut Plaintiff's allegations of overlapping ownership and management among OPL and its affiliated entities, OPL ignores the specific allegations that it directly operates and controls the receipt generating process at its affiliated properties (never even citing or mentioning SAC ¶¶ 16-17).[5]

OPL's finger pointing at the other Defendants (Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter), who are also alleged to be directly and/or jointly liable for their own actions and roles, is misplaced. OPL cannot distract from its own misconduct by pointing its finger at these others. *See, e.g.*, *Tillman v. Wheaton-Haven Recreation Ass'n.*, 517 F.2d 1141, 1144 (4th Cir. 1975) (recognizing a party is "personally liable" for its own "wrongful act" and not "exonerated from liability because the corporation was also liable").

Moreover, the complex corporate structure OPL chose to employ in operating its affiliated properties, along with the overlapping personnel among these entities, further supports Plaintiff's position because only the Ocean Properties, Ltd. legal name was identified in the receipt generating process. As such, a reasonable inference exists that the OPL affiliated entities all used OPL for this function, or at least that OPL and its affiliated entities function jointly on this issue, and therefore, Plaintiff should be allowed to proceed to discovery to identify the role OPL and its affiliated entities actually played in the alleged FACTA violations. *See FTC v. U.S. Oil Gas Corp.*, 1987 U.S. Dist. LEXIS 16137, at *40-42, 59-60 (S.D. Fla. July 10, 1987) (finding liability against related corporations engaged in "same products," with same "controlling principal and shareholder," same managers, and same offices because they constituted one

---

[5] Nor would it be appropriate to give any weight to OPL's arguments had it raised such challenges at this stage. *See, e.g.*, *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 2016 U.S. Dist. LEXIS 23254, at *6 (M.D. Fla. Feb. 25, 2016) (denying motion to dismiss direct liability claims and acknowledging plaintiff's argument that it is not seeking vicarious or derivative liability); *Desousa*, 2010 U.S. Dist. LEXIS 56332, at *8-9 (recognizing "the Court must assume the truth of plaintiffs' factual allegations" when deciding whether defendant is a "person" subject to FACTA).

11

ongoing enterprise, despite the existence of some corporate separateness); *Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 183 (E.D.N.Y. 2010) ("in the absence of clear evidence regarding the corporate relationship among the Defendant companies and the individual Defendants, the court makes no finding at this time with respect to individual or joint liability"); *Operating Eng'rs Local 101 Pension Fund v. Al Muehlberger Concrete Constr., Inc.*, 2013 U.S. Dist. LEXIS 138267, at *20 (D. Kan. Sept. 26, 2013) (upholding direct liability claims against "corporations [holding] themselves out interchangeably"); *FTC v. 120194 Canada, Ltd.*, 2007 U.S. Dist. LEXIS 12657, at *16-18 (N.D. Ill. Feb. 12, 2007) (finding that "corporate defendants were engaged in a common enterprise" and therefore "jointly and severally liable" where corporate names were used "interchangeably"); *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254, 271 (D. Mass. 2008) (denying entities' summary judgment despite not having overtly engaged with plaintiff where these entities and the one who did engage operated as a "unitary course of business"); *Budisukma Permai SDN BHD v. N.M.K. Prods.*, 606 F. Supp. 2d 391, 399-400 (S.D.N.Y. 2009) (finding corporations that are "closely owned and directed by what appears to be the same group of people" and "have common office addresses," sufficient for alleging liability); *Ret. Plan of Unite Here Ntl. Ret. Fund v. Kim*, 2009 U.S. Dist. LEXIS 12190, at *5-6 (N.D. Ill. Feb. 17, 2009) (theory of liability viable where defendant held himself out "interchangeably" and "perform[ed] the same services with the same employees out of the same locations"); *see also United States ex rel. Dalitz v. AmSurg Corp.*, 2014 U.S. Dist. LEXIS 177374, at *18-19 (E.D. Cal. Dec. 23, 2014) (denying motion to dismiss conspiracy claims based on "complicated corporate structure" where questions remained); *Danielsen v. Pa. College of Tech*, 2014 U.S. Dist. LEXIS 145901, at *10 (M.D. Pa. Oct. 9, 2014) (denying defendants' motion for a more definite statement where it was "nearly impossible for Plaintiff to understand the complex corporate structure of the Defendants' businesses" at this stage).[6]

### B. *Alternatively*, OPL Is Subject To Vicarious Liability For Acts Of Its Agents Or, alternatively, For Acting On Behalf Of Its Principals

---

[6] Further support is shown in the 2008 FACTA lawsuit filed against OPL in this district which OPL unsuccessfully attempted to dismiss and eventually settled. SAC ¶¶38-39. No other legal entity was named as a defendant or involved in resolving that lawsuit, wherein OPL admitted to operating another Opal Collection hotel. *Id.* & Exs 25-26. Additionally, despite launching a vigorous attack on the complaint, OPL did not challenge it being a wrong party. *Id.*

Vicarious liability and agency principles involve questions of fact for juries to decide. *Borg-Warner Leasing Div. of Borg-Warner Acceptance Corp. v. Doyle Electric Co.*, 733 F.2d 833, 836 (11th Cir. 1984) ("Under Florida case law, a question of agency is reserved to the trier of fact"); *Patterson v. Denny's Corp.*, 2008 U.S. Dist. LEXIS 6747, at *7 (W.D. Pa. Jan. 30, 2008) (accepting as true plaintiff's allegation that defendants exercised control for FACTA liability). It is unnecessary for Plaintiff to specifically plead apparent agency or vicarious liability because those are not independent causes of action but rather are theories of liability to be advanced at trial. *Platypus Wear, Inc. v. Clarke Modet & Co., S.L.*, 2008 U.S. Dist. LEXIS 10708, at *17-18 (S.D. Fla. June 23, 2008) (citing *Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir. 1987); and *Young v. 1st American Financial Services*, 977 F. Supp. 38, 41 (D.C. Cir. 1997)).

Under an apparent authority theory, "a principal is liable for the acts of an agent who had apparent authority to act … if either the plaintiff or a third-party relied upon the principal's representations which created apparent authority." *Shaw v. Shaw*, 1994 U.S. Dist. LEXIS 21651, at *14 (M.D. Fla. June 27, 1994) (citing *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987)). "[A]pparent agency can arise even in the face of the principal's silence when the principal by its actions creates a reasonable appearance of authority." *Borg-Warner Leasing*, 733 F.2d at 836 (a material issue of fact remained subjecting defendant to apparent agency liability for letting an individual use its letterhead and negotiate a transaction).

Here, Plaintiff alleges that OPL made numerous representations surrounding its involvement in the receipt generation process, which violated FACTA, including that it centralized that process within OPL. SAC ¶¶16-17. OPL's claim that other entities were responsible or involved because of their ownership or management responsibilities at Jupiter Beach Resort (*i.e.*, Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter), OPL MTD 9-12, supports Plaintiff's alternative apparent authority theory against OPL. More specifically, OPL's argument at most suggests that the other three entities acted as agents for OPL in carrying out the FACTA violative receipt generation process. OPL, however, does not offer any details of the other entities' involvement, nor would it be proper to delve into such detail at this stage. Plaintiff's allegations are clearly sufficient for pleading apparent authority liability. *See Todd v. Target Corp.*, 2012 U.S. Dist. LEXIS 44362, at *10-11 (N.D. Ill. Mar. 30, 2012) (recognizing vicarious liability applies to FACTA claims); *Edwards*, 527 F. Supp. 2d at 1212 (denying

13

defendant's motion for summary judgment where a jury could find that it was vicariously liable for an independent contractor's FACTA violations under the theories of: "express authorization, respondeat superior and apparent authority"); *Dobkin v. Enter. Fin. Group*, 2014 U.S. Dist. LEXIS, at *11-12 (D.N.J. Sept. 3, 2014) (finding statements on websites sufficient for alleging vicarious liability); *see also Keim v. ADF Midatlantic, LLC*, 2015 U.S. Dist. LEXIS 159070, at *26 (S.D. Fla. Nov. 9, 2015) (finding allegations that defendant "approved or authorized" other entities to promote its brand as sufficient to plead defendant's vicarious liability for the alleged illegal acts committed by others).[7]

Notwithstanding the foregoing, even if OPL is deemed an agent (as OPL attempts to pigeonhole itself as, OPL MTD at 4, 19-21) and the three entities deemed principals, OPL would still be liable for its own misconduct as explained above in § IV.A. *supra*. *See* Restat. 3d of Agency, §7.01 ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."); *Fair Hous. Ctr. Of the Greater Palm Beach, Inc. v. Sonoma Homeowners Ass'n*, 141 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("an agent who assists his principal in committing a tort is himself liable as a joint tortfeasor"); *Muzuco v. Re$ubmitIt, LLC*, 2012 U.S. Dist. LEXIS 110373, at *19 (S.D. Fla. Aug. 7, 2012) (denying motion to dismiss claims pled on alternative theories of "joint venture" and "agency"); *McDonnell v. Cracker Barrel Old Country Store, Inc.*, 2007 U.S. Dist. LEXIS 8204, at *5-6 (S.D. Ala. Jan. 31, 2007) ("both the agent and the principal are generally liable for the agent's unintentional torts committed within the line and scope of the agency").

### C. OPL's Arguments Against Holding It Liable Are Premature And Unavailing

OPL prematurely injects numerous factual disputes, wrongly argues that Plaintiff's Second Amended Complaint "offers absolutely no new additional material" and is "substantively identical" to his previous complaint, and also misstates the Court's August 15 ruling in

---

[7] Plaintiff's cited news articles further confirm that, at a minimum, "Ocean Properties, Ltd." was perceived by outsiders as operating Jupiter Beach Resort and other properties, giving rise to at least apparent authority. SAC ¶¶18-19; *see, e.g.*, *Hossfeld v. Gov't. Employees Ins. Co.*, 88 F. Supp. 3d 504, 510-11 n. 13 (D. Md. 2015) (recognizing "apparent authority is "based on reasonable person's perception of who authorized the [action]")

14

contending that the Court considered all the allegations raised in Plaintiff's current complaint. OPL MTD 2-4, 9-14.

### 1. OPL Misstates The Court's August 15, 2016 Order

In its August 15, 2016 Order, the Court granted OPL's motion to dismiss Plaintiff's First Amended Complaint without prejudice, stating that "the Court does not find that 'amendment would be futile.'" ECF No. 44, p. 9. The Court recognized that Plaintiff's Response to OPL's Motion to Dismiss the First Amended Complaint sought to argue that OPL was "*jointly* liable, or liable based on theories of *direct* [or] vicarious … liability grounded in OPL's control or affiliation with other entities," (*id.* at 10, emphasis added), but the Court did not consider these arguments because Plaintiff raised them only in his Response brief and not in his Amended Complaint. *Id.* ("Plaintiff's arguments in his Response do not constitute factual allegations upon which the Court may rely"). The Court also "[found] that amendment is not futile because assuming Plaintiff sufficiently pleads Defendant's relationship to the Resort, the Amended Complaint may adequately plead a FACTA violation." *Id.* at 11. OPL omits mentioning these parts of the Court's decision in wrongly claiming that the Court considered the material now included in Plaintiff's second amended complaint. OPL's MTD 1-2.

In his Second Amended Complaint, Plaintiff cured those defects and included the arguments and factual support which this Court declined to consider previously, and also sufficiently pled the relationship OPL has to the Jupiter Beach Resort and its other affiliated properties. Specifically, as explained *infra*, Plaintiff alleges that OPL controlled the centralized function involving the receipt generation process, SAC ¶¶ 16-17, which OPL completely ignores. OPL's numerous red herrings – that Plaintiff solely pleads veil piercing liability, that Plaintiff's "unitary business enterprise" theory is not recognized in this district, and its numerous fact-based arguments misconstruing numerous ownership and finance-related documents beyond their meaning -- should be rejected. The Court should instead assess Plaintiff's well supported allegations which sufficiently pleads direct liability under FACTA against OPL.

### 2. OPL Improperly Requests The Court To Interpret Public Records Beyond Their Facial Import

OPL asks this Court not only to recognize public records identifying the entities who currently own, lease and manage the Jupiter Beach Resort property, but also requests the Court to interpret those documents as meaning no other entity was involved in the receipt generating

process at that OPL-affiliated property. OPL MTD 10-14. Putting aside such an interpretation contradicts OPL's own documents, the request is improper as it goes beyond the documents facial import, which merely identify the entities who own and lease, and may manage some aspects of the property. *See, e.g.*, *Bestfoods*, 524 U.S. at 65 (recognizing that liability may attach whether one owns *or* operates a facility). Indeed, these documents do not identify who *exclusively* operates the property, let alone the receipt generating process, or which other entities (such as OPL), are involved. Additionally, OPL's broad interpretation, which is nowhere to be found in any of the documents OPL proffers, is contrary to the allegations and evidentiary support Plaintiff submits. SAC ¶¶ 16-17; Ex. 1. As such, OPL's interpretation must be rejected. *See, e.g.*, *Gilley v. J.P. Morgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 189888, *2 n.1 (S.D. Cal. Oct. 12, 2012) ("A court, however, may decline to take judicial notice of irrelevant facts even if they are public records.") (citing *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998)); *Sheffield v. State Farm Fire & Cas.. Co.*, 2016 U.S. Dist. LEXIS 82172, at *24-25 (S.D. Ga. June 23, 2016) (finding public records which lacked a nexus to the allegations irrelevant).

### 3. OPL's Website Statements Should Not Be Disregarded

OPL argues that this Court should disregard Plaintiff's allegations based on statements made in OPL's websites. OPL's MTD 8. Under Rule 12b(6), the allegation alone is sufficient. The fact that Plaintiff was able to point to OPL's own web site simply illustrates the allegation is well founded. Even if this was a summary judgment issue, these statements are critical party admissions from OPL in support of Plaintiff's claims and should not be disregarded. *See, e.g.*, *August v. Boyd Gaming Corp.*, 135 Fed. Appx. 731, 733 (5th Cir. 2005) (company subject to direct liability where it "holds [itself] out as [the] operator" on its "website") *Moras v. Marco Polo Network, Inc.*, 2012 U.S. Dist. LEXIS 79289, at *9 (S.D.N.Y. May 31, 2012) (finding defendant's own testimony supportive of entity's liability). OPL's argument to exclude those allegations is based on inapposite case law and a misinterpretation of this Court's prior ruling.

The cases OPL relies on involve, unlike here, the court weighing alter ego factors or the use of a generic entity name posted on a shared website which could not be attributed to a specific legal entity engaged in misconduct. *See* OPL's MTD 8 n.11 (citing *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 347 (5th Cir. 2004) (rejecting as sufficient website postings

16

that merely referred to entities as "The Company").[8] In contrast, OPL is the only identified legal entity mentioned in its websites, which it exclusively owned and controlled. SAC ¶¶ 15, 18 ("OPL owns and operates the website"); *see also Boyd Gaming*, 135 Fed. Appx. at 733 (company subject to direct liability where it "holds [itself] out as [the] operator" on its "website"); *Scott v. Unum Life Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 145741, at *7-8 (W.D. La. Jan. 11, 2010) (rejecting argument that website statements should be disregarded, recognizing numerous decisions which considered such statements in support of claims, and finding website statements relevant to determine insurer's level of involvement); *Budisukma*, 606 F. Supp. 2d at 399 (relying on defendant's website statements in finding group of entities subject to liability). Notably, none of the other entities that own, lease or manage the Jupiter Beach Resort are mentioned in OPL's exclusively-owned websites as operating or controlling the receipt generating process. To disregard allegations citing to OPL's owned and controlled website is unfounded.

Finally, as explained above, this Court did not address the allegations raised in Plaintiff's SAC; specifically SAC ¶¶ 16-17, among others. Thus, contrary to OPL's assertion, this Court could not have previously determined whether those specific allegations should be credited. And, more importantly, OPL provides no reason for them not to be credited against OPL. Indeed, all of Plaintiff's allegations must be taken as true, and all reasonable inferences must be construed in Plaintiff's favor, which clearly warrants denying OPL's motion to dismiss. *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1223 (11th Cir. 2014).

## V.     CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Ocean Properties, Ltd.'s Motion to Dismiss.

Dated: November 17, 2016

            Respectfully submitted,

---

[8]     OPL relies on other inapposite decisions. OPL MTD 8 n. 11 (citing *Sol Melia, S.A. v. Fontana*, 67 So. 3d 1226, 1227 (Fla. App. Ct. 2011) (finding no jurisdiction over Spanish corporation which did not conduct business in Florida); *Anderson v. Ridge Tool Co.*, 2008 U.S. Dist. LEXIS 35612, at *1 (E.D. Ky. April 30, 2008) (decided at summary judgment); *Esniton Records Inc. v. Jonestm, Inc.*, 2008 WL 2415997, at *10 (N.D.Tex. June 16, 2008) (involving assessing alter ego claim where parent corporation website merely mentioned employment opportunities at the subsidiary company).

17

                                               By: /s/ *Scott D. Owens*
                                               Scott D. Owens, Esq.
                                               Florida Bar No. 0597651
                                               SCOTT D. OWENS, P.A.
                                               3800 S. Ocean Dr., Ste. 235
                                               Hollywood, FL 33019
                                               Telephone: (954) 589-0588
                                               Facsimile: (954) 337-0666
                                               scott@scottdowens.com

BRET LUSSKIN, P.A.
Florida Bar No. 28069
20803 Biscayne Blvd., Ste 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Michael R. Karnuth, Esq.
Admitted *Pro Hac Vice*
KEOGH LAW LTD.
55 W. Monroe, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093
mkarnuth@keoghlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on November 17, 2016, I electronically field the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties below, if any, who are not authorized to receive electronically Notices of Electronic Filing.

                                                    By: /s/ *Scott D. Owens* .
                                                  One of Plaintiff's Attorneys