**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 9:16-cv-80502-BB

| | |
|---|---|
| JUSTIN BOUTON, individually and, on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) ) **CLASS ACTION** ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| OCEAN PROPERTIES, LTD., a foreign corporation, OPROCK JUPITER FEE, LLC, a foreign limited liability company, OPROCK JUPITER TRS, LLC, a foreign limited liability company, and GHM JUPITER, LLC, a foreign limited liability company. | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) / |

**DEFENDANT OCEAN PROPERTIES, LLC'S OPPOSITION**
**TO PLAINTIFF'S MOTION TO COMPEL**

Defendant, Ocean Properties, Ltd. ("OPL"), respectfully opposes *Plaintiff's Motion to Compel Production of Discovery and Memorandum of Law in Support* [DE 83] ("Motion to Compel"), filed by Plaintiff, Justin Bouton ("Plaintiff"), on November 22, 2016, and requests that this Court conserve judicial resources by delaying ruling until the district court rules on the dispositive motion to dismiss that would moot the Motion to Compel, or in the alternative sustain OPL's objections and deny the Motion to Compel as set forth herein.

## I. INTRODUCTION

Plaintiff is attempting to hold OPL liable for a purported violation of FACTA at the Jupiter Beach Resort & Spa (the "Resort"), despite Plaintiff's knowledge that (1) OPL does not own the Resort, (2) that a legally distinct entity (and Defendant in this lawsuit), GHM Jupiter, LLC ("GHM"), is contracted with the owner to provide day-to-day management services and (3) OPL is acknowledged to not be the parent entity of GHM and did not deliver the alleged receipt to Plaintiff.  Plaintiff appears to be attempting to prolong the pleadings process against OPL in order to use the pendency of the claims against OPL to conduct a fishing expedition into OPL's business operations.

In the instant motion, Plaintiff inaccurately characterizes OPL as an "operator of numerous hotel properties," and references the Resort as "OPL's" hotel. [DE 83] at 2.  Plaintiff knows these allegations are untrue—in the text of footnotes 6 through 9 of the Second Amended Complaint, Plaintiff acknowledges that the Resort is owned by Oprock Jupiter Fee, LLC ("Fee"), who leases it to Oprock Jupiter, TRS, LLC ("TRS").  [DE 47].  Plaintiff attempts to justify its position in the Second Amended Complaint and this Motion by stating that on information and belief that the Walsh family is involved in the entity that manages Fee and TRS. Nothing in the Complaint Exhibits or anything filed by Plaintiff establishes that OPL has any ownership, control

1

or management of the Resort, Fee, or TRS.[1]

In discovery, Plaintiff has received the Mortgage Loan Agreement on Jupiter; Schedule III contains an organizational chart that specifies the ownership structure of the Resort and who owns Fee and TRS. **Exhibit A,** at 353. The Loan Agreement conclusively shows (1) that Rockwood REIT owns 92.67% of Rockwood Ocean, LLC, (2) Rockwood Ocean alone owns the entities owning the Resort, and (3) discovery has disclosed that "Walsh Family" interests—*not OPL*—own 7.33% of Rockwood Ocean. Id. The First Amendment to the Rockwood Ocean Operating Agreement produced for Plaintiff further confirms this. **Exhibit B**. In connection with OPL's pending Motion To Dismiss [DE 66], it has been shown that (1) Rockwood is unaffiliated with OPL or the Walsh family and (2) GHM (a separate company), *and not OPL,* manages the Resort under the terms of Management Agreement (**Exhibit C**), which was produced to Plaintiff in discovery. Plaintiff even referenced the agreement in the Second Amended Complaint, [DE 47] at 3.

These matters relating to ownership and control are largely in public records, which have all been attached to the pending Motion To Dismiss. [DE 66]. Plaintiff has not attempted to and cannot controvert these documents. Plaintiff nonetheless insists that the Resort is "OPL's," a comment devoid of any shred of material corroborating evidence in an effort to mislead this Court into granting the Motion To Compel.[2]

---

[1] Plaintiff has known OPL has no ownership, possession or control of the Resort since the first motion to dismiss was filed in this case in June 2016, which attached the deeds to the property [DE 10-2]. Further, certified copies of the same with an SNDA document [DE 24-3] were attached in the motion to dismiss the amended complaint [DE 24], proving conclusively the lack of OPL's involvement in the Resort.

[2] But there is more: Plaintiff also has OPL's sworn interrogatory answers, which state that during the relevant period, OPL did not own the Resort (OPL owned only two hotels in the United States, neither of which was the subject hotel). [DE 83-2] at 6. Plaintiff has not alleged that these other two hotels committed a FACTA violation. Further, Plaintiff admittedly does not seek to pierce the corporate veil and hold OPL liable. [DE 80] at 2-4. Moreover, the district court has already agreed with OPL that Plaintiff failed to plead a veil piercing theory, and dismissed the amended complaint without prejudice for

2

On the merits of the discovery requests, given this background, OPL's objections should be sustained and the motion to compel should be denied because Plaintiff has not pleaded that a FACTA violation occurred at an OPL hotel. Further, because none of Plaintiff's various complaints has pleaded a viable veil-piercing theory, the vast majority of Plaintiff's requests for discovery are not relevant to a legally-cognizable claim or defense. Plaintiff did not meet and confer on many of the requests, and many of the requests are vague, ambiguous, or overly burdensome and irrelevant. Moreover, Plaintiff prematurely seeks financial net worth discovery, and improperly seeks extensive additional information regarding the corporate and management structure of OPL, despite not pleading a viable claim that would form the basis for this discovery. Instead of waiting a couple of days for OPL to file its reply in support of the motion to dismiss, Plaintiff involved this Court by filing a motion to compel, wasting judicial resources, and requiring unnecessary briefing.[3] The discovery at issue in the instant motion to compel is a last-ditch fishing expedition before the claims against OPL are dismissed with prejudice.

## II. THE MOTION TO COMPEL IS PREMATURE BECAUSE PLAINTIFF DID NOT MEET AND CONFER ON MANY OF THE REQUESTS.

Undersigned counsel served a letter to Plaintiff' memorializing the parties' "meet and confer," which occurred on September 21, 2016. [DE 83-9]. As is clear from the letter, Plaintiff did not meet and confer on all requests that are subject to the motion to compel [DE 83]. For

---

Plaintiff to plead a theory that would hold OPL liable. [De 44]. The district court found especially persuasive the certified public records, which the court judicially noticed, showing the ownership and management structure, none of which included OPL. [DE 44]. Despite a final opportunity to plead an alter ego or mere instrumentality theory, Plaintiff has not done so in the second amended complaint, and OPL's Reply on its Motion to Dismiss (due Thursday December 1, 2016) will address this.

Finally, in addition to its document production, OPL answered over 100 interrogatories and requests for admissions, none of which Plaintiff has disputed (or can dispute). Plaintiff served 95 requests for admissions alone. [DE83-4; 83-7]. Plaintiff has now been provided ample, clear, and unequivocal evidence that OPL has **no relationship**—financial or otherwise—with the Resort, does not have business dealings with the Resort, has no employees at the Resort, and does not carry the Resort or any loan to the Resort on OPL's financial statements. See [DE 83-7], Nos. 4-30.

[3] The Motion to compel directed to OPL is also entirely unnecessary because Plaintiff has now served virtually identical interrogatories on GHM, Fee, and TRS, who Plaintiff concedes are the proper owners and operators of the Resort.

3

example, Plaintiff did not meet and confer with OPL on:

- Interrogatories 8, 12,
- Request for production 1, 2, 3, 28
- Requests for admissions 32, 33, 34, 35, 37, 38, 39, 40, 41, 42.

Further, there is a pending request for stipulation. In response to the meet and confer question for interrogatory 17, OPL asked if Plaintiff would be willing to stipulate that OPL was aware of FACTA's requirements before 2016. [DE 83-9] at 7-8. Plaintiff never responded.

### III.  OPL'S OBJECTIONS ARE NOT BOILERPLATE OBJECTIONS

As a threshold matter, OPL simply cannot produce things it does not have. OPL has no ownership, control, business arrangement, or other relationship to the subject hotel, and cannot be expected to provide discovery on matters relating to the hotel. Plaintiff has essentially acknowledged this fact, by serving identical discovery on the other defendants in this lawsuit—GHM, Fee, and TRS. The responses of these entities are due on Friday of this week (December 2, 2016).

Moreover, Rockwood, the party that formed and staffed the entities that actually own and control the subject hotel, has made it clear that even if OPL had access to any responsive documents, they were not OPL's to disclose and should not be disclosed by OPL. **Exhibit D**. Against this backdrop, any suggestion that OPL's well-taken objections are "boilerplate" is simply not accurate. The test for the objections is specificity, not number. Cf. Guzman v. Irmadan, Inc., 249 F.R.D. 399, 400 (S.D. Fla. 2008) (noting that boilerplate objections are nonspecific). As explained below, OPL repeatedly references the objections with more than a vague objection, by stating that the document as a point of sale and transaction receipt conflates the terms. Further, OPL expressly states that Plaintiff seeks discovery without pleading an alter ego claim. This Court should hold that these types of objections are sufficiently specific and that the mere fact that a party asserts the same objection to numerous requests does not mean the

4

objections are boilerplate.  The bottom line is that OPL simply does not have the documents or answers objected to because it do not own, possess, or operate the Resort; under these facts, the Eleventh Circuit has required Plaintiff's Motion be denied. Bloodworth v U.S., 623 Fed Appx 976, 979 (11th Cir. 2015).

**A. The "point-of-sale-or-transaction receipt" problem**

OPL has repeatedly objected that Plaintiff's request for a "point-of-sale-and-transaction" receipt is vague and ambiguous, in light of divergent case law on what constitutes a "point of sale" transaction.  For example, Plaintiff repeatedly requests answers, admissions, and production regarding "point-of-sale-and-transaction receipts."  However, Plaintiff fails to adequately define what constitutes a receipt generated at the "point of sale," and this issue is subject to considerable disagreement in the reported cases.[4]  Plaintiff has even recognized this problem in serving discovery to the co-defendants—he has modified his discovery requests to GHM, Fee, and TRS.  See **Exhibit E**, at 6; **Exhibit F**, at 6; **Exhibit G**, at 6 ("documents in a form substantially similar to Exhibit 1 containing the expiration date of a debit or credit card were electronically printed for customers").

Accordingly, OPL's numerous objections that a request for a "point-of-sale-and-transaction" receipt is vague and ambiguous are appropriate.  OPL cannot be required to guess at the meaning of Plaintiff's request.  Does Plaintiff refer to receipts delivered at the front desk, to

---

[4] Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 798 (7th Cir. 2010) (affirming district court that held at the motion to dismiss stage that an electronic receipt was not a "receipt" within the meaning of FACTA); Simonoff v. Expedia, Inc., 643 F.3d 1202, 1210 (9th Cir. 2011) ("'Point of sale' is a term of art that applies to 'face-to-face transactions that take place in a "bricks-and-mortar" store or some comparable physical location at which the consumer is handed a receipt.'" (quoting Shlahtichman, 615 F.3d at 800)); Kivo v. Blumberg Exelsior, Inc., 982 F. Supp. 2d 217, 219 (E.D.N.Y. 2013) ("This Court finds that the Defendant's proposed interpretation of Section 1681c(g)—interpreting the Section as applying only to receipts that result from in-person transactions—is objectively reasonable and thus grants the Defendant's motion to dismiss."); Turner v. Ticket Animal, LLC, 08-61038-CIV, 2009 WL 1035241, at *3 (S.D. Fla. 2009) (dismissing complaint and holding that "print" under FACTA can only be to imprint onto paper or some other tangible surface); Smith v. Zazzle.com, Inc., 589 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) ("a merchant's internet receipt that is automatically displayed on a computer screen is not subject to FACTA's truncation requirement").

receipts slid under a door the night before checkout, to receipts that are emailed, or all three? In essence, Plaintiff wants documents that OPL's counsel considers violative of the statute.

Without further definition by Plaintiff, OPL would essentially be making a legal conclusion. Plaintiff should be required to amend his requests and further define the factual basis for where the document is delivered. Plaintiff has inexplicably refused to agree to this definition for the instant requests.

**B. The relevance objections**

OPL also repeatedly relies on relevance and burdensomeness objections. As provided in the discovery responses, OPL only owned two hotels during the relevant period, and neither is the Resort. OPL provided certified public records to Plaintiff showing that GHM manages the resort. [DE 24]. Further, GHM has provided, in its rule 26.1 initial production, the management agreement between GHM and Fee, the owner of the Resort. **Exhibit C**. The agreement shows that Fee leases the resort to TRS, which in turn entered into a management agreement with GHM to manage the day-to-day operations. These are legally distinct limited liability companies. Nowhere is OPL given control or management authority. Further, OPL is not a parent to any of them.

Despite Plaintiff's knowledge of this information, he has not chosen to sue OPL under an alter ego or mere instrumentality theory—that choice requires dismissal in this jurisdiction.[5] Without pleading one of those theories, which requires pleading corporate formation for an improper purpose, Plaintiff's attempt to seek any information from OPL about a Jupiter Resort

---

[5] Garcia v. Kashi Co., 43 F. Supp. 3d 1359, 1395 (S.D. Fla. 2014) ("The Court concludes that the SAC must be dismissed as to Kellogg because it simply does not allege a 'mere instrumentality' or 'alter ego' theory of liability."). The district court cited Garcia when previously dismissing Plaintiff's complaint. [DE 44].

6

violation is irrelevant to a claim or defense under rule 26.1.[6]

## IV. THE CATEGORIES OF DISCOVERY

### A. Class Data

Plaintiff seeks to compel "class data" from OPL for its hotels. [DE 83] at 7. As previously provided in the discovery responses, the only hotels OPL owned during the relevant timeframe were two hotels in Florida. [DE 83-2] at 6 (providing that OPL currently only owns one hotel in the United States, the Delray Beach Marriot, and that OPL previously owned one other hotel during the relevant period that it no longer owns, the Holiday Inn Lakeside). In the Second Amended Complaint, there are no allegations of FACTA violations at these two OPL hotels. [DE 47].

Absent allegations that violations occurred at other hotels or that OPL is an alter ego for Jupiter, the discovery requests seeking transactions for other legally distinct entities are not relevant to any pending claim here. Further, OPL has already responded that it does not own hotels outside Florida. [DE 83-2] at 5 ("OPL does not own hotels outside Florida."). Plaintiff specifically seeks to compel requests for production 3 and 4. [DE 83] at 8 n.4. However, as noted above, Plaintiff failed to meet and confer on the requests for production. [DE 83-9] at 10.

Plaintiff argues that it should be entitled to discovery to support its claims that a complex corporate structure can create a nationwide class of hotels. However, as previously mentioned, an alter ego or mere instrumentality pleading standard is an absolute requirement in Florida.[7] Absent an attempt to pierce the corporate veil, discovery from other unrelated, legally distinct, entities is impermissible and irrelevant.

---

[6] See e.g., Rothchild v. Crane Co., 14-80271-CIV, 2014 WL 3805491, at *2 (S.D. Fla. Aug. 1, 2014) ("Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading." (quoting Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1127 (11th Cir.2014)).
[7] Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011); Garcia, 43 F. Supp. 3d at 1395.

Furthermore, the suggestion that overlapping owners and directors is enough to permit invasive discovery into other legally distinct entities is not supported by the case law. Countless cases analyze control over legally distinct entities that are "nonparty" corporate relatives and analyze whether the nonparty has participated in the litigation.[8] Here, GHM, Fee, and TRS are parties, not nonparties, and the ownership of the Resort and reporting structure (ultimately to Rockwood) prohibits OPL from obtaining information from the Jupiter entities.

**B. Merits Discovery**

Plaintiff likewise moves to compel on merits discovery, first seeking the names of persons and legal entities who determined the contents of the receipts. [DE 83] at 8. As can be seen in the text Plaintiff quotes, entitled "OPL's September 30, 2016 Supplemental Response,"OPL specifically stated "No one at OPL determined the contents, services relating to the contents were provided by Bob Garcia at Portsmouth Corporate Financial Services. . . ." OPL has already answered this request.

Plaintiff further seeks to compel OPL's contracts with credit card companies, agreements with those companies over a 10 year period, broad sweeping statements of "all documents" for credit card agreements, software, manuals, regulations, OPL's software to gather information, all relegated to footnotes without any explanation. [DE 83] at 8 n.5. None of this information is relevant to a claim or defense without an allegation that an OPL hotel committed a FACTA violation, and these requests go well beyond any relevant time periods. At most, the relevant period reaches back two years—when the statute of limitations began to run.

**C. "Corporate Structure Data"**

---

[8] For rule 34 purposes, courts analyze "(1) the corporate structure of the party/nonparty, (2) the nonparty's connection to the transaction at issue in the litigation, . . . (3) the degree that the nonparty will benefit from the outcome of the case, . . . [(4)] whether the related entities exchange documents in the ordinary course of business, and [(5)] whether the nonparty has participated in the litigation." Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc., 237 F.R.D. 561, 564 (D. Md. 2006).

Plaintiff is attempting to make OPL engage in costly discovery to provide additional "corporate structure information," despite having failed to plead an alter ego or mere instrumentality theory, as expressly required by Florida Law.  Plaintiff has not pleaded a violation of FACTA at either of the two hotels OPL owned during the relevant timeframe (April 2014 to present).   Even more egregiously, Plaintiff is moving to compel corporate information from OPL on confidential business information, such as board minutes from legally distinct entities (now parties) despite outstanding discovery requests to those entities.

In Plaintiff's first interrogatory (No. 23) to which Plaintiff seeks to compel a "substantive" response, Plaintiff seeks to identify the entity responsible for printing and maintaining software at OPL's hotels.  Plaintiff has not pleaded violations at OPL's hotels that it actually owns.  Thus, information for OPL's hotels is not relevant. OPL has nevertheless provided the relevant information indicating that the subject hotel is managed in day-to-day operations by GHM (according to certified public records).  Plaintiff also moves to compel for request for production 17 [DE 83 at 10], seeking an organizational chart for OPL and its entities, but OPL has already produced an organization chart for OPL.

Plaintiff moves to compel on request for production number 19, seeking an organizational chart of persons at OPL responsible for implementing and programming software. [DE 83] at 10 n.8. However, as is clear from Plaintiff's own attachment (the letter memorializing the meet and confer), Plaintiff did not meet and confer on request for production 19.  [DE 83-9] at 17-18.  In any event, OPL responded that no one at OPL conducts those functions.  [DE 83-3] at 11 ("None. There are no departments or employees of OPL that conduct these functions . . . .").

Plaintiff likewise seeks production of highly confidential business information, including all board meeting minutes, including the minutes of legally distinct entities, without any showing

9

of how or why this confidential information would be relevant. In any event, OPL has no authority to obtain or disseminate such information from the legally distinct Jupiter entities. As mentioned above, OPL received an email from Rockwood Capital, indicating that OPL could not turn over information related to the Resort and indicating that discovery requests should be directed to the co-defendant Jupiter entities. **Exhibit D**. Plaintiff nevertheless moves to compel against OPL for request for production 18, seeking documents identifying the directors/managers of the Jupiter Entities, all separate LLCs.

These requests are also not relevant because Plaintiff has not pleaded a veil piercing theory. Even if they were, discovery requests have now been served on the proper Jupiter entities for the same information—they are parties and have the authority to disseminate such information. For example, from each individual Jupiter entity, Plaintiff has interrogatories requesting the identity of the board of directors. **Exhibit E**, at 15 No.5; **Exhibit F**, at 16 No. 5; **Exhibit G**, at 16 No. 5**.** Thus, Plaintiffs have no need to seek such information from the legally distinct entity of OPL.

Furthermore, Plaintiff moves to compel OPL on requests for production 16, 17, and 18, seeking the board minutes from all the legally distinct Jupiter entities. [DE 83] at 10 n.8. Again, Plaintiff has requested production these same minutes of the board of directors from the actual Jupiter entities. **Exhibit E**, at 25 No. 38; **Exhibit F**, at 25 No. 38; **Exhibit G**, at 26 No. 38.

Plaintiff also seeks confidential "net worth" and other private financial information under the auspice of "corporate structure information." Plaintiff seeks to compel production in second request for production 19 for all OPL's bank accounts it has owned since April 2014. [DE 83] at 10 n.8. Specifically, in the meet and confer, Plaintiff requested the account numbers and even dollar amounts. [DE 83-9] at 23. Such financial information is not relevant because it does not

relate to Jupiter and no alter ego theory was pleaded.[9] And it is well settled that such financial information is not subject to production at this early juncture in a civil lawsuit.[10]

## IV.  CONCLUSION

OPL respectfully requests this Court deny the motion to compel, or delay ruling until after the District Court rules on the pending Motion to Dismiss.

Respectfully submitted this 29th day of November 2016.

> Respectfully submitted,
>
> SHUTTS & BOWEN, LLP
> 200 South Biscayne Boulevard
> Suite 4100
> Miami, Florida 33131
> Telephone: 305-347-7305
> Facsimile: 305-381-9982
> *Attorneys for Ocean Properties, Ltd.*
>
> By:   s/ Frank A. Zacherl
> Frank A. Zacherl
> Florida Bar No. 868094
> fzacherl@shutts.com
> Jake Monk
> Florida Bar No. 100321
> jmonk@shutts.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 29, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in

---

[9] Dellacasa, LLC v. John Moriarty & Associates of Florida, Inc., 07-21659-CIV, 2007 WL 4117261, at *2 (S.D. Fla. Nov. 16, 2007) (confining discovery to projects that are relevant to the claims and defenses identified in the pleadings under rule 26).

[10] "[A] private plaintiff may not discover an opponent's assets until after judgment against the opponent has been rendered." F.T.C. v. Turner, 609 F.2d 743, 745 (5th Cir. 1980) (citing Sanderson v. Winner, 507 F.2d 477, 479-80 (10th Cir. 1974)). "[The defendant's] financial status, like the financial status of most putative defendants is not relevant to any issue that will be raised in the contemplated lawsuit." Id.

11

some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                          s/ Frank Zacherl, Esq.
                                          *Counsel for Ocean Properties and GHM*

## SERVICE LIST

Michael R. Karnuth
Keogh Law, LTD
55 W. Monroe Street
Suite 3393
Chicago, IL 60603
312-726-1092
MKarnuth@KeoghLaw.com

Bret Leon Lusskin, Jr.,
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Suite 302
Aventura, FL 33180
954-454-5841
blusskin@lusskinlaw.com

Scott David Owens
Scott D. Owens, P.A.
3800 S. Ocean Drive
Suite 235
Hollywood, FL 33019
954-589-0588
scott@scottdowens.com

Stuart I. Grossman, P.A.
Jason K. Kellogg, P.A.
Victoria J. Wilson, Esq.
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789
sig@lklsg.com
jk@lklsg.com
vjw@lklsg.com

MIADOCS 14003549