UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-80502-BLOOM/Valle

JUSTIN BOUTON,

    Plaintiff,

vs.

OCEAN PROPERTIES, LTD., *et al.*,

    Defendants.
_____/

## ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Motions to Dismiss filed by Defendant Ocean Properties, LTD. ("OPL"), ECF No. [66] ("OPL's Motion"), Defendants Oprock Jupiter Fee, LLC ("Oprock Fee") and Oprock Jupiter TRS, LLC ("Oprock TRS") (collectively "Oprock Defendants"), ECF No. [76] ("Oprocks' Motion"), and GHM Jupiter, LLC ("GHM"), ECF No. [78] ("GHM's Motion") (collectively, "Defendants" and the "Motions"). The Court has carefully reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Motions are denied.

### I. BACKGROUND

Plaintiff Justin Bouton ("Plaintiff") brings a lawsuit "individually and on behalf of others similarly situated" against Defendants for their alleged violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended ("FCRA"). ECF No. [47] ¶ 1 ("Second Amended Complaint" or "SAC"). Plaintiff initially filed a Complaint on April 1, 2016, which he later amended. *See* ECF Nos. [1], [16]. The Court dismissed Plaintiff's First Amended Complaint ("FAC"), ECF No. [16], on

August 14, 2016, but granted leave to amend. *See* ECF No. [44]. Plaintiff has now amended his pleadings and has added three additional Defendants, all of whom move to dismiss the Second Amended Complaint.

In the SAC, Plaintiff claims that "Defendant, [OPL], is a Maine corporation whose principal address is 1001 E. Atlantic Ave., Delray Beach, FL 33483," and that "OPL represents that it develops, owns and operates hotels in several states, including Florida." SAC ¶ 5. Defendant Oprock Fee is a limited liability company incorporated in Delaware in May 2007 involved in real estate investment, and "owns the property Jupiter Beach Resort & Spa" ("Jupiter Resort"), "the hotel at which Plaintiff received a FACTA violative receipt." *Id.* ¶ 6. Defendant Oprock TRS is a limited liability company incorporated in Delaware in May 2007 also involved in real estate investment, and "leases the Jupiter Beach Resort property from Oprock Jupiter Fee." *Id.* ¶ 7. Defendant GHM is a limited liability company incorporated in Delaware in May 2007 that "purports to manage the Jupiter Beach Resort property pursuant to a management agreement with Oprock Jupiter TRS." *Id.* ¶ 8. Plaintiff claims that all Defendants are "privately-owned companies, which are directly and indirectly owned and operated by Tom Walsh and his children," and that "[t]hrough a byzantine ownership and management structure, Defendants operate their hotel businesses as a unitary enterprise." *Id.* ¶¶ 9-10. Specifically, "Defendants share common owners, managers, addresses, and resources, and use the OPL legal name when describing its business operations in a singular fashion." *Id.* ¶ 10. According to Plaintiff, "[a]t all times relevant herein, Defendants were acting jointly as a unitary enterprise utilizing the resources and legal name of Ocean Properties, Ltd., and by and though their agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants." *Id.* ¶ 43.

Further in respect to the Jupiter Resort, Plaintiff alleges that "OPL developed the hotel in 2005 and thereafter, in 2007, established the entities Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter to own and jointly manage that hotel property." *Id.* ¶ 12. "OPL staffs the hotels with individuals it recruits and employs, including those individuals who are responsible for generating point of sale receipts, such as front desk agents and bartenders. OPL even recruits for and provides manager training opportunities." *Id.* ¶ 14. Plaintiff relates that OPL "owns and operates the website which markets" the Jupiter Resort, and "publicly represents that its accounting and administrative functions, including those involved in generating FACTA violative receipts, are centralized and work seamlessly together . . . provid[ing] a strong corporate culture and powerful economies of scale." *Id.* ¶¶ 15-16 (internal quotations and alterations omitted). In fact, "Ocean Properties, Ltd. publicly claims to respect the privacy of all [its] guests, and . . . are committed to protecting it, which includes guest financial information (such as credit card number and expiration date, etc.)." *Id.* ¶ 17 (internal quotations and alterations omitted). Plaintiff additionally cites to a March 19, 2015 article in *The Island Now*, a brochure of "Defendant's 'Opal Collection' of properties," the "Opal Collection website's terms and conditions," and a February 2016 article from *The Examiner* to show that "[i]ndividuals both inside and outside Ocean Properties, Ltd. also understand that OPL operates the hotel businesses, including the Jupiter Beach Resort." *Id.* ¶¶ 18-19.

Plaintiff alleges that on or about March 9, 2016, he used his Visa credit card to pay for his stay at the Jupiter Resort, and that "upon checking out of the hotel Plaintiff was provided with an electronically printed receipt generated from a point of sale terminal device, bearing the expiration date of his credit card." *Id.* ¶¶ 41-42. Plaintiff claims that "[i]t is Defendants' policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*,

immediately upon receipt of credit card payment," and that "Defendants knowingly and intentionally includes the expiration date of the credit card on its electronically printed receipts." *Id.* ¶¶ 46-47. Plaintiff alleges that by issuing the non-compliant receipt, Defendants' conduct was in "willful and reckless disregard for federal law and the rights of the Plaintiff." *Id.* ¶ 45. Plaintiff brings one count against Defendants for violation of 15 U.S.C. § 1681(c)(g), alleging that "Defendants are liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs." *Id.* ¶ 74; *see id.* ¶ 54 (defining class). Defendants now move to dismiss the Second Amended Complaint. *See* ECF Nos. [66], [76], [78]. Plaintiff's Responses and Defendants' Replies timely followed. *See* ECF Nos. [80], [88], [93], [113], [114].

## II. LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a Rule 12(b)(6) motion, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; see *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### III.   DISCUSSION

#### A.   Failure To Seek Leave To Add Parties

Before reviewing Defendants' more substantive arguments, the Court addresses Oprock Defendants' and GHM's position that the Court must dismiss the SAC with prejudice for Plaintiff's failure to seek leave to add additional parties.  On June 17, 2016, the Court issued a

Scheduling Order, setting August 16, 2016 as the deadline to "amend pleadings or join parties." ECF No. [29]. The Court dismissed Plaintiff's First Amended Complaint one day before this deadline expired, granting Plaintiff until August 22, 2016 "to file a second amended complaint." ECF No. [44] at 17. The Court subsequently granted Plaintiff's request for a one week extension of this deadline. *See* ECF Nos. [45], [46]. Although the Court's Orders did not expressly extend the deadline to add additional parties, Plaintiff naturally did not know that the Court would dismiss the FAC until the Court issued its Order – one day before the deadline to add parties expired. Plaintiff also did not know that the Court would allow him to plead additional factual allegations related to, among other theories, OPL's joint liability or liability "based on theories of direct, vicarious, or instrumental liability grounded in OPL's control or affiliation with other entities." ECF No. [44] at 10. In any event, OPL – the only Defendant involved in these proceedings when the Court set the deadline to add parties – does not claim prejudice from the inclusion of additional Defendants at this time, and the Court has rescheduled mediation and extended the class-related deadlines by three months to accommodate all parties. *See* ECF Nos. [74], [86], [91]. Accordingly, to the extent Oprock Defendants and GHM move to dismiss the SAC on timeliness grounds, the Motions are denied.

    **B.**    **Defendant OPL**

In its prior Order granting OPL's motion to dismiss, the Court rejected OPL's arguments that Plaintiff (1) lacked standing to bring suit, having failed to allege an actual injury or that he suffered actual damages; (2) had fatally failed to attach the receipt at issue to his complaint; and that (3) the FAC failed to state a claim because Plaintiff did not adequately allege (a) where or how he received the allegedly nonconforming receipt; and (b) that OPL acted willfully. *See* ECF No. [44] at 11-17. Although OPL "incorporates its previous arguments by reference and reserves

the right to raise them later in a subsequent proceeding or appeal," OPL does not move the Court to reconsider its prior Order, and the Court declines to do so. *See* OPL's Motion at 5 n.7. The Court reaffirms its holding that Plaintiff states a claim under the FACTA provided that the SAC sufficiently alleges OPL's relationship to the Jupiter Resort. *See* ECF No. [44] at 11.

It is axiomatic that a FACTA complaint must adequately allege that the listed Defendant is liable for the alleged wrong. In its prior Order, the Court recognized that Plaintiff had referenced but insufficiently plead "that Defendant is jointly liable, or liable based on theories of direct, vicarious, or instrumental liability grounded in OPL's control or affiliation with other entities." *Id.* at 10. The Court then allowed Plaintiff an opportunity to amend the FAC "to include a factual basis for the alternative forms of liability argued in his Response, *or to plead facts sufficient to establish Defendant's operation or ownership of the Resort*." *Id.* (emphasis added). Plaintiff has now amended the FAC, making clear that his claim against OPL is based on OPL's alleged operation and/or control of the Jupiter Resort, and theories of "direct and joint liability . . . as well as apparent agency." ECF No. [80] at 3. OPL does not argue that Plaintiff's legal theories are inapplicable to a FACTA claim, provided that Plaintiff has properly pleaded them. *See, e.g.*, OPL's Motion; ECF No. [93] at 7-11; *see also* 15 U.S.C. § 1681a(b) ("The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1212 (C.D. Cal. 2007) ("without vicarious liability under the FCRA (and FACTA in particular), it would be very difficult to hold a corporation liable under the statute."); *see also Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (recognizing "apparent authority" as a viable liability theory under the FCRA). As the parties are well aware, 15 U.S.C. § 1681c(g)(1) makes liable any "person," including a corporation or other entity, who

"accepts credit cards or debit cards for the transaction of business." As the Court recognized in its prior Order, under certain circumstances, liability can turn on "operation as well as ownership," even if another entity owns the violative facility. *See United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998). And in this, Plaintiff's third attempt to state a claim, the Court finds that the SAC sufficiently pleads at a minimum that OPL is "liable for its own misconduct" such that it is plausibly liable for the FACTA violation alleged.

As he did in the FAC, Plaintiff pleads that "OPL developed the hotel in 2005 and thereafter" established the entities Oprock Fee, Oprock TRS, and GHM "to own and jointly manage that hotel property." SAC ¶ 12. Plaintiff claims that OPL continues to "staff[ ] the hotels with individuals it recruits and employs, including those individuals who are responsible for generating point of sale receipts, such as front desk agents and bartenders." *Id.* ¶ 14. Plaintiff also again pleads, based on information obtained from OPL's alleged website and a brochure, that "OPL owns and operates the website which markets all of its hotel businesses, [reports] on its website that those businesses are 'Ocean Properties, Ltd. products and services,'" and "refers to the *Jupiter Beach Resort and Spa* as one of its resort and hotel offerings." *Id.* ¶ 15 (emphasis in original). Additionally, Plaintiff repeats his claims that public articles report that OPL "owns and operates" the Jupiter Resort. SAC ¶¶ 18-19. Plaintiff now additionally claims that:

- OPL "admits on its website that it jointly *operates* over 100 hotel properties, including the Jupiter Beach Resort, with its affiliated companies (*e.g.*, Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter, albeit the only legal entity mentioned in these representations is Ocean Properties, Ltd.)."

- "OPL provides the *central operation role* to" Oprock Defendants and GHM, and "[t]o that end, OPL publicly represents that its accounting and administrative functions, including those involved in generating FACTA violative receipts, are '[c]entralized' and 'work[ ] seamlessly together.'"
- OPL publicly claims to "respect[ ] the privacy of all [its] guests, and . . . are committed to protecting it," which includes guest "financial information (such as credit card number and expiration date, etc.)."

*Id.* ¶¶ 16-17 (emphasis added); *see id.* ¶¶ 10, 18, 43. A review of the evidence relied upon in the SAC – as urged by both parties – confirms that Plaintiff's allegations are not directly contradicted by the relied-upon exhibits, and contain a sufficient factual basis. *See, e.g.*, ECF Nos. [47-12], [47-14]–[47-17] ("the company *operates* major brands" of hotels); ECF Nos. [47-13] ("Ocean Properties' resorts and hotels . . . range from the elegant Jupiter Beach Resort and Spa . . . ."); [47-19] (advertising the Jupiter Resort in brochure published by "ocean properties, ltd. Hotels and Resorts"); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("exhibits govern" when they "*contradict* the general and conclusory allegations of the pleading" (emphasis added)). Accordingly, the Court no longer finds Plaintiff's claims insufficient.[1] If Plaintiff can establish that OPL indeed operates the Jupiter Resort or is responsible for centralizing the Resort's administrative operations "including those involved in generating FACTA violative receipts" as Plaintiff alleges, Plaintiff *may* have a claim against OPL. Whether OPL is in fact "a person that accepts credit cards or debit cards for the transaction of business

---

[1] In its previous Order, the Court did not, as OPL seems to suggest, reject the cited websites outright as potential "bas[es] for well-pled allegations." ECF No. [93] at 4. Rather, the Court found that Plaintiff's "overwhelming reliance on internet marketing materials and third-party editorials" inadequate "upon review of the public records attached to Defendant's Motion." ECF No. [44] at 8. On amendment, Plaintiff adds additional factual allegations, accounts for the proffered public records in his pleadings and argument, and relies upon targeted website evidence to support his specific claims.

within the meaning of FACTA [should] be determined at summary judgment or trial." *Desousa v. Anupam Enterprises, Inc.*, 2010 WL 2026114, at *3 (M.D. Fla. May 20, 2010) (denying motion to dismiss defendant from FACTA complaint and rejecting defendant's argument that it "does not own or operate any retail gas stations, it merely authorizes independent service station dealers and convenience-store operators to use Citgo's trademark, brand name"); *see AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 2016 WL 740719, at *2 (M.D. Fla. Feb. 25, 2016).

Accordingly, the Court finds that the SAC pleads more than "naked assertions devoid of further factual enhancement," and that the public and not-so-public documents scattered throughout the record do not definitively establish otherwise.[2] *Iqbal*, 556 U.S. at 678. Specifically, and drawing all plausible inferences in Plaintiff's favor as required at this stage of proceedings, the SAC indicates that OPL may be liable for the alleged FACTA violation despite the absence of its name from a variety of records, as those records do not conclusively show that OPL *does not* perform the relevant operational functions Plaintiff alleges. Plaintiff will have the burden to establish OPL's liability in spite of the "byzantine" and "complex corporate structure" alleged, at a later date. SAC ¶ 10; ECF No. [80] at 6; *see Desousa*, 2010 WL 2026114, at *3. OPL's Motion is denied.

---

[2] OPL requests that the Court review the numerous documents pertaining to Defendants and the Jupiter Resort, and conclude that OPL was not and could not have been involved in the alleged FACTA violation. In order for the Court to so conclude, however, it would need to interpret evidence – including mortgage records and website print-outs – to a degree beyond the limited scope of a motion to dismiss. This conclusion is buttressed by a cursory review of the documents Plaintiff provides with his Response, which, while not considered by the Court to adjudicate OPL's Motion, indicate that the inferences OPL asks the Court to draw are legitimately in dispute. *See* ECF No. [80-1]; *see also* ECF Nos. [80-2]–[80-4]; *see also Edwards*, 527 F. Supp. 2d at 1213 ("Although Lee is an NCR employee, she works full time in Toys' offices, and was at least in part responsible for the software upgrades. Whether this is sufficient to make her Toys' agent is question of fact that would typically be determined by the jury."). Cognizant of the already protracted nature of these proceedings, the Court will not entertain more than one motion for summary judgment, partial or otherwise, per party.

### C. Oprock Defendants and GHM

Oprock Defendants and GHM[3] move to dismiss the SAC for Plaintiff's alleged "casual[ ] group[ing]" of "the Oprock Defendants together with the resort's manager, [GHM], and [OPL] . . . leaving the Oprock Defendants to guess at what theory of liability Plaintiff is proceeding under and which entity engaged in what conduct." Oprocks' Motion at 1-2. Plaintiff, however, clearly delineates the roles of each Defendant, *see* SAC ¶¶ 6-8, and additionally, alleges that:

- "Defendants operate their hotel businesses as a unitary enterprise. Defendants share common owners, managers, addresses, and resources, and use the OPL legal name when describing its business operations in a singular fashion."

- "OPL develops and operates each hotel property jointly with other entities. . . . In the case of the Jupiter Beach Resort & Spa, . . . OPL developed the hotel in 2005 and thereafter, in 2007, established the entities Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter to own and jointly manage that hotel property."

- Oprock Defendants and GHM have overlapping owners, directors and officers with OPL, including the Walsh children.

- OPL "admits on its website that it jointly operates over 100 hotel properties, including the Jupiter Beach Resort, with its affiliated companies (*e.g.*, Oprock Jupiter Fee, Oprock Jupiter TRS and GHM Jupiter, albeit the only legal entity mentioned in these representations is Ocean Properties, Ltd.)."

SAC ¶¶ 10-13; 16. The Court finds these allegations, combined with Plaintiff's claims at paragraphs 43-52 and a cursory review of the previously-considered public records, sufficient to plead Oprock Defendants' and GHM's liability. *See* ECF No. [24-1] (listing Oprock Fee on

---

[3] Because GHM joins this portion of Oprocks' Motion and moves separately only on the basis addressed in Section III.A, *infra*, the Court refers only to Oprocks' Motion.

Property Record Card); [24-2] (listing Oprock Fee on Special Warranty Deed); [24-3] (Subordination Agreement between Oprock Fee, Oprock TRS, and GHM); [24-4] (Licenses listing Oprock Defendants).

Plaintiff argues that Defendants are "jointly involved (with OPL) in the ownership, possession, management and operation of Jupiter Beach Resort's FACTA violative receipt generation process." ECF No. [88] at 1. The allegations regarding Oprock Defendants' and GHM's roles are supported by the above-referenced public records that all parties urge the Court to consider, thus distinguishing Plaintiff's SAC from the authority relied upon by Oprock Defendants. *See Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2011 WL 1233126, at *2 (S.D. Fla. Mar. 30, 2011) ("the only thread that connects CFS–USA to this suit is the fact that William Keunen is a named officer of that company"); *Cellco P'ship v. Plaza Resorts Inc.*, 2013 WL 5436553, at *7 (S.D. Fla. Sept. 27, 2013) ("Although the Complaint states that the entities are 'affiliated' and 'act in concert' with each other, these statements are simply too conclusory"). The FACTA broadly applies to "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity . . . that accepts credit cards or debit cards for the transaction of business." 15 U.S.C.A. §§ 1681a(b), 1681c(g)(1). Plaintiff pleads that Oprock Fee "owns," Oprock TRS "leases," and GHM "purports to manage" the Jupiter Resort property, SAC ¶¶ 6-8, and at this stage of proceedings, Plaintiff need not entirely untangle the Jupiter Resort's corporate structure to survive dismissal. *See Overton v. Wells Fargo Bank, N.A.*, 2012 WL 401065, at *2 (E.D. Mo. Feb. 3, 2012) ("Courts should not dismiss complaints because plaintiffs are unable to plead facts 'which tend systemically to be in the sole possession of defendants.'" (quoting *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)); *see also Lipscomb v. Cronic*, 2011 WL

6755198, at *11 (N.D. Ga. Dec. 22, 2011). As Oprock Defendants appropriately concede, under the FACTA "[o]f course, owners or lessees can be liable if they are also the entity that actually committed the violation." ECF No. [113] at 5. Accordingly, Oprocks' and GHM's Motions are denied.

IV. **CONCLUSION**

The Court does not, as all Defendants fear, disregard the distinct legal identities at issue in this case. Rather, the Court finds that the SAC states a plausible claim for liability against each Defendant. Plaintiff will bear the eventual burden to establish which specific Defendant, if any, is liable for the FACTA violation alleged. It is therefore

**ORDERED AND ADJUDGED** as follows:

1. The Motions, **ECF Nos. [66], [76], and [78]**, are **DENIED;**

2. All Defendants shall file an Answer to the Second Amended Complaint by **December 22, 2016**;

3. The parties' Joint Motion to Extend Class Discovery and Briefing Deadlines, **ECF No. [112]**, is **DENIED AS MOOT** in light of the Court's prior Order, ECF No. [74], granting same.

**DONE AND ORDERED** in Miami, Florida, this 12th day of December, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record