UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-cv-80502-Bloom/Valle

JUSTIN BOUTON, individually and on
behalf of others similarly situated,

     Plaintiff,

v.

OCEAN PROPERTIES, LTD., et al.,

     Defendants.

_____/

**OPROCK JUPITER FEE, LLC AND OPROCK JUPITER TRS, LLC'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendants OpRock Jupiter TRS, LLC and OpRock

Jupiter Fee, LLC (the "OpRock Defendants") move for summary judgment on the claim asserted

against them by Plaintiff Justin Bouton ("Bouton"), and state:

**I.      INTRODUCTION**

At the deposition of Michael Walsh, who is the president of co-Defendant Ocean

Properties, Ltd. ("OPL"), counsel for Bouton insisted that "*this case is not about ownership.*

*This case is about operating control.*"[1]  (M. Walsh Tr. at 99:8-9 [D.E. 290-13] (filed under

seal)).  It is undisputed that the OpRock Defendants do not operate or control the management of

the Jupiter Resort & Spa (the "Resort"), and therefore do not belong in this lawsuit.  Bouton has

nevertheless proceeded with his claims against the OpRock Defendants and seeks to hold the two

single-purpose entities liable for willfully violating the Fair and Accurate Credit Transactions

Act ("FACTA") — a statute of which the OpRock Defendants had no knowledge, and based on

---

[1]      Notably, and despite the relative litigiousness of this case, Bouton never deposed the
OpRock Defendants.

conduct for which they had no control or involvement.

Bouton, who lives in Ft. Lauderdale, claims that he visited the Resort by himself for a single night on March 8, 2016, and received a printed receipt when he checked out the next morning that included the expiration date of his credit card.[2]  Three weeks later, Bouton filed the present action against OPL for a violation of FACTA.  [D.E. 1].

After the Court dismissed his Amended Complaint without prejudice for failure to state a claim on August 15, 2016 [D.E. 44], Bouton filed the operative Second Amended Complaint, adding GHM Jupiter, LLC ("GHM") and the OpRock Defendants as parties and alleging that they all "jointly" operate the Resort with OPL or are vicariously liable for the alleged violation. [D.E. 47].

But as set forth below, the OpRock Defendants do not operate the Resort and did not print the receipt in question.  It is also undisputed that no facts exist to establish actual or apparent agency between the OpRock Defendants and the other co-Defendants.  There is no evidence to show that the OpRock Defendants bear any direct or vicarious liability — to the extent there even is any liability.

Indeed, Bouton cannot establish any facts demonstrating "willfulness" on the part of the OpRock Defendants, as is required to succeed on his claim for statutory damages.  It is undisputed that the OpRock Defendants had no knowledge of FACTA and played no role in any alleged violation.

Finally, the OpRock Defendants incorporate by reference the lack of standing argument made by OPL and GHM in their concurrently filed summary judgment motion.  This Court lacks

---

[2]      Two months earlier, one of the people whom Bouton's counsel has used as class representative in numerous other FACTA class actions, Christopher Legg, and who is also an acquaintance of Bouton, stayed at the Resort and received a credit card receipt.  *See* [D.E. 283-1] at 6:25-7:2, 8:21-9:6 (Legg. Tr., filed under seal).

subject matter jurisdiction over this lawsuit because the facts gleaned during discovery show that Bouton suffered no concrete or imminent risk of injury as a result of an alleged FACTA violation.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Defendants OPL and GHM

1.     OPL is an alleged "joint" operator of the Resort.  [D.E. 47].  OPL is owned and operated by members of the Walsh family.  (*See* Ade Depo. Tr. at 35:14-36:4 [D.E. 166] (filed under seal)).

2.     GHM is the exclusive day-to-day manager of the Resort and employs the individuals who work at the Resort and operate the point-of-sale systems.  (*See* Larino Decl. Ex. A §§ 2.03, 14.01 (attached as **Ex. 1**); M. Walsh Depo. Tr. at 91:8-:11, 101:3-:7 [D.E. 290-13] (filed under seal)).  GHM is indirectly owned and operated by members of the Walsh family. (*See* Ade Depo. Tr. at 68:16-8 [D.E. 166]).

### B.   The OpRock Defendants

3.     The OpRock Defendants are single-purpose entities whose sole business is real estate investment.  (*See* Larino Decl. ¶ 5).  OpRock Fee owns the Resort and leases the Resort to OpRock TRS.  (*See id.* at ¶ 4).  OpRock TRS, in turn, has granted to GHM the exclusive right to manage and operate the Resort pursuant to a management agreement (the "Management Agreement").  (*See id.* Ex. A §§ 2.01, 2.03, 11.01).  OpRock TRS' lease of the Resort is subordinated to the Management Agreement.  (*See id.* Ex. B).

4.     The OpRock Defendants do not own or lease any other properties and have no involvement in any other properties or businesses.  (*See id.* ¶ 5).

5.     The OpRock Defendants are indirectly managed by Rockwood Capital, LLC

("Rockwood").   (*See id.* ¶ 3).   Rockwood is not directly or indirectly owned, managed or controlled by any member of the Walsh family.  (*See id.*).

6.      Neither GHM nor OPL directly or indirectly owns the OpRock Defendants and vice versa.  (*See id.* ¶ 6; Walsh Decl. ¶ 7 [D.E. 208] (filed under seal)).  The OpRock Defendants do not share any managers or direct owners with OPL or GHM, and they do not share an office with OPL or GHM.  (*See* Larino Decl. ¶ 8).  Mark Walsh is listed as an officer of the OpRock Defendants in their Florida corporate filings, but he has no managerial or operational control over them.  (*See id.*).  The OpRock Defendants' principal address is 50 California Street, Suite 3000, San Francisco, California 94111.  (*See id.*).  Because GHM runs the Resort's day-to-day operations, GHM's address is listed as the *mailing* address on the OpRock Defendants' Florida corporate filings.  (*See id.*).  The OpRock Defendants do not use that address for any other purpose.  (*See id.*).  The OpRock Defendants' *corporate* address is its San Francisco address, which bears no relation to OPL, the Walshes or GHM.  (*See id.*).  The OpRock Defendants do not share resources or personnel with OPL or GHM.  (*See id.*).

7.      The ultimate 92.3% majority owner of the OpRock Defendants is not directly or indirectly owned, managed or controlled by any member of the Walsh family.  (*See id.* ¶ 6).  An entity owned by members of the Walsh family owns only a 7.7% passive financial interest in an indirect owner of the OpRock Defendants.  (*See id.* ¶ 7).

8.      The OpRock Defendants have never used OPL's name and they have never represented that they are involved in the operation of the Resort or any other hotel.  (*See id.* ¶ 9).  They have never made any representation that either OPL or GHM is their agent.  (*See id.*).  Neither of the OpRock Defendants has any contracts with OPL.  (*See id.* ¶ 8; Walsh Decl. ¶ 7 [D.E. 208]).

Case 9:16-cv-80502-BB   Document 324   Entered on FLSD Docket 09/22/2017   Page 5 of 18

CASE NO. 9:16-cv-80502-BB

9.      Prior to this action, the OpRock Defendants had no knowledge of FACTA, and they had never previously been sued for a violation of FACTA.  (*See* Larino Decl. ¶ 12).

10.      Bouton had never heard of the OpRock Defendants prior to this action.  (*See* Bouton Tr. at 67:20-68:3 [D.E. 166-1] (filed under seal)).  Bouton did not visit the Resort in reliance on who managed the Resort and did not believe during his visit to the Resort that the individuals at the front desk were agents of the OpRock Defendants.  (*See id.* at 66:7-13, 75:16-19).  In fact, Bouton still does not know who the OpRock Defendants are.  (*See id.* at 63:18-22, 64:15-65:5, 69:2-16).

**C.      The Management Agreement**

11.      The Management Agreement gives GHM the exclusive discretion and control over day-to-day management of the Resort, free from interference from OpRock TRS:

> Lessee hereby engages Management Company as an independent contractor to supervise, direct and control the management and operation of the Hotel and the Management Company shall have the exclusive authority and responsibility for the day-to-day management of the Hotel for and during the Term . . .

(Larino Decl. Ex. A § 2.01).

> The Management Company shall have complete discretion and control and exclusive authority and responsibility for the day-to-day management of the Hotel, free from interference, interruption or disturbance, in all matters relating to management and operation of the Hotel, including, without limitation, charges for rooms and commercial space, credit policies, food and beverage services, employment policies, receipt, holding and disbursement of funds, maintenance of bank accounts, procurement of Inventories, supplies and services, promotion and publicity and, generally, all activities necessary for operation of the Hotel . . .

(*Id.* Ex. A § 2.03(A)).

> Lessee covenants that Management Company, subject to the terms and provisions of this Management Agreement, shall have the right to manage and operate the Hotel during the Term free from hindrance, ejection or molestation by Lessee or other party claiming under, through or by right of Lessee.

(*Id.* Ex. A § 11.01).

5

CASE NO. 9:16-cv-80502-BB

12.     Under the Management Agreement, GHM is an independent contractor and has

no agency relationship with OpRock TRS:

> The relationship of Lessee and Management Company shall at all times be that of
> Lessee and independent contractor, and nothing contained in this Management
> Agreement shall be construed to create any form of agency, a partnership or joint
> venture or any other relationship between them or their successors in interest.

(*Id.* Ex. A § 20.03; *see also id.* Ex. A § 2.01 ("Lessee hereby engages Management Company as

an independent contractor . . .").

13.     All personnel employed at the Resort are employed, trained and supervised by

GHM:

> All personnel employed at the Hotel shall at all times be the employees of the
> Management Company and/or the employees of one or more third parties
> designated by the Management Company and approved by Lessee . . .
> Management Company shall have absolute discretion to hire, promote, supervise,
> direct and train all employees at the Hotel, to fix their compensation, benefits,
> and, generally establish and maintain all policies relating to employment . . .

(*Id.* Ex. A § 14.01).

14.     OpRock TRS does not have any ownership in or right to use any trademarks of

GHM or its affiliates.  (*See id.* Ex. A § 20.15).

15.     Consistent with the terms of the Management Agreement, the OpRock

Defendants do not control the day-to-day operations of the Resort.  (*See id.* ¶ 10).  They do not

operate the point-of-sale systems at the Resort and they do not employ, train or supervise the

individuals who work at the Resort, such as those that print receipts for customers.  (*See id*.).

**D.     The Software Error**

16.     The software truncation error at the center of this lawsuit was caused by an

upgrade to the Oracle of America, Inc. point-of-sale software that occurred at the Resort on

December 28, 2015 (the "Oracle Upgrade").  (*See* Ade Decl. ¶ 35 [D.E. 193] (filed under seal)).

17.     Prior to this action, the OpRock Defendants did not know about the Oracle Upgrade.  (*See* Larino Decl. ¶ 11).  The OpRock Defendants did not have any involvement in the decision to upgrade the software or in the implementation of the Oracle Upgrade.  (*See id.* ¶¶ 10-11).

18.     Cliff Lazenby has never been an employee of the OpRock Defendants or Rockwood.  (*See id.*; Lazenby Depo. Tr. at 264: 3-13 [D.E. 290-8]).  At all relevant times he had been an employee of Portsmouth Corporate Financial Services, Inc. ("PCFSI").  (*See* Ade Depo. Tr. at 83:15-24; 87:22-24, 217:20-24 [D.E. 166]).  Richard Ade is not an employee, manager, officer, director or owner of the OpRock Defendants.  (*See id.*).

19.     The OpRock Defendants did not have any involvement in implementing a fix to the Oracle Upgrade.  (*See id.* ¶ 13).  There are no employees of the OpRock Defendants or Rockwood included on the April 2016 email chain regarding the fix to the Oracle Upgrade.  (*See id.*).  In fact, the OpRock Defendants only learned about the truncation issue caused by the Oracle Upgrade in connection with this lawsuit after the error was already fixed.  (*See id.*).

### III.     STANDARD FOR SUMMARY JUDGMENT

"A party may obtain summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Hall v. Teva Pharmaceutical USA, Inc.*, 214 F. Supp. 3d 1281, 1287 (S.D. Fla. 2016) (Bloom, J.) (quoting Fed. R. Civ. P. 56(a)).  The Court views the evidence in the light most favorable to the nonmovant; however, "the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; 'the requirement is that there be no *genuine* issue of *material* fact.'"  *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1301 (S.D. Fla. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (emphasis

in original).  Moreover, material facts set forth in the movant's statement of facts and supported by record evidence are deemed admitted if not controverted by the opposing party." *Teva Pharmaceutical*, 214 F. Supp. 3d at 1288 (citing S.D. Fla. L. R. 56.1(b)).

Once the movant's burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 Fed. App'x 819, 825 (11th Cir. 2009).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Teva Pharmaceutical*, 214 F. Supp. 3d at 1288) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006)).

### IV.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE OPROCK DEFENDANTS

FACTA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).  Thus, under the plain meaning of section 1681c(g), direct liability can only be imposed on the person that both (a) accepts credit or debit cards for the transaction of business, and (b) prints and provides the receipt in question to customer at the point of sale.

Plaintiff seeks statutory damages, which require the Plaintiff to show that the alleged violation was willful on the part of the Defendants.  *See* 15 U.S.C. § 1681n.  Thus, the key issues are: (1) who is liable for the alleged violation, and (2) whether the violation was willful.

### A.    The OpRock Defendants Are Not Directly Liable for any Violation

Again, FACTA establishes direct liability only against those who print a violative receipt and provide it to the customer at the point of sale:

> Except as otherwise provided in this subsection, *no person that accepts credit cards or debit cards for the transaction of business shall print* more than the last 5 digits of the card number or the expiration date upon any receipt *provided to the cardholder at the point of the sale or transaction.*

15 U.S.C. § 1681c(g)(1)-(2) (emphasis added).

Here, the undisputed facts show that the OpRock Defendants do not print receipts or provide them to customers at the Resort.  (*See* Statement of Undisputed Material Facts ("SUMF") ¶ 15).  The OpRock Defendants are not involved in day-to-day Resort operations. (*See id.* ¶¶ 11-15).  They have no employees who work at the Resort.  (*See id.* ¶¶ 13, 15).  Nor do they supervise those who work at the Resort.  (*See id.*).  The OpRock Defendants do not run or supervise the point of sale.  (*See id.* ¶ 15).  Absent evidence of the OpRock Defendants' printing and provision of credit card receipts, there can be no direct liability on the part of the OpRock Defendants.  *See* 15 U.S.C. § 1681c(g)(1).

The fact that OpRock Fee owns the Resort does not change this outcome.  Indeed, as Plaintiff's counsel stated at the Walsh deposition, "*this case is not about ownership.  This case is about operating control.*"  (M. Walsh Depo. Tr. at 99:8-9 [D.E. 290-13]).  Neither OpRock Defendant operates or controls the Resort.  (*See* SUMF ¶¶ 11-15).  OpRock Fee leases the Resort to OpRock TRS, which contracts out the management of the Resort to a third party, GHM.  (*See id.* ¶ 3).

The undisputed facts further show that the OpRock Defendants did not know about the Oracle Upgrade.  (*See id.* ¶¶ 17-18).  Lazenby is not an employee of Rockwood or the OpRock Defendants.  (*See id.* ¶ 18).

Furthermore, no specific budgetary approvals were required under the Management Agreement, and no such approval was requested or provided with regard to the Oracle Upgrade. (*See* SUMF ¶¶ 17-18).  At most, OpRock TRS approved an annual operating budget nearly a

year before the Oracle Upgrade.  (*See id.* at ¶ 17).

Even had OpRock Defendants known about the Oracle Upgrade, that would not amount to approving the content of point-of-sale receipts, let alone actually printing and providing receipts to customers.  The Oracle Contract says nothing about specific settings or the content of receipts, and it is undisputed that the OpRock Defendants were not involved in the programming, implementation or use of the Oracle Upgrade.  (*See id.* at ¶¶ 17-19; s*ee also* Ade Depo. Tr. at 24:17-25:14, 112:7-113:7 [D.E. 290-4] (stating that the OpRock Defendants would not have had any involvement in the implementation of the Oracle Upgrade "other than approving the spending of money")).

## B.      The OpRock Defendants Are Not Vicariously Liable

Absent direct liability, Bouton must rely on the three theories of vicarious liability recognized under the FCRA — authorization, respondeat superior and apparent agency.  *See Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998).  All three theories fail as matter of law.

### 1.      There is no actual agency relationship

The first two theories of vicarious liability — authorization and respondeat superior — fail because they require an actual agency relationship.  Summary judgment is appropriate where, as here, there is insufficient evidence of an agency relationship.  *See*, *e.g.*, *Ernani v. City of Miami Beach*, No. 12-cv-24550, 2014 WL 12514911, at *3 (S.D. Fla. Dec. 4, 2014) (granting summary judgment in favor of a nightclub owner finding no agency relationship existed between the owner and the off-duty officers employed to work security at the nightclub); *Johnson v. Unique Vacations, Inc.*, 498 Fed. App'x 892, 896 (11th Cir. 2012) (affirming summary judgment in favor of a resort and travel company, finding the plaintiff failed to present evidence of control

over the tour company).  Here, there is no evidence showing that either OPL or GHM is the actual agent of the OpRock Defendants.

The elements of an actual agency relationship are "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Ernani,* No. 12-cv-24550, 2014 WL 12514911, at *3.  An actual agency relationship cannot exist absent day-to-day control.  *See Sun Life Assurance Co. of Canada (U.S.) v. Imperial Holdings, Inc.*, No. 13-80385, 2014 WL 12452450, at *4 (S.D. Fla. Jun. 26, 2014) (stating that an agency relationship requires "control by the principal over the agent's actions and day-to-day activities"); *Orlinsky v. Patraka*, 971 So. 2d 796 (Fla. 3d DCA 2007) ("[A]n agency relationship does not exist unless the principal has a right to control the operative details of the agent's work.").

Neither OpRock Defendant has any contractual relationship with OPL or exercises any control over OPL.  (*See* SUMF ¶¶ 6-8).  The elements of actual agency are thus lacking as to OPL.  Likewise, OpRock Fee has no contractual relationship with or control over GHM.

Regarding OpRock TRS and GHM, the Management Agreement makes clear that GHM is not an agent of OpRock TRS.  (*See id.* ¶ 12).  It provides that "[t]he relationship of Lessee and Management Company shall at all times be that of Lessee and independent contractor, and nothing contained in this Management Agreement shall be construed to create any form of agency . . ."  (*Id.*).  This language negates the first two elements.  *See Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1252 (S.D. Fla. 2008) ("In this case, the clear language of the Tensar/Funsa agreements, which explicitly denies an agency relationship, establishes as a matter of law that there is no actual agency.").  Moreover, the Management Agreement grants exclusive operational control to GHM.  (*See* SUMF ¶ 11).  It states: "the

Management Company shall have the exclusive authority and responsibility for the day-to-day management of the Hotel for and during the Term . . . ." (*Id.*).  Consistent with those terms, OpRock TRS does not actually exercise such operational control, *see id.* ¶¶ 11-13, 15, thus negating the third element.

Bouton cannot show the requisite day-to-day control because no such control exists.  An actual agency requires evidence of actions *by the purported principal* creating the agency.  *See Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437 (1995) (granting defendant summary judgment where there was no evidence of actions of the principal creating agency, even though the agent signed contracts on behalf of the purported principal).[3]

It is undisputed that the OpRock Defendants do not control GHM's day-to-day operations at the Resort and they had no involvement the implementation, programming or use of the Oracle Upgrade.  *See King v. Hall*, 740 So. 2d 1241, 1243 (Fla. 3d DCA 1999) (affirming summary judgment in favor of the defendant, finding no agency as a matter of law where there was no control over the details of the agent's day-to-day activities or over "the manner in which he carried out his responsibilities"); *Ernani,* No. 12-cv-24550, 2014 WL 12514911, at *3 (granting summary judgment, finding there was no agency relationship between the nightclub owner and the officers acting as security where the owner told the officers where to stand but did not direct the officers to act in a certain way).  Accordingly, no actual agency exists as a matter of law.

---

[3] Similarly, Bouton's arguments that the OpRock Defendants' corporate filings list Mark Walsh as an officer and list the mailing address of their day-to-day management company, GHM, do not evidence an agency relationship.  *See*, *e.g.*, *Unitedhealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc*., No. 16-81180, 2017 WL 1832436, at *7 (S.D. Fla. May 8, 2017) (finding, even in the parent/subsidiary context, overlapping officers and directors, sharing of a website, address and phone number did not establish an agency relationship because it did not show management of the day-to-day operations).

2.      **There is no apparent agency**

As to apparent agency, it "is well settled that an apparent agency exists only if each of three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

It is undisputed that the OpRock Defendants have never represented to Bouton that either GHM or OPL acts as their agent. (*See* SUMF ¶ 8). Thus, there is no apparent agency. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995) (finding no apparent agency between the owner of the property and the operator of a gas station because there was no allegation that the owner made any representation to the plaintiff that the operator was its agent).[4] The undisputed evidence in this case shows that Bouton did not rely on any such statement, or change his position as a result of any such representation. (*See* SUMF ¶ 10). Indeed, Bouton testified that he does not know who the OpRock Defendants are and had never heard of the OpRock Defendants prior to this lawsuit. (*See id.*). Those facts preclude a finding of apparent agency as a matter of law. *See*, *e.g.*, *Smith v. Am. Auto. Ins. Co.*, 498 So. 2d 448, 449 (Fla. 3d DCA 1986) (finding no apparent agency existed because the fact that plaintiff "***did not even know the name of the insurance company***" established that the plaintiff was not relying on any representation of the insurance company) (emphasis added); *Johns v. Jarrard*, 927 F.2d 551, 557 (11th Cir. 1991) (agreeing with the conclusion that "there being no suggestion in the record that [plaintiffs] relied in any way upon Coastal's reputation or, indeed, ***that [they] even knew of***

---

4       In determining whether an apparent agency has arisen, the focus is on the *principal's* actions and communications to the third party, not the purported agent's. *See*, *e.g.*, *Sun Life Assurance*, 2014 WL 12452450, at *3. Moreover, the absence of an express denial of an agency relationship cannot create apparent agency. *See Koens v. Royal Caribbean Cruises, Ltd.*, 774 F.Supp.2d 1215 (2011) (stating that, as a matter of law, failure to deny an agency relationship cannot support a claim for apparent agency).

*that company's existence*, there is no basis upon which Coastal may be held liable under the apparent agency doctrine." (emphasis added)) (applying Georgia law).

Accordingly, Bouton cannot succeed on any theory that would impose vicarious liability on the OpRock Defendants, and summary judgment should be granted in their favor.

**C.      Bouton Cannot Show the Requisite Willfulness on the Part of the OpRock Defendants**

Because Bouton seeks statutory damages, he must show that the OpRock Defendants willfully violated FACTA.  *See* 15 U.S.C. § 1681n(a)(1)(a).  A FACTA violation is "willful" if it is either knowing or reckless.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).  A plaintiff must prove that "the action is not only a violation under a reasonable reading of the statute's terms, but . . . that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* at 69.  Courts applying *Safeco* have made clear that under FACTA, a plaintiff must prove more than mere negligence.  *See Torongo v. Roy*, 176 F. Supp. 3d 1320, 1324 (S.D. Fla. 2016); *Rosenthal v. Longchamp Coral Gables LLC*, 603 F. Supp. 2d 1359, 1361 (S.D. Fla. 2009).  To establish willfulness, a plaintiff must show that a defendant knew about FACTA's expiration date requirement *and* knowingly or recklessly violated it.  *See Torongo*, 176 F. Supp. 3d at 1324-25.

The undisputed facts show that the OpRock Defendants had no knowledge of FACTA prior to this lawsuit, have no merchant agreements with credit card companies and have never previously been sued for a FACTA violation.  (*See* SUMF at ¶ 9; Bouton Depo. Tr. at 74: 19-75:5).  Without evidence that the OpRock Defendants had knowledge of FACTA, Bouton cannot show willfulness and his claim against them fails as a matter of law.[5]  *See Rosenthal*, 603 F.

---

[5]      There is no basis to impute GHM or OPL's knowledge of FACTA from any prior lawsuits against OPL to the OpRock Defendants.  Even if there were an agency relationship

Case 9:16-cv-80502-BB   Document 324   Entered on FLSD Docket 09/22/2017   Page 15 of 18

CASE NO. 9:16-cv-80502-BB

Supp. 2d at 1362 (dismissing a FACTA claim, finding allegations that the FACTA requirements were well-publicized and contained in the defendant's credit card agreements was insufficient to allege willfulness).

Second, even if Bouton could show that the OpRock Defendants had knowledge of FACTA, they could not have knowingly or recklessly violated it. The OpRock Defendants had no involvement in the programming or configuration of the Oracle Upgrade, do not use the point-of-sale software and do not even have day-to-day access to the receipts. (*See* SUMF at ¶¶ 17-18). Thus, Bouton cannot show the OpRock Defendants willfully violated FACTA. *See Torongo*, 176 F. Supp. 3d at 1324-25 (granting motion to dismiss where the plaintiff only pled that the defendant knew about FACTA's requirements, but failed to allege that defendant knew its conduct was violating it).

Finally, it is reasonable to conclude that the OpRock Defendants were not subject to FACTA's requirements. In the *Fuges* case, the Third Circuit affirmed summary judgment in favor of the defendant on an FCRA claim under *Safeco's* "reasonable interpretation" safe harbor. *See Fuges v. Sw. Fin. Servs, Ltd.,* 707 F.3d 241, 254 (3d Cir. 2012). The court concluded that it was not an objectively unreasonable reading of the FCRA for the defendant to believe that it was not subject to the FCRA's requirements based on the definition of "consumer reporting agency." *See id.* at 251-54. Therefore, it "did not run 'a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *See id.* at 254. In reaching that conclusion, the court also explained that the "reasonable interpretation" safe harbor does not

---

between the OpRock Defendants and OPL or GHM — which there is not — any knowledge of FACTA arising from that lawsuit would not be imputed to the OpRock Defendants because that knowledge would not have been acquired within the scope of the purported agency. *See*, *e.g.*, *Nationmotor Club Inc. v. Stonebridge Cas. Ins. Co.*, No. 10-cv-81157, 2013 WL 6729664, at *13 (S.D. Fla. Oct. 29, 2013) (explaining that knowledge or notice to an agent is not imputed to the principal when it is received outside the scope of the agency).

require that the defendant actually have read the FCRA or made such an interpretation at the time of the alleged conduct.  *See id.* at 252.  Likewise here, it is not an unreasonable reading of FACTA for the OpRock Defendants to believe that the requirements are inapplicable to them because they are not persons who "accept[]credit cards or debit cards" and they do not "print" receipts or provide them to customers at the point of sale.  (*See* SUMF at ¶¶ 2, 11, 13, 15).

In sum, the undisputed facts show that there was no willfulness on the part of the OpRock Defendants and summary judgment should be granted in their favor.

The OpRock Defendants incorporate by reference the arguments raised in GHM's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the OpRock Defendants.

Dated: September 22, 2017                                    Respectfully submitted,

By: /s/ *Victoria J. Wilson*
Stuart I. Grossman, P.A.
Florida Bar No. 176699
Email: sig@lklsg.com
Jason K. Kellogg, P.A.
Florida Bar No. 0578401
Email: jk@lklsg.com
Victoria J. Wilson, Esq.
Florida Bar No. 092157
Email: vjw@lklsg.com
**LEVINE KELLOGG LEHMAN**
**SCHNEIDER + GROSSMAN LLP**
Citigroup Center, 22nd Floor
201 South Biscayne Boulevard
Miami, FL  33131
Telephone: (305) 403-8788
Facsimile:   (305) 403-8789
*Attorneys for Defendants OpRock*
*Jupiter Fee, LLC and OpRock*
*Jupiter TRS, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2017, I served the foregoing to all counsel

of record on the Service List below via CM/ECF

/s/*Victoria J. Wilson*
Victoria J. Wilson

17

CASE NO. 9:16-cv-80502-BB

**SERVICE LIST**

Frank Zacherl, Esq.
fzacherl@shutts.com
Jake Monk, Esq.
jmonk@shutts.com
SHUTTS & BOWEN, LLP
200 South Biscayne Blvd, Suite 4100
Miami, Florida 33131
Tel.: 305.347.7305
Fax: 305.381.9982

Scott David Owens
scott@scottdowens.com
Patrick Christopher Crotty
patrick@scottdowens.com
Sean Martin Holas
sean@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, FL 33019
954-589-0588

Michael R. Karnuth
MKarnuth@KeoghLaw.com
Keith James Keogh
Keith@Keoghlaw.com
KEOGH LAW, LTD
55 W. Monroe Street
Suite 3393
Chicago, IL 60603
312-726-1092

Bret Leon Lusskin, Jr.,
blusskin@lusskinlaw.com
BRET LUSSKIN, P.A.
20803 Biscayne Blvd.
Suite 302
Aventura, FL 33180
954-454-5841