## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80502-Bloom/Valle

| | | |
|---|---|---|
| JUSTIN BOUTON, individually and, on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **CLASS ACTION** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| OCEAN PROPERTIES, LTD., a foreign corporation, OPROCK JUPITER FEE, LLC, a foreign limited liability company, OPROCK JUPITER TRS, LLC, a foreign limited liability company, and GHM JUPITER, LLC, a foreign limited liability company. | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) / | |

## GHM JUPITER, LLC'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, Defendant, GHM Jupiter, LLC ("GHM"), moves for summary judgment in its favor and against Plaintiff Justin Bouton ("Bouton") with respect to *Plaintiff's Second Amended Class Action Complaint for Violations of the Fair and Accurate Credit Transactions Act (FACTA)* [DE 47] (the "Second Amended Complaint").

## INTRODUCTION

Since 2007, GHM managed the Jupiter Beach Resort & Spa (the "Resort"). All evidence establishes that through December 22, 2015, the Resort provided its guests with folios that fully complied with the requirements of FACTA.[1] In fact, GHM took *extraordinary and expensive*

---

[1] GHM disputes that a folio is a "receipt" for purposes of FACTA. But it is undisputed that a folio shows the room, other charges incurred by guests, and in some cases payment of the

*efforts* to protect the Resort's guests' credit card information[2] by installing a Merchant Link tokenization system that prevents any guest credit card information from being stored at the Resort or capable of being stolen by hackers or identity thieves.[3]  The Resort's tokenization system went far beyond what was required by industry standards for credit-card security.  The Resort's implementation of tokenization shows both GHM's commitment to safeguarding and protecting guests' electronically stored credit-card information and its intent to use the most current and costly technology to do so.

The Resort relied on the Oracle OPERA hotel management system. The OPERA hotel management system is an industry-standard system used in thousands of hotels nationwide. Folios provided to guests are printed through the OPERA system.  For years, until December 22, 2015, the OPERA system at the Resort produced folios that were all fully FACTA compliant. On

---

charges. There are many possible printed versions a folio reports and information invoice folios that can be provided to guests.  The evidence is undisputed that only one version of a folio, rarely provided to a small number of guests who go to the front desk and request a final closed-out folio showing a final simultaneous payment, may have contained an expiration date during the four-month and fifteen-day time period relevant to this case.  [DE 281-1] at 14.

[2] Rich Ade testified that installing tokenization systems costs "a ton of money." It is undisputed that the Jupiter Beach Resort had installed a Merchant Link tokenization system. Ade Depo [DE 290-04], at p. 106; see also Laykin Transcript, [DE 290-10] at 109. GHM uses the term "credit card information" to include debit cards used by guests at the Resort during the relevant four-month period.

[3] Tokenization is the highest level of security to protect a retail consumer's credit card information from identity theft. Upon a consumer swiping or chipping his credit card, the credit card number is encrypted and sent to Merchant Link, who stores this actual information in a secure "transaction vault." Merchant Link then sends the retailer a sequence of numbers or symbols that is not the actual consumer's card number.  This sequence is known as a "token." When the token is returned to the retailer by Merchant Link, all the retailer has is the token. In this way, no one at the retail establishment or anyone hacking the records of the retail establishment has any meaningful information on the consumer. [DE 281-1], at p. 18, ¶30. GHM's expert Erik Laykin testified that tokenization systems are highly secure and that the disclosure of an expiration date does not in any way increase the risk of identity theft, especially when a guest's credit card information has been tokenized. [DE 281-1], at p. 10, ¶17; at p. 14, fig 1.  Bouton has never challenged or disputed the effectiveness and security of the Merchant Link tokenization system in place at Jupiter. Tokenization did not exist when FACTA was enacted or amended.

December 22, 2015 Oracle installed its required upgrade to the Resort's OPERA software (v.5.04.02).[4] Oracle represented that this software update was necessary to maximize the security of electronically stored credit card information. While perhaps maximizing security of credit card information, through an improved interface with the Merchant Link tokenization system, and indisputably providing the best credit card security available in a hotel setting, the update converted the fully FACTA compliant OPERA software at the Resort to one that, at times, may have printed a folio that unmasked an expiration date.

Thus far, Bouton has only been able to produce or point to two folios that that were not FACTA compliant[5] during the Relevant Time Period.[6]  There is absolutely no evidence here as to the number of non-FACTA compliant receipts that were generated by the Opera System and handed to Resort guests during the Relevant Time Period.

No defendant (not GHM, Fee, TRS, or OPL) or non-party Walsh affiliate (PCFSI) knew that expiration dates might print on folios handed to Resort guests before this lawsuit was filed on April 1, 2016.  More significant here, for purposes of willfulness, Oracle never represented or in any way disclosed that its defective upgrade installed at the Resort on December 22, 2015 would unmask expiration dates, albeit on an extremely small subset of folios, that could possibly be handed to a guest.

---

[4] The upgrade was required because Oracle advised that without it there was a hole in credit card number security at the Resort.

[5] One of the two non-compliant folios was obtained by serial class FACTA Plaintiff Attorney Chris Legg on January 2, 2016.  Legg Folio [DE 270-02] at 000008.  Legg's receipt of this folio set off a fevered flurry of research on the Resort between Legg and Plaintiff's counsel, concluding that the class may not be big enough as of January 2, 2016 to justify filing a class action.  Emails with Legg and Counsel [DE 270-02].  Legg knew Bouton well and had a 45-minute midnight phone call with him on January 4, 2016.  See ATT Production, [DE 283-2]; Disclosure of Names Associated with Phone Numbers [DE 283-3].

[6] It is undisputed that the defective update was installed on December 22, 2015 and was repaired on April 6, 2016. This is the time period referred to as the "Relevant Time Period" herein.

Indeed, Oracle could not have ever disclosed this when its internal emails and records show that, on April 6, 2016, when PCFSI contacted Oracle on behalf of GHM, *no one in Oracle Sales or Customer Service departments even knew that its OPERA software's programming resulted in a potential FACTA violation by possibly unmasking expiration dates on a small number of customer facing folios*.  Oracle Emails, [DE 226-01]-[DE 226-04].

The internal Oracle emails show that on April 6-8, 2016, Oracle sales and upper management became frustrated and perplexed to learn that only Oracle's engineering and programming department knew that OPERA software upgrade v. 5.04.02 would unmask expiration dates and worse that the unmasking was an *"intended functionality."*[7] These emails make it clear that GHM never intended to print expiration dates and could never have recklessly caused the unmasking.

Undisputedly, GHM was not the cause of the unmasking of expiration dates. It is equally undisputed that immediately after learning, due to the filing of this case, that an expiration date was unmasked on a Resort guest's folio, PCFSI[8] employees Cliff Lazenby and Dan Rich worked tirelessly and relentlessly to cure the unmasking. They did this even though they initially received pushback from Oracle's service department's claim that there was nothing wrong with the update and that the unmasking of expiration dates was part of the system "working as intended and cannot be reverted."  [DE 226-01]-[DE 226-04].  Despite over a half day of denials and confusion by and among various Oracle employees, Rich and Lazenby impressively obtained Oracle's cooperation and fixed the problem. By April 6, 2016 the Resort's OPERA system was again printing FACTA compliant folios. This prompt and extraordinary curative

---

[7] The Oracle engineers who programmed the software upgrade admittedly failed to consider FACTA compliance, deleted it from OPERA, and erroneously strove to meet only the credit card companies and processors PCI compliance requirements. [DE 226-01]-[DE 226-04].

[8] GHM and the Resort contract with PCFSI to provide IT consulting and support services.

action by GHM further shows that GHM, TRS, Fee and the Resort had no willful or reckless intent to violate FACTA or tolerate a FACTA violation *for even one hour after learning of it*.

Rich Ade, President of PCFSI testified, and it is obvious, that if Plaintiff's counsel had disclosed the Legg receipt to GHM or the Resort on January 2, 2017 (instead of plotting how to file a class action), the defective Oracle software at the Resort would have been repaired on January 3, 2015. There is no contrary evidence to this fact.[9] GHM and the Resort were not given this opportunity because Plaintiff's counsel intentionally delayed filing this case for almost four months, conspiring to create a larger class.

On facts virtually identical to those present here, the Eleventh Circuit determined no FACTA violation can ever occur.  In <u>Keller v. Macon County Greyhound Park, Inc.</u>, 464 Fed.Appx. 824 (11th Cir. 2012), the Eleventh Circuit affirmed the District Court's well-reasoned trial opinion that a computer glitch cannot be willful or reckless for FACTA purposes when it is caused by a software vendor and remedied immediately on discovery by the defendant.  The <u>Greyhound</u> ruling, applied here, holds and eliminates any possibility of any genuine issue of material fact that GHM, TRS, Fee willfully or recklessly printed unmasked expiration dates at the Resort.

Incredibly, Plaintiff is unable to prove any of the material facts alleged in its Complaint.

---

[9] Given Plaintiff's counsel's now apparent pattern of sitting idly by while a class grows, Plaintiff and his attorneys come to this Court with unclean hands and should be estopped from benefitting in this litigation.  It would be one thing if Plaintiff's counsel had a pattern of immediately filing suit to protect the potential class and avoid the theoretical "harm," **but the opposite is true**.  Other litigation in this district reveals that all of Plaintiff's counsel, in a similar Oracle-based, FACTA case against another hotelier waited over 6 months before filing suit.  <u>See</u> <u>Guarisma v. Hyatt Equities, LLC</u>, No. 1-17-cv-20931 (S.D. Fla. filed March 11, 2017). Plaintiff's counsel should not be permitted to coordinate a delayed filing and subject their wards to a risk of harm and subsequently benefit with windfall fee awards.  Had Plaintiff, his attorneys, or serial class plaintiff Chris Legg informed the Jupiter Beach Resort of the purported violation, a potential class size would have spanned 8 days, not 4 months and 15 days.

The **only** alleged basis for willfulness or recklessness alleged in the Second Amended Complaint [DE 47] at ¶45-52, was that OPL had previously been sued for a FACTA violation. But this is of no moment here, because the record here is undisputed that OPL does not own or control the Resort, GHM, TRS, or Fee and that there is no evidence here that the Resort ever had a prior FACTA violation. The evidence in this case is not only uncontoverted (and lacking a genuine issue of material fact), the evidence conclusively establishes that any unmasked expiration date was not printed willfully or recklessly and therefore can never support a claim for statutory damages under FACTA.

As a final point, this case must be dismissed because Plaintiff did not suffer a theoretical material risk of identity theft sufficient to confer Article III standing as he safeguarded the folio immediately after receiving it and he contacted attorneys immediately.[10] Further, Erik Laykin's well-reasoned expert report and testimony reveal that regardless of Plaintiff's individual safeguarding of his folio, in the modern technological era, cardholders are not subjected to a material risk of harm necessary to confer Article III standing where their credit card expiration dates are exposed.

The, Southern District courts have already held that "Congress specifically found that FACTA lawsuits premised solely on the inclusion of the card's expiration date on a sales receipt without any evidence of actual injury are "abusive" and lack "consumer benefit." *See* 15 U.S.C. § 1681n(d)." Rosenthal v. Longchamp Coral Gables LLC, 603 F. Supp. 2d 1359, 1361 (S.D. Fla. 2009) (granting, in part, motion to dismiss). Congress' stated fear is exactly what has

---

[10] Although defendants previously raised extensive Article III challenges in *Defendants Ocean Properties, Ltd.'s and GHM Jupiter, LLC's Opposition to Plaintiff's Motion for Class Certification*, [DE 281], at  3-10, GHM re-raises the threshold challenges to this Court's subject matter jurisdiction because this Court has not yet ruled on the outstanding *Motion for Class Certification*, [DE 251].

occurred here, an abusive, lawyer-driven suit, based on no actual injury, and wholly lacking in any consumer benefit.

## STATEMENT OF MATERIAL FACTS

### Willfulness and Recklessness

1. PCFSI employee, Cliff Lazenby, at Oracle's urging, made the decision to allow the installation of what turned out to be the defective Oracle Software upgrade at the Jupiter Beach Resort because it was a mandatory requirement of Oracle to eliminate a potential credit card security vulnerability Oracle had recently identified in their OPERA software. Declaration of Rich Ade, [DE 193] at ¶70.

2. Oracle advised Mr. Lazenby that it guaranteed that the security of certain credit card and debit card information would not be secure if this update was not immediately installed at the Jupiter Beach Resort. [DE 193] at ¶70.

3. The upgrade was designed to optimize consumer protection from identity theft being obtained through tokenization (a separate and distinct credit card security initiative) which underscores the Resort's proactive approach to its guest credit card security. The upgrade, to optimize tokenization, would not have been expected to cause an unrelated defect in printing folios. [DE 290-10], at 111, lines 7-8.

4. If PCFSI had not allowed the defective Oracle Software to be installed at the Resort, Cliff Lazenby believed it would have created an unnecessary risk to the security of certain guests' credit card transactions and any loss caused to the Resort or its guest, by failing to install the upgrade would not be warrantied by Oracle. [DE 193] at ¶71.

5. Mr. Lazenby understood that based on Oracle's marketing materials, it would safeguard the security of credit card data. Cliff Lazenby Deposition, [DE 290-08] at 280, lns. 9-17.

6.  The Jupiter Beach Resort had the procedure to rely upon Oracle's sophisticated software, which was "advertised as the software that would protect the identities of individuals by complying with various regulations." [DE 290-10], at 126, lns. 1-6.

7.  Lazenby explained that PCFSI and its clients could rely on Oracle: "As you would expect from Oracle and the world's leading hotel management platform, system security is always a priority.  This is not always the case for other technology vendors.  For example, many do not offer compliance with payment card industry standards which means you must complete a lengthy audit process yourself with systems that might not pass.  Working with Oracle hospitality saves you time and money and helps protect the integrity of your reputation and your brand." [DE 290-08] at p. 279, ln. 19 - p. 280 ln. 2.

8.  Mr. Lazenby permitted Oracle to install the upgrade without knowledge that the software upgrade contained a defect that could potentially unmask credit and debit card expiration dates on a small subset of folios.  [DE 193] at ¶70.  The 7-10 other POS locations at the Resort are not implicated in the Second Amended Complaint, and these POS locations were all FACTA compliant.  See Mike Walsh Transcript, [DE 290-13], at 149, lns. 3-23. Nothing in the materials and details Lazenby received about the defective Oracle Software warned that unmasking might occur in limited circumstances if this software was installed. [DE 193] at ¶70.

9.  Oracle caused the defect by upgrading the Opera system to version 5.04.02, which Oracle itself installed and tested.  [DE 130-05] at ¶11.

10. Neither GHM, PCFSI, nor any user of the upgraded software was aware Oracle's Opera software was printing unmasked expiration dates until OPL was served with Plaintiff's lawsuit on April 4, 2016.  [DE 130-5] at ¶¶8, 11.  OPL, GHM, Fee, TRS, and PCFSI did

not have any knowledge that the Defective Oracle Software unmasked expiration dates until the instant case was filed and served.  [DE 193] at ¶67.

11. GHM, once it learned of the issue, immediately contacted PCFSI, and PCFSI cured the defect within 24 hours after getting a copy of the suit, so within  approximately 72 hours of service of this case and by April 6, 2016.  [DE 130-05] at ¶11.

12. Mr. Laykin opines that getting Oracle to rewrite the code and patch the system **within 72 hours** of learning of the problem was an "effective" response.  Laykin Transcript [DE 290-10], 114, lns. 15-19.

13. The installation of the Defective Oracle Software was solely the result of actions by Oracle and the decision by PCFSI employees who were supporting IT platforms at the Jupiter Beach Resort to allow Oracle's installation of the software. [DE 193] at ¶69.  No officer or manager of any hotel owner, nor PCFSI had any knowledge of the selection or installation of the defective Oracle Software when installed. [DE 193] at ¶69.

14. Rich Ade testified that, because of the number of different versions of folios printed at the Resort, most of which were FACTA compliant, and the full compliance at all other of the numerous point of sale locations, the unmasking of the Bouton expiration date was "not obvious" and difficult to have been discovered by the FACTA review compliance system in place at the Resort because it would have required the hotel manager to essentially step between the front desk clerk and the guest. Ade Transcript [DE 290-4], at 70,72.

15. Chris Legg, an attorney who acts as a serial class-action plaintiff in FACTA cases discovered the possible FACTA violation at the Jupiter Beach Resort on January 1, 2016, and then conducted Sunbiz and other record searches to determine the owner and

operator of Jupiter. [DE 270-02]. He then consulted with the very lawyers who represent Plaintiff in this legal action. [DE 270-02].

16. If Legg or his attorneys had come forward, after Legg's stay at the Jupiter Beach Resort on January 1, 2016, any possible exposure for a FACTA violation would have been limited to eight (8) days. [DE 193] at ¶68.

17. Moreover, Plaintiff's counsel knew that *from March of 2016* Oprock Fee was the owner of Jupiter and Oprock TRS was the Lessee. [DE 193] at ¶74.

18. Plaintiff's Counsel chose to sue OPL only in the *Complaint* [DE 1] and *First Amended Complaint* [DE 16], solely to create a larger case and to try to cause OPL to have to expend substantial sums in the hope of extorting a settlement. [DE 193] at ¶74.

### Standing

19. No possible material risk of harm or actual injury has been or can be established here. Upon receipt of the folio, Plaintiff secured the folio in his bag and noticed that night that there was a potential issue with his expiration date on the folio. Plaintiff's Deposition, [DE 166-01] at 50-51. He expressly testified that the folio was only ever in his possession, that he "safeguarded" the folio, that no one, not even his ex-girlfriend, touched the folio before Plaintiff gave it to his attorneys, and that only he had possession of the folio. [DE 166-01] at 53. There is no evidence that Plaintiff or any other guests of the Resort have had their credit card security compromised or suffered identity theft after receiving a defective receipt.

20. If a guest folio showing an expiration date and last four digits were to be lost, the risk of harm to the guest would not be significantly increased and the guest would not plausibly face an imminent risk of being harmed. Expert Report of Erik Laykin [DE 281-1], at 32.

21. In light of technological advancements, the expiration date creates no material risk of identity theft and is—now—used simply to verify the card is valid within a particular date range.  Laykin Deposition Transcript [DE 290-10], at 98, ln. 20.

22. Current anti-fraud detection prevents brute-force attempts (a term of art in identity theft circles) from succeeding, changing technology has shifted which information (not an expiration date) is vulnerable to creating a risk of identity theft, the true risk factors of identity theft, how modern industry "PCI" compliance standards do not require truncated expiration dates, how to generate a counterfeit credit card, and why generating counterfeit credit cards is not feasible due to advances in and adoption of microchip technology. [DE 281-1] at 32-46.

23. The risks of identity theft Plaintiff identifies are "infinitesimally small." [DE 290-10] at 92, ln. 8.

24. Mr. Laykin opines that Plaintiff's primary example of dumpster diving is very low on the spectrum of tools that are used by hackers, cyber thieves, and identity thieves today because the payoff is very limited.  Laykin Transcript [DE 290-10], at 103, lns. 8-11.

## ARGUMENT

### I.  The Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Defendants, as the moving party, "shoulder[] the initial burden to demonstrate the absence of a genuine issue of material fact." Berbridge v. Sam's E., Inc., 16-CV-62681, 2017 WL 3593968, at *2 (S.D. Fla. Aug. 21, 2017) (citing Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008)).  As will be seen below, GHM has gone far beyond meeting its initial burden at

summary judgment; GHM has conclusively proven that the alleged violations were not willful or reckless under FACTA.

Plaintiff, as the non-moving party, "must make a sufficient showing on each essential element of the case for which he has the burden of proof." Id. (quoting Ray v. Equifax Info. Servs., L.L.C., 327 Fed.Appx. 819, 825 (11th Cir. 2009)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).[11]  It is equally clear that Plaintiff cannot meet his burden, which is to do "more than simply show that there is some metaphysical doubt as to the material facts." Id. (quoting Ray, 327 Fed.Appx. at 825) (internal marks omitted).  In a FACTA case, if the Plaintiff cannot produce any meaningful evidence of willfulness or recklessness summary judgment must be granted and the claim cannot proceed to trial.  Huff v. Shandy's Café, No. H-11-3549, 2013 WL 510160, *2 (S.D. Texas, Feb. 12, 2013).

## II.  Willfulness or Recklessness is Not a Jury Issue in This Case.

While willfulness and recklessness may at times be considered jury matters in other contexts, it is an issue for summary judgment in FRCA cases. But here, whether the Plaintiff has met the "very high standard"[12] required for willfulness and recklessness, and established more than mere negligence, is to be determined as a matter of law. If Plaintiff cannot show that the standard for recklessness is met, this Court can grant summary judgment as a matter of law.

This is made clear in the seminal Eleventh Circuit case affirming summary judgment against a plaintiff (on virtually identical facts to those present here) in a FACTA case for lack of

---

[11]  To meet his burden, Plaintiff will be required to come forth with some evidence in his opposition, which he will not be able to do.  Berbridge, 2017 WL 3593968, at *2 ("The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor."  (citing Shiver, 549 F.3d at 1343)).

[12] See cases referenced in fn 16, infra.

willfulness and recklessness. Keller v. Macon County Greyhound Park, Inc., 464 Fed.Appx. 824 (11th Cir. 2012). The Eleventh Circuit's affirmance in Keller is not isolated. The Court has re-affirmed its position that summary judgment is proper due to a lack of willfulness or recklessness when a party seeks statutory damages under Section 1681n—the same damages provision under which Plaintiff bases his request for relief on here. See Collins v. Experian Info. Sols., Inc., 775 F.3d 1330, 1336 (11th Cir. 2015) (affirming summary judgment on claim for statutory damages because "willfulness and reckless is a higher standard that has not been met").[13] Thus, summary judgment is proper here, as a matter of law, as it was in Keller and Collins.

## III.  Plaintiff Cannot Meet the Reckless Standard in FCRA (and FACTA) Cases for Statutory Damages under Section 1681n.

The damages provision under which Plaintiff seeks to recover, Section 1681n, requires Plaintiff to prove that the expiration dates were printed willfully, i.e., that the expiration dates had to be printed knowingly or recklessly.[14] Keller, 464 Fed. Appx. 824 ("In Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 56–57 (2007), the Supreme Court construed 'willfully' in § 1681n(a) as including both 'knowing' and 'reckless' violations of FACTA."). Plaintiff's issue is solely whether he can prove the expiration dates were unmasked recklessly.[15] Plaintiff's only basis

---

[13] Although it is well-settled in this Circuit that willfulness or recklessness under Section 1681n is proper as a matter of law at the summary judgment stage, other courts share this view, as well. The Seventh Circuit expressly rejected the position that "willfulness" under FACTA is a fact question for the jury and entered a summary judgment dismissing a FACTA claim. See Van Straaten v. Shell Oil Products Co. LLC, 678 F.3d 486, 490-91 (7th Cir. 2012) (holding, inter alia, that non-moving party was incorrect that willfulness must be a jury question); see also Lugo v. Experian Info. Sols., Inc., 5:16-CV-04647-EJD, 2017 WL 3605228, at *4 (N.D. Cal. Aug. 22, 2017) ("The court may resolve a question of willfulness [under Section 1681n] as a matter of law." (citing Syed v. M-I, LLC, 853 F.3d 492, 503 (9th Cir. 2017))).

[14] Had Plaintiff suffered actual damages, he would be entitled to recover his damages under a far less burdensome negligence standard. 15 U.S.C. § 1681o. However, Plaintiff only chose to proceed under a 15 U.S.C. §1681n, which imposes civil liability for willful noncompliance.

[15] It is undisputed that the expiration dates were not willfully unmasked because there is

alleged for recklessness in his Second Amended Complaint was that OPL had previously been sued for a FACTA violation. However, the alleged violation occurred at the Resort and the record establishes that OPL has no ownership in and is not even an affiliate of the entities that own the Resort.  As such, whatever history OPL had, is meaningless in establishing recklessness here for summary judgment. Further, there is absolutely no evidence that the Resort had ever violated FACTA prior to the installation of the defective Oracle upgrade, or that OPL continued or allowed any continuing FACTA violation after the one situation previously alleged.

The courts have spoken unequivocally that recklessness under the willfulness standard for damages under section 1681n is a "very high" standard.[16] "An isolated instance of human error,"[17] "mere negligence," or an accident or mistake is not enough to survive summary

---

no evidence that any defendant, any third party, or any Jupiter Beach Employee knew unmasked expiration dates were printing.

[16] Collins v. Experian Info. Solutions, Inc., 775 F.3d 1330, 1336 (11th Cir. 2015) (affirming summary judgment because "willfulness or recklessness is a higher standard [than negligence] that has not been met in this case"); Moore v. Aerotek, Inc., No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) ("To obtain statutory damages for an FCRA violation, plaintiffs must meet a very high standard [of] proof, and may even lose after a successful trial verdict."); Berry v. Schulman, 807 F.3d 600, 605 (4th Cir. 2015) (explaining that "willfulness is a high standard, requiring knowing or reckless disregard of the FCRA's requirements"); Price v. Trans Union, LLC, 737 F. Supp. 2d 281, 283 n.3 (E.D. Penn. 2010) (explaining, in a footnote, that the willfulness/reckless disregard requirement of § 1681n(a) is "a much higher standard than mere negligence"); Lugo v. Experian Info. Solutions, Inc., No. 5:16-CV-04647-EJD, 2017 WL 3605228, at *4 (N.D. Cal. Aug. 22, 2017) ("'[W]illfulness or recklessness is a higher standard' than negligence." (quoting Collins, 775 F.3d at 1336)); Singletery v. Equifax Info. Servs., LLC, No. 2:09-CV-489-TMP, 2011 WL 9133115, at *11–12 (N.D. Ala. Sept. 22, 2011) (noting that "reckless conduct is more than mere negligent conduct" and that reckless conduct is "distinct from negligence").

[17] In Singletary v. Equifax Information Services, LLC, 540 Fed Appx 939, 940 (11th Cir. 2013), the Eleventh Circuit affirmed summary judgment, holding that the district court's opinion was "thorough and persuasive," which was predicated on the theories that a system put in place on that caused a "snafu" that may have permitted human error was insufficient to constitute "reckless disregard" under Section 1681n. Singletary, 2011 WL 9133115, at *15 ("But human error is an all too frequent and expected occurrence. One cannot draw from this particular snafu a conclusion that Equifax put this system in place with reckless disregard for providing requested disclosures."), report and recommendation adopted sub nom. Singletery v.

14

judgment.[18]

Beyond the obvious undisputed fact that neither GHM nor any other defendant caused the unmasking of expiration  dates on some folios, important evidences establishes the absence of willfulness here: (a) GHM spent a "ton of money" to install the Merchant Link tokenization system to *best protect its guests from identity theft*; (b) GHM has established that it partially complied with FACTA by properly truncating actual credit card numbers and because all but one type of folio provided to its guests were fully FACTA compliant; (c) all GHM's numerous other point of sale locations were fully FACTA compliant at all times including the Relevant Time Period; and (d) GHM immediately cured the unmasking of expiration dates on learning of this occurrence. Cases have made it clear that the presence of these and similar facts heavily weigh against a finding of recklessness.

On the extensive summary judgment record here, there is not one scintilla of evidence that GHM or any defendant acted recklessly. Rather the record is undisputed that GHM was a victim of software designed and installed solely by Oracle at the Resort, software which neither GHM, nor any defendant, *nor even Oracle's sales and management team knew unmasked expiration dates on some folios until this case was filed and served*.

---

Equifax Info. Services, L.L.C., 2:09-CV-0489-SLB, 2012 WL 4329273 (N.D. Ala. Sept. 18, 2012), aff'd in part as modified sub nom. Singletery v. Equifax Info. Services, LLC, 540 Fed. Appx. 939 (11th Cir. 2013).  Indeed, "[h]uman errors generally do not establish recklessness." Id. at *16. The facts in Equifax showed a greater level of any error than could be possible here. There, twice Equifax employees intentionally refused to provide required documents in violation of the FCRA because of an internal snafu and never actually corrected the violation prior to suit being filed. The court points out that the FCRA, like FACTA, has a two tiered damages structure and more than mere negligence must be shown to get to statutory damages under the second tier.

[18] Rambarran v. Bank of Am., N.A., 609 F. Supp. 2d 1253, 1270 (S.D. Fla. 2009) (evidence showing party is "merely negligent" under section 1681n's reckless standard requires summary judgment); Daniel v. Goodyear Tire/Cbsd, No. 15-11479, 2016 WL 4607739, at *5 (E.D. Mich. Aug. 8, 2016) (explaining that "mistake cannot be actionable under the wilful [sic] or reckless FCRA culpability standards").

**A.  Controlling 11th Circuit Cases Are Directly on Point and Require Summary Judgment for GHM.**

Authority directly on point, in an indistinguishable Eleventh Circuit case, compels summary judgment. Keller v. Macon County Greyhound Park, Inc., 464 Fed.Appx. 824 (11th Cir. 2012) (affirming grant of summary judgment in FACTA case due to lack of willfulness and recklessness). The Eleventh Circuit even went a step past the summary judgment standard and provided guidance on recklessness by stating that the evidence in the case *sub judice* demonstrated a lack of willfulness or recklessness.  Id. ("The district court granted summary judgment to MCGP because the evidence created no issue of material fact as to whether MCGP 'willfully' violated FACTA; the evidence, **if anything, showed that MCGP's FACTA violations were neither 'knowing' nor 'reckless.'"** (citing Burr, 551 U.S. at 56–57)).

In the underlying case, Keller v. Macon County Greyhound Park, Inc., No. 3:07-cv-1098, 2011 WL 1559555 (M.D. Ala. April 25, 2011), the district court held that there was no factual basis to impute recklessness to the defendant because: (1) the software crash was not on account of the defendant's recklessness, (2) it was not reckless to when the defendant "promptly called" the software vendor upon learning of the unmasked credit card information and endeavoring the same day defendant learned of the truncation problem to fix the problem, and (3) it was not reckless to not have any training program in place to search for FACTA violations when reviewing receipts as a backup to the primary safeguard of relying on the software vendor.

It is undisputed here that Oracle told PCFSI employees that a software upgraded needed to occur on December 22, 2015, to close an existing unrelated security hole and that PCFSI employees gave Oracle access to the Jupiter Beach Resort and Spa's server to upgrade Oracle's Opera system.  It is undisputed that no defendants in this case had any knowledge that expiration dates were unmasked on folios after Oracle installed the defective upgrade on December 22,

16

2015.  And, defendants only learned that the Jupiter Beach Resort could have been printing unmasked expiration dates once Plaintiff served OPL on April 4, 2016, the complaint, which OPL immediately forwarded to PCFSI, who worked with Oracle to identify and remedy the problem without any delay.  Indistinguishable facts were expressly relied upon by the <u>Keller</u> court.  <u>See Keller</u>, 2011 WL 1559555, at *4 ("Moreover, there is no evidence of reckless disregard once MCGP did eventually acquire knowledge of the FACTA violations. MCGP endeavored to have the system fixed on December 5, 2007, the very same day it learned of the non-truncation problem.").

To the extent Plaintiff attempts to argue that defendants should have discovered the unmasking before April 4, 2016, when Plaintiff served OPL with the suit, Plaintiff's argument would fail for two reasons.  First, the unmasking was even less obvious here than in <u>Keller</u>.  There, the entire credit card number was unmasked.  <u>Id.</u> *3 ("On all of these receipts, all sixteen credit card numbers were exposed.").  Here, all folios properly redacted the credit card number and only an extraordinarily small subset of folios displayed an unmasked expiration date.

Second, throughout this litigation, Plaintiff has relied upon the misplaced argument that defendants failed to put a policy in place to detect an unmasked expiration date.  However, Plaintiff in this case failed to depose a Jupiter Beach employee, a front desk manager, or a hotel manager to determine whether that person reviewed the folios for FACTA-sensitive information.  Thus, Plaintiff's argument is based on pure speculation and conjecture without any evidentiary support.  Moreover, even if the Jupiter Beach Resort failed to a policy or that an employee failed to follow said policy (neither of which would be supported by the record), the <u>Keller</u> court expressly rejected that a failure to have a policy expressly requiring an employee to search for unmasked credit card information could meet the high standard for recklessness under FACTA.

Keller, 2011 WL 1559555, at *5 (M.D. Ala. Apr. 25, 2011).[19]

In Keller, the Eleventh Circuit expressly recognized that not only was the evidence at summary judgment insufficient to create a genuine issue of material fact, but that it established that the defendant's FACTA violations were neither knowing nor reckless.  Here, the result can be no different.   The evidence conclusively demonstrates that the Jupiter Beach Resort's purported violations were neither knowing nor reckless.[20]

**B.  There is No Unjustifiably High Risk of Harm and There is No High Risk of Harm That is Known or Obvious.**

Even if Keller was not directly on point, Plaintiff's claim of recklessness would still fail. In Safeco, the Court defined recklessness under the common-law standard.   Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007) ("There being no indication that Congress had something different in mind, we have no reason to deviate from the common law understanding in applying the statute.").   Relying on that definition from Safeco, the Eleventh Circuit explained the extremely high standard Plaintiff must meet to demonstrate "recklessness"—"an unjustifiably

---

[19] There can be no confusion with the Keller court's holding—a failure to have a policy might be careless, but does not amount to reckless disregard under FACTA.  Keller, 2011 WL 1559555, at *5 ("Although unstated, the only way to bridge Plaintiffs' gap between Ms. Watson's review of the totals and MCGP's alleged recklessness regarding FACTA violations is to argue that MCGP was reckless in not training Ms. Watson to spot FACTA violations or in not directing Ms. Watson to review the receipts for possible FACTA violations. Even though this failure to erect a second line of defense (the Aloha software being the first line) against FACTA violations could *conceivably* amount to carelessness on the part of MCGP, Plaintiffs' brief and the record are wholly devoid of any coherent argument that it amounts to reckless disregard." (citation omitted)).

[20] It is also noteworthy that the district court in Keller rejected the same arguments Plaintiff has lodged throughout this case—including the unsubstantiated and conclusory statements, such as "Defendants cannot explain their reckless disregard."   The court held that the plaintiff's "resort to conclusory statements without laying any factual basis for those conclusions."   Keller v. Macon County Greyhound Park, Inc., 3:07-CV-1098-WKW, 2011 WL 1559555, at *4 (M.D. Ala. Apr. 25, 2011) (holding that plaintiff's argument that defendant "cannot explain their reckless disregard" as conclusory after plaintiff failed to lay a factual basis).

high risk of harm that is either known or so obvious that it should be known.'" <u>Keller</u>, 464 Fed.Appx. at 824 (quoting <u>Safeco Ins. Co. of Am.</u>, 551 U.S. at 68).

Here, there is no "unjustifiably high risk of harm" that was "so obvious it should be known." Courts share the view that (1) some degree of truncation demonstrates that there was attempt to comply with FACTA and lack of recklessness and (2) that accidentally printing the expiration date when the credit card number is properly truncated does not create a risk of harm that is "so obvious that it should be known." <u>See, e.g.</u>, <u>Gardner v. Appleton Baseball Club, Inc.</u>, 09-C-705, 2010 WL 1368663, at *6 (E.D. Wis. Mar. 31, 2010) ("The fact that the account number was properly truncated shows that the Defendant attempted to comply with FACTA, and given the fact that no additional protection of the consumer is achieved by deleting the expiration date, it can hardly be said that its action 'entail[ed] an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"); <u>Fullwood v. Wolfgang's Steakhouse, Inc.</u>, 13 CIV. 7174 KPF, 2014 WL 6076733, at *7 (S.D.N.Y. Nov. 14, 2014) ("Similarly, the fact that Defendants removed all but the last four digits of credit card numbers on their receipts, in partial compliance with FACTA, fails to persuade the Court that the failure to fully comply was willful rather than negligent."). On Plaintiff's folio, the first 12 digits of his debit card number were truncated and the only the last four digits with the expiration date printed. Plaintiff's Folio [DE 251-02].

Indeed, when a federal appellate court believes that Congress did not think unmasking an expiration date subjects a cardholder to a material risk of harm, a front desk employee or hotel manager (none of whom were ever deposed) could hardly be expected to recognize a "risk of harm so obvious it should have been known." <u>See</u> <u>Crupar-Weinmann v. Paris Baguette Am., Inc.</u>, 14-3709, 2017 WL 2722877, at *3 (2d Cir. June 26, 2017) (holding that Congress's Credit

and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act") is "dispositive" and "makes clear that Congress *did not* think that the inclusion of a credit card expiration date on a receipt increases the risk of material harm of identity theft").[21]  Defendants' expert, Erik Laykin, agrees with the common sense conclusion that there is no material risk a person's identity will be stolen when the first 12 digits on a credit card receipt are properly truncated.  [DE 281-01] at p.12 ¶21.A.  The facts here demonstrate that an unmasked expiration date on a slim subset of folios would not be the type harm that was so obvious it should have been known.

Further, even if someone should have recognized that an unmasked expiration date could expose a guest to "a risk of harm so obvious it should have been known," the evidence is clear that no one would have even noticed an unmasked expiration date on a folio handed to a guest. Rich Ade testified that it would have been very difficult for a manager to have found the unmasking of expiration dates on one of many of types of folios as it was "not obvious."  Ade Transcript [DE 290-4], at 70, 72.  All other point of sale outlets, including the bar, the pool, the restaurant, and the vast majority of the folios printed (those slid under the door, those handed to gests at checkout before settling the bill) never gave any indication that an unmasked expiration date.[22]  Worse, Plaintiff never even requested to depose the Resort's General Manager to see how or why the unmasking on Bouton's receipt was not discovered by him. Therefore, Bouton

---

[21] This is consistent with the finding of numerous other courts that unmasking of expiration dates in no way increases the risk of identity theft nor confers standing. <u>Bell v. Axiom Corp.</u>, 2006 WL 2850042, *2 (E.D. Ark., October 3, 2006); <u>Key v. DSW, Inc.</u>, 454 F. Supp 2d 684, 688-690 (S.D. Ohio 2006); <u>Giordano v. Wachovia Securities, LLC.</u>, 2006 WL 2177036, * 3-4 (D.N.J. , July 31, 2006).

[22] To the extent Plaintiff argues the 200 audit pack folios should have put a manager on notice, the audit pack folios are not given to customers and can properly contain expiration dates. <u>See</u> Mike Walsh Transcript, [DE 290-13] at 157.  It is therefore unlikely that even if a manager did think a properly truncated card number with an unmasked expiration date was harmful, he would not have been on notice that a folio with an unmasked expiration date would have been was presented to a customer.  <u>Keller</u>, 2011 WL 1559555, at *5.

has absolutely no factual basis to assert or create an inference that the person responsible for FACTA compliance at the Resort acted in a willful or reckless matter causing or allowing the violation.

At absolute worst, a failure to discover a folio with an unmasked expiration date in the rare instance it would be printed and handed to a customer, would never be anything more than a mistake, human failing, or mere negligence.

## IV.  Standing

### A.  The Named Class Representative Does Not Have Article III Standing Because He "Safeguarded" the Folio.

This Court's first obligation and threshold issue here is to determine if Plaintiff's has established sufficient facts to show an injury sufficient to show he has the standing necessary to bring this case. This Court only ruled that Plaintiff alleged sufficient ultimate facts to avoid dismissal of his Second Amended Complaint for lack of standing.[23]  However, it is well-settled that at the summary judgment stage, this Court's analysis shifts from one of the facial sufficiency of a complaint to whether Plaintiff can prove jurisdictional facts establishing his standing.[24] He simply cannot.

Recently, the Seventh Circuit Court of Appeals held that where it can be established as

---

[23] In light of the recently decided Courts of Appeal decisions cited herein, this Court might have even ruled differently on GHM's Motion To Dismiss the Second Amended Complaint.

[24] U.S. Postal Serv. v. Am. Postal Workers Union, Miami Area Local, 07-21682-CIV, 2009 WL 901632, at *3 (S.D. Fla. Mar. 31, 2009) ("In contrast to a facial attack, when a factual attack is brought 'the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56' by examining and weighing evidence related to the court's subject matter jurisdiction—it's authority to hear the case—and giving no presumptiveness of truth to the plaintiff's allegations." (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1528-59 (11th Cir. 1990)).

undisputed fact that a receipt[25] holder "discover[s] the violation immediately and nobody else ever saw the non-compliant receipt," there is no risk of harm as to a named plaintiff. Meyers v. Nicolet Rest. of De Pere, LLC, 843 F.3d 724, 727 (7th Cir. 2016)[26] (vacating judgment and remanding for dismissal for lack of jurisdiction), cert. denied, 16-1113, 2017 WL 1001378 (U.S. June 19, 2017).[27]

Plaintiff's unequivocal deposition testimony in this case now requires dismissal with prejudice for lack of Article III standing. In his deposition, Plaintiff expressly and without hesitation testified that he put the folio in his bag and noticed that night that there was a potential issue with his expiration date on the folio. [DE 166-01] at 50-51. He expressly testified that the folio was only ever in his possession, that he "safeguarded" the folio, that no one, not even his ex-girlfriend, touched the folio before Plaintiff gave it to his attorneys, and that only he had possession of the folio. [DE 166-01] at 53. As the Seventh Circuit stated, "[i]n these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that Meyers' identity would be compromised." Meyers, 843 F.3d at 727. This Court should, as the Seventh Circuit has required, dismiss this case without delay for lack of subject matter jurisdiction.

---

[25] Defendants dispute that a folio—like Plaintiff's—constitutes a "receipt" under FACTA. To the extent that Defendants use the term "receipt" herein, it is to refer to the receipt discussed in cited cases.

[26] Meyers was an appeal of the denial of a motion for class certification.

[27] Defendants recognize that this Court has previously held in this case and in Wood v. J Choo USA, Inc., 201 F. Supp. 3d 1332, 1334 (S.D. Fla. 2016), that a FACTA claim seeking statutory damages (without actual harm) for exposing a credit card's expiration date on a receipt is sufficient to state a cause of action *at the motion-to-dismiss stage*. This Court's prior rulings at the motion-to-dismiss stage are reconcilable with Meyers. This Court is confronted for the first time with evidence, not just allegations, revealing whether the named Plaintiff has suffered material a risk of harm sufficient to confer Article III standing. Indeed, Plaintiff can allege standing and survive a motion to dismiss, but Plaintiff will ultimately have to prove that he suffered a risk of harm, which he cannot do here.

**B.  Appellate Courts Now Consider the Bare Procedural Violation of Exposing Expiration Dates on Credit Card Receipts Insufficient to Confer Article III Standing.**

Even if Plaintiff had not "safeguarded" his folio, he still would not have suffered a material risk of harm necessary to confer standing under Article III.  In recent months, the Second Circuit Court of Appeals expressly addressed whether printing a credit card's expiration date on a receipt "presents a material risk of harm to the underlying concrete interest Congress sought to protect in passing FACTA." Crupar-Weinmann v. Paris Baguette Am., Inc., 14-3709, 2017 WL 2722877, at *1 (2d Cir. June 26, 2017).  The appellate court expressly held that Congress's Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act") is "dispositive" and "makes clear that Congress *did not* think that the inclusion of a credit card expiration date on a receipt increases the risk of material harm of identity theft."[28] Id. at *3.

Based on the correctness of the lower Court's finding of no cognizable injury and no standing, the Crupar-Weinmann Court then affirmed the trial court's dismissal of the class action in that case for lack of Article III standing. There, like here, Plaintiff does nothing but allege a bare procedural violation, with no actual injury or damages.[29]  Just as in Crupar-Weinmann, Plaintiff has no standing here, and just as in Crupar-Weinmann, Plaintiff's Complaint should be

---

[28] This is consistent with the finding of numerous other courts that unmasking of expiration dates in no way increases the risk of identity theft nor confers standing. Bell v. Axiom Corp., 2006 WL 2850042, *2 (E.D. Ark., October 3, 2006); Key v. DSW, Inc., 454 F. Supp 2d 684, 688-690 (S.D. Ohio 2006); Giordano v. Wachovia Wachovia Securities, LLC., 2006 WL 2177036, * 3-4 (D.N.J. , July 31, 2006).

[29] Plaintiff in this case admits he suffered no actual harm because he has had no irregular credit activity on the card he used to stay at the Jupiter Beach Resort.  [DE 266-01] at 54 ("Q: And, to your knowledge, has there been any irregular activity in terms of fraud between when you saw the folio and today? A: No."). In fact, there has been no claim made by any guest of the Resort that they have suffered any identity theft or damages because they received a folio with an unmasked expiration date.

dismissed.[30]  Accordingly, Congress has always been clear and now Courts of Appeal case law makes it clear the mere unmasking of an expiration date, without more, can never give rise to an increased risk of material harm of identity theft or a potential injury that is standing-worthy.

Finally, in the last four days, the Second Circuit Court of Appeals again addressed a plaintiff's standing under Section 1681n in <u>Katz v. Donna Karan Co., L.L.C.</u>, 15-464, 2017 WL 4126942, at *4 (2d Cir. Sept. 19, 2017). This case involved a FACTA violation more serious than unmasking of an expiration date; there, six digits of a credit card number were unmasked. Even where the violation was more than one involving just an expiration date no sufficient injury was present for standing purposes.  The Second Circuit affirmed a dismissal of a FACTA complaint on the basis that defendant's fact-based challenge to a "real risk of harm" where a receipt was printed with six digits of a credit card number.  There, defendants submitted evidence (far weaker than that submitted in this case) that showed a cardholder would not suffer a real risk of identity theft.  In <u>Katz</u>, the challenge constituted a factual challenge (based on evidence), like that which is presently pending before this Court.  This Court can now rely on Erik Laykin's expert report to support that there is no real risk of harm and that Plaintiff cannot meet his burden to show this Court has subject matter jurisdiction.

**C.  Expert Evidence Conclusively Proves an Exposed Expiration Date Poses No Material Risk of Identity Theft for Article III Standing.**

Even if the Seventh Circuit's decision in <u>Meyers</u> or the Second Circuit's decision in <u>Crupar-Weinmann</u> did not provide express analysis on these dispositive issues, this Court now has, for the first time, expert evidence available on whether exposing an expiration date subjects

---

[30] Although GHM and the Defendants have raised standing issues, which are presently pending before this Court in the Opposition to the Motion for Class Certification and are reiterated herein, it is worth nothing that additional case law further supports Defendants' position that Plaintiff does not have article III standing.

a receipt holder to a material risk of identity theft.  <u>See</u> Erik Laykin Expert Report, [DE 281-1]. Mr. Laykin is highly qualified.  His opinion confirms the rulings of <u>Crupar-Weinmann</u> and other courts referred to above.

Specifically, to obtain a full credit card number for purposes of a fraudulent transaction, Erik Laykin opines that "if a guest folio showing an expiration date and last four digits was lost, the risk of harm to the guest would not be significantly increased and the guest would not plausibly face an imminent risk of being harmed."  [DE 281-1] at 32.  To support his well-reasoned opinion, Erik Laykin painstakingly addresses how current anti-fraud detection would prevent brute-force attempts (a term of art in identity theft circles) from succeeding, how changing technology has shifted which information is vulnerable to creating a risk of identity theft, the true risk factors of identity theft, how modern industry "PCI" compliance standards do not require truncated expiration dates, how to generate a counterfeit credit card, and why generating counterfeit credit cards is not feasible due to advances in and adoption of microchip technology.  [DE 281-1] at 32-46.

Mr. Laykin's report, based on years of industry experience, provides the first real expert analysis of the risk of identity theft in the modern technological era.  Based on this report, based on Plaintiff's deposition testimony, and based on well-reasoned opinions in <u>Meyers</u> and <u>Crupar-Weinmann</u>, Plaintiff's expiration date does not create a material risk of harm necessary to confer Article III standing.   This Court therefore lacks subject matter jurisdiction, and dismissal is appropriate.

## **CONCLUSION**

For the reasons stated above, GHM Jupiter, LLC respectfully requests this Court grant final summary judgment.

Respectfully submitted this 22nd day of September 2017.

SHUTTS & BOWEN, LLP
200 South Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Telephone: 305-347-7305
Facsimile: 305-381-9982
*Attorneys for Ocean Properties, Ltd. and GHM Jupiter, LLC*

By: _s/ Jake Monk, Esq._
         Frank A. Zacherl
         Florida Bar No. 868094
         fzacherl@shutts.com
         Jake Monk
         Florida Bar No. 100321
         jmonk@shutts.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Jake Monk, Esq._
*Counsel for Ocean Properties and GHM*

## SERVICE LIST

Keith Keogh
Michael R. Karnuth
Keogh Law, LTD
55 W. Monroe Street

Suite 3393
Chicago, IL 60603
312-726-1092
Keith@KeoghLaw.com
MKarnuth@KeoghLaw.com

Bret Leon Lusskin, Jr.,
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Suite 302
Aventura, FL 33180
954-454-5841
blusskin@lusskinlaw.com

Scott David Owens
Patrick Crotty
Sean Holas
Scott D. Owens, P.A.
3800 S. Ocean Drive
Suite 235
Hollywood, FL 33019
954-589-0588
scott@scottdowens.com
patrick@scottdowens.com
sean@scottdowens.com

Stuart I. Grossman, P.A.
Jason K. Kellogg, P.A.
Victoria J. Wilson, Esq.
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
Telephone:  (305) 403-8788
Facsimile:  (305) 403-8789
sig@lklsg.com
jk@lklsg.com
vjw@lklsg.com

MIADOCS 15361863 6