UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-cv-80502-Bloom/Valle

JUSTIN BOUTON, individually and on
behalf of others similarly situated,

    Plaintiff,

v.

OCEAN PROPERTIES, LTD., et al.,

    Defendants.

_____/

**OPROCK JUPITER FEE, LLC AND OPROCK JUPITER TRS, LLC'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The OpRock Defendants[1] file their reply in support of their Motion for Summary Judgment (the "Motion") and incorporate by reference the arguments raised in GHM's reply, and state:

### I.    UNCONTROVERTED FACTS ARE DEEMED ADMITTED BY PLAINTIFF

Under S.D. Fla. L.R. 56.1, "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." Plaintiff did not respond to the OpRock Defendants' numbered Statement of Undisputed Facts and did not file additional separately numbered fact paragraphs. Thus, each of the OpRock Defendants facts is deemed admitted by Plaintiff.[2]

---

[1]    All capitalized terms not otherwise defined herein have the same meaning assigned to them in the Motion.

[2]    *Wise v. City of Lauderhill*, No. 15-60686-CIV, 2016 WL 3747605, at *1 n.3 (S.D. Fla. Jul. 13, 2016) ("Wise filed no statement in response in conjunction with the filing of her opposition to the motion for summary judgment. Therefore, pursuant to Local Rule 56.1(b), all

## II. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE OPROCK DEFENDANTS

### A. The OpRock Defendants Are Not Directly Liable for any Violation

In arguing the OpRock Defendants can be "directly" liable for the FACTA violation, Plaintiff primarily relies upon cases involving *vicarious* liability for violations of a different statute. Specifically, Plaintiff argues that the OpRock Defendants are liable because they financially benefitted from the transactions, citing two cases applying the standard for vicarious liability for copyright infringement under the Copyright Act. *See* Resp. at 9 (citing *Broadcast Music, Inc. v. Meadowlake, Ltd.*, No. 5:12-CV-1024, 2013 WL 3927793 (N.D. Ohio Jul. 29, 2013) and *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 1001-03 (E.D. Cal. 2004)).[3] The prerequisites for vicarious liability under the Copyright Act are: (1) the right and ability to supervise the infringing activity, and (2) a direct financial interest in such activities. *See Broadcast Music*, 2013 WL 3927793, at *3. Even if the standard for vicarious liability under the Copyright Act were applicable here — which it is not — Plaintiff could not meet those requirements. The OpRock Defendants had neither the right nor ability to supervise the printing of receipts. *See Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271 (S.D. Fla. 2012) ("[T]he allegations still do not support a claim for vicarious copyright infringement liability against them

---

facts contained in the City's Statement are hereby deemed admitted."); *Vega v. Bank of Am., N.A.*, No. 14-CV-21931, 2015 WL 12556300, at *1 n.1 (S.D. Fla. Jul. 20, 2015) ("Plaintiff does not respond to Defendants' Statement of Material Facts. Pursuant to Local Rule 56.1, when a party fails to controvert a statement of undisputed facts, '[a]ll material facts set forth in the movant's statement filed and supported . . . will be deemed admitted. . . .'" S.D. Fla. L. R. 56.1.); s*ee also Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1325 (S.D. Fla. 2012) ("Similarly, Federal Rule of Civil Procedure 56(e) permits a district court to treat an unaddressed statement of fact as undisputed.").

[3]   Plaintiff cites *UMG* as applying the standard for vicarious copyright infringement. The court also found direct liability. However, the court was clear that the defendant was required to actually know of the infringing activity. *UMG Recordings,* 300 F. Supp. 2d at 1001. It is undisputed here that the OpRock Defendants had no knowledge of any FACTA violation. (SUMF ¶¶ 17-19).

because they are not alleged to operate and manage the Flea Market, and therefore there are no factual allegations to support the supervise and control prong of the inquiry as to these Defendants."). Moreover, the Management Agreement grants exclusive operational control and possession to GHM. (*See* SUMF ¶ 11). Consistent with those terms, OpRock TRS does not actually exercise such operational control, *see id.* ¶¶ 11-13, 15.

Moreover, under the copyright act, the alleged principal must receive a **direct** financial benefit **from the infringing activity**. *See Broadcast*, 2013 WL 3927793, at *3, 5. For example, counterfeit products that lure customers to a flea market could financially benefit a flea market operator. *See*, *e.g.*, *UMG*, 300 F. Supp. 2d at 1002-03. Here, the OpRock Defendants received no direct financial benefit from the FACTA violation.

Similarly, Plaintiff broadly argues that the OpRock Defendants as owners can be liable for the misconduct of others under FACTA. This argument once again goes to vicarious, not direct, liability. In support, Plaintiff cites *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1211-12 (C.D. Cal. 2007). The plaintiff in *Edwards* sued Toys R Us — the **operator** of the store who was the entity that printed the violative receipt and provided it to customers at the point of sale. *See id.* at 1200 ("This case involves a period of time in 2006 during which **Toys** printed more than the last five digits of consumers' credit card numbers on its customer receipts.") (emphasis added). There is no mention of the owner of the property on which Toys operated its store, and the plaintiff did **not** sue the vendor as Plaintiff represents. The issue in that case was whether an outside software vendor was an agent of Toys (the operator of the store) such that the vendor's willfulness could be imputed to Toys. *See id.* That case did not analyze the question of whether *an owner or lessee* that did not print the receipt at issue can be directly liable for a FACTA violation.

Next, in a circular fashion, Plaintiff argues that contracting with a management company does not "extinguish the OpRock Defendants' liability." *See* Resp. at 9. But Plaintiff has not shown, that the OpRock Defendants had a duty under FACTA in the first place — the OpRock Defendants do not print receipts. Plaintiff cites *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1231 (11th Cir. 2002), where the defendant plan administrator was sued for violating the notification obligations imposed upon plan administrators under the COBRA Act. The court found that the administrator could not "contract away an obligation ***specifically assigned to it under the statute***." *Id.* (emphasis added). Here, the FACTA requirements are imposed upon the entity that actually prints receipts and provides them to customers at the point of sale. There was no obligation specifically assigned to the OpRock Defendants under FACTA simply by virtue of their being an owner and lessee.

Finally, Plaintiff relies on *United States v. Bestfoods*, 524 U.S. 51, 64 (1998) — a CERCLA case where the underlying statute ***does*** impose strict premises liability on owners of property. The CERCLA statute at issue in *Bestfoods* specifically provides that liability under CERCLA extends to "any person who at the time of disposal of any hazardous substance ***owned or operated*** any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607 (emphasis added). Here, direct liability under the language of FACTA is imposed only upon the entity that prints the receipt and hands it to the customer at the point of sale.[4] The uncontroverted facts show that the OpRock Defendants did not. (*See* SUMF ¶ 15).

**B.    The OpRock Defendants Are Not Vicariously Liable**

As this Court recognized in its Order denying class certification, Plaintiff has pled a direct theory of liability against the OpRock Defendants. *See* [D.E. 330] at 13. *See Saralegui v.*

---

[4]   *Bestfoods* demonstrates that when Congress intended to impose liability based on ownership or leasing of property, it knew how to do so.

4

*Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.*, 19 So. 3d 1048, 1051 (Fla. 3d DCA 2009) (affirming summary judgment on apparent agency because "issues that are not pled in a complaint cannot be considered by the trial court at a summary judgment hearing"). Nevertheless, even if Plaintiff had properly pled this theory, Plaintiff cannot show an actual or apparent agency relationship.

### 1. There is no actual agency relationship

Plaintiff makes no attempt to establish an agency relationship between the OpRock Defendants and GHM or OPL. Instead, Plaintiff argues that the OpRock Defendants can be liable because OpRock TRS approved the Oracle Upgrade and the Oracle Contract was signed on behalf of OpRock TRS. *See* Resp. at 12. As an initial matter, those assertions relate only to OpRock TRS — not OpRock Fee.

But beyond that, the uncontroverted facts show that the OpRock Defendants did not approve the content of receipts. (*See* SUMF ¶¶ 17). The Oracle contract does not say anything about the content of receipts and the OpRock Defendants had no involvement in implementing the Oracle Upgrade. At most, OpRock TRS approved an annual operating budget nearly a year before the Oracle Upgrade — no specific budgetary approvals were required under the Management Agreement, and no such approval was requested or provided specifically with regard to the Oracle Upgrade. (*See* SUMF ¶¶ 17-19; s*ee also* Ade Depo. Tr. at 24:17-25:14, 112:7-113:7 [D.E. 290-4] (stating that the OpRock Defendants would not have had any involvement in the implementation of the Oracle Upgrade "other than approving the spending of money")).[5]

---

[5] The Management Agreement requires GHM to comply with the law.

### 2. There is no apparent agency

To prove apparent agency, Plaintiff must demonstrate: "(a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Carroll v. Diamond Resorts Mgm't*, No. 14-20649-CIV-WILLIAMS, 2015 WL 11202373, *5 (S.D. Fla. Oct. 19, 2015) (quoting *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995)).

The uncontroverted facts establish that the OpRock Defendants have never represented to Bouton that either GHM or OPL acts as their agent. (*See* SUMF ¶ 8). Plaintiff argues that apparent agency can be established here because the OpRock Defendants own and lease the property and the receipts used their fictitious name. That is insufficient for apparent agency. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995) (finding no apparent agency between the owner of the property and the operator of a gas station even though the operator used the owner's name, symbols and products because there was no allegation that the owner made any representation to the plaintiff that the operator was its agent).

Moreover, Plaintiff fails to point to any representation **by the OpRock Defendants**. In determining whether an apparent agency has arisen, the focus is on the ***principal's*** actions and communications to the third party, not the agent's. *See*, *e.g.*, *Sun Life Assurance Co. of Canada (U.S.) v. Imperial Holdings, Inc.*, No. 13-80385, 2014 WL 12452450, at *3 (S.D. Fla. Jun. 26, 2014); *In re Brican Am. LLC Equip. Lease Litig.*, No. 10-md-02183, 2014 WL 250246, at *6 (S.D. Fla. Jan. 22, 2014).

Likewise, the uncontroverted facts show that Bouton did not rely on any such statement, or change his position as a result of any such representation. (*See* SUMF ¶ 10). Those facts preclude a finding of apparent agency as a matter of law. *Smith v. Am. Auto. Ins. Co.*, 498 So. 2d

6

448, 449 (Fla. 3d DCA 1986) (finding no apparent agency existed because the fact that plaintiff "***did not even know the name of the insurance company***" established that the plaintiff was not relying on any representation of the insurance company) (emphasis added); *Johns v. Jarrard*, 927 F.2d 551, 557 (11th Cir. 1991) (agreeing with the conclusion that "there being no suggestion in the record that [plaintiffs] relied in any way upon Coastal's reputation or, indeed, ***that [they] even knew of that company's existence***, there is no basis upon which Coastal may be held liable under the apparent agency doctrine." (emphasis added)) (applying Georgia law)).[6]

### C. Bouton Cannot Show the Requisite Willfulness on the Part of the OpRock Defendants

Finally, the uncontroverted facts show that the OpRock Defendants had no knowledge that FACTA violative receipts were being printed. (*See* SUMF ¶¶ 17-19). Thus even if they knew of FACTA — which they did not — the OpRock Defendants did not know it was being violated. *See Torongo*, 176 F. Supp. 3d at 1324-25 (granting motion to dismiss where the plaintiff only pled that the defendant knew about FACTA's requirements, but failed to allege that defendant knew its conduct was violating it).

The OpRock Defendants likewise could not have recklessly violated FACTA because they had no involvement in the programming or configuration of the Oracle Upgrade, do not use the point-of-sale software and do not even have day-to-day access to the receipts. (*See* SUMF at ¶¶ 17-18).

As Plaintiff succinctly states, "[t]he statutory text is unambiguous and absolute – it says a merchant ***may not print*** expiration dates on card receipts at the point of sale, period." Resp. at 20 (emphasis added). The OpRock Defendants do not print receipts and their Management

---

[6] Plaintiff's argument that the OpRock Defendants can be liable as GHM or OPL's agent, *see* Resp. at 16 n.9, circles back to the direct liability of the Oprock Defendants, which fails for the reasons stated above.

Agreement requires GHM's compliance with the law.  Thus, it is reasonable for the OpRock Defendants to understand that they were not the entity responsible for FACTA compliance.

Dated: October 10, 2017

Respectfully submitted,

By: /s/ *Victoria J. Wilson*
Stuart I. Grossman, P.A.
Florida Bar No. 176699
Email: sig@lklsg.com
Jason K. Kellogg, P.A.
Florida Bar No. 0578401
Email: jk@lklsg.com
Victoria J. Wilson, Esq.
Florida Bar No. 092157
Email: vjw@lklsg.com
**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
Citigroup Center, 22nd Floor
201 South Biscayne Boulevard
Miami, FL  33131
Telephone: (305) 403-8788
Facsimile:  (305) 403-8789
*Attorneys for Defendants OpRock Jupiter Fee, LLC and OpRock Jupiter TRS, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 10, 2017, I served the foregoing to all counsel of record on the Service List below via CM/ECF

/s/*Victoria J. Wilson*
Victoria J. Wilson

## SERVICE LIST

Frank Zacherl, Esq.
fzacherl@shutts.com
Jake Monk, Esq.
jmonk@shutts.com
SHUTTS & BOWEN, LLP
200 South Biscayne Blvd, Suite 4100
Miami, Florida 33131
Tel.: 305.347.7305
Fax: 305.381.9982

Michael R. Karnuth
MKarnuth@KeoghLaw.com
Keith James Keogh
Keith@Keoghlaw.com
KEOGH LAW, LTD
55 W. Monroe Street
Suite 3393
Chicago, IL 60603
312-726-1092

Scott David Owens
scott@scottdowens.com
Patrick Christopher Crotty
patrick@scottdowens.com
Sean Martin Holas
sean@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, FL 33019
954-589-0588

Bret Leon Lusskin, Jr.,
blusskin@lusskinlaw.com
BRET LUSSKIN, P.A.
20803 Biscayne Blvd.
Suite 302
Aventura, FL 33180
954-454-5841