**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 9:16-cv-80502-Bloom/Valle

| | |
|---|---|
| JUSTIN BOUTON, individually and, ) <br> on behalf of others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OCEAN PROPERTIES, LTD., ) <br> a foreign corporation, ) <br> OPROCK JUPITER FEE, LLC, ) <br> a foreign limited liability company, ) <br> OPROCK JUPITER TRS, LLC, ) <br> a foreign limited liability company, and ) <br> GHM JUPITER, LLC, ) <br> a foreign limited liability company. ) <br> ) <br> Defendants. ) <br> / | **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

# GHM JUPITER, LLC'S REPLY TO PLAINTIFF'S OPPOSITION TO GHM'S MOTION FOR SUMMARY JUDGMENT

Plaintiff is either unable or unwilling to challenge the undisputed facts that clearly show a total and undeniable absence of willfulness or recklessness in this case pursuant to Eleventh Circuit FCRA (and FACTA) cases: <u>Keller</u> and <u>Collins</u>. In his Opposition, Plaintiff has again misrepresented countless facts and has twisted the law to try to escape summary judgment—all of which causes continued unjust expense to GHM and the other defendants in this case. If that were not enough, Plaintiff chose not to participate in this Court's summary judgment procedure by expressly stating he is not rebutting GHM's statement of facts. And, as Plaintiff's own "factual basis" for opposing summary judgment (again, without rebutting GHM's facts), Plaintiff presents evidence that is not competent summary judgment evidence because the attached web-print and Mr. Coker's reports are not made under oath, by affidavit, under penalty of perjury pursuant to 28 U.S.C. §1746, or by any other form required by Rule 56(c)(4).

**I. GHM's Material Facts are Deemed Admitted Because Plaintiff Failed to Respond to GHM's Statement of Material Facts.**

It could not be any more obvious that GHM included a "Statement of Material Facts" (the exact phrase used in Local Rule 56.1(a)) considering that GHM titled the section, "STATEMENT OF MATERIAL FACTS." Motion [DE 325] at 7. Yet, Plaintiff has failed to respond, as is expressly required by LR56.1, to GHM's procedurally proper statement of facts. Plaintiff mistakenly interprets LR56.1 (without any support) to require that GHM's statement of facts must be "separately" filed. See Plaintiff's Opposition [DE 325], at 2 n.1. Not so.[1] Based on Plaintiff's imprecise reading of LR56.1, Plaintiff argues "there is no statement to 'respond' to as provided by the Rule" and admits that he "only submits a statement of additional facts . . . ."[2] [DE 325] at 2 n.1. However, GHM's statement of facts is, exactly as required by LR56.1, "separately numbered paragraphs" that are "supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." L.R. 56.1(a)(2)-(3).[3]

---

[1] It is undisputed that the Southern District of Florida interprets its own rule to permit the statement of material facts to be incorporated into a single document so long as the facts are separately numbered and supported. <u>Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.</u>, 941 F. Supp. 2d 1348, 1372 (S.D. Fla. 2013) (Rosenbaum, J.) ("As long as a distinct statement of material facts that complies with the provisions of Local Rule 56.1(a) accompanies the motion, *it is irrelevant whether it is filed separately or incorporated into a single document.*" (emphasis added)).

[2] Plaintiff did not even respond to GHM's separately numbered statement of facts in an abundance of caution.

[3] GHM's statement of facts complies with the 10-page limit set forth in LR56.1(a)(1).

As a result of Plaintiff's failure to rebut a single fact in GHM's statement of material facts, all GHM's facts are deemed admitted.[4] L.R.56.1(b) ("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement . . . ."). There can be no confusion; under the cases in this jurisdiction in this exact scenario, Plaintiff's failure to controvert GHM's statement of facts is a hard requirement even if the statement of material facts is incorporated into the motion and not filed separately.[5]

The following facts, as well as those expressly set forth in the Statement of Material Facts, which Plaintiff could have but chose not to rebut, should now be deemed admitted. Non-party Oracle with the help of non-party PCFSI accessed the Jupiter Beach Resort's Opera system, and non-party Oracle installed an update that neither PCFSI nor the Jupiter Beach Resort knew would unmask expiration dates. [DE 325] at ¶¶ 8-10, 13. Further, not PCFSI, any of the defendants in this case, or any user of the upgraded software knew Opera printed unmasked expiration dates until the instant lawsuit was filed. [DE 325] at ¶10. Once non-party PCFSI learned of the defective upgrade, PCFSI cured the defect within 24 hours of the suit. [DE 325] at ¶11. Further, the unmasked expiration date on the limited subset of folio reports would have been difficult to detect because all other point-of-sale locations were compliant, other folios printing from the same system were compliant, and to discover unmasking on this particular type of folio would have required a hotel manager to essentially step between the front desk clerk and the guest. [DE 325] at ¶14. Moreover, the Jupiter Beach Resort's non-party vendor PCFSI would not have had any reason to expect that Oracle would introduce a defect into its system because PCFSI understood Oracle "would safeguard the security of credit card data" based on

---

[4] Every paragraph in GHM's statement of facts contains pincites to specific pages, paragraphs, and lines of depositions or declarations all of which are either under oath (depositions) or made under penalty of perjury pursuant to 28 U.S.C. §1746 (declarations). As will be seen below, Plaintiff does not cite to any competent summary judgment evidence.

[5] Wise v. City of Lauderhill, 15-60686-CIV, 2016 WL 3747605, at *1 n.3 (S.D. Fla. July 13, 2016) ("The City filed a Statement of Undisputed Material Facts, incorporated into its motion for summary judgment as Part III, which the Court finds is supported as required and substantially complies with all requirements of Local Rule 56.1. Wise filed no statement in response in conjunction with the filing of her opposition to the motion for summary judgment. Therefore, pursuant to Local Rule 56.1(b), all facts contained in the City's Statement are hereby deemed admitted."); Vega v. Bank of Am., N.A., 14-CV-21931, 2015 WL 12556300, at *1 n.1 (S.D. Fla. July 20, 2015) (same); Maryland Cas. Co. v. Integration Concepts, Inc., 119 F. Supp. 3d 1322, 1323 n.1 (S.D. Fla. 2015) (same); Stroud v. Bank of Am., 886 F. Supp. 2d 1308, 1325 (S.D. Fla. 2012) ("Similarly, Federal Rule of Civil Procedure 56(e) permits a district court to treat an unaddressed statement of fact as undisputed.").

marketing materials, [DE 325] at ¶5, and that they Oracle and the world's leading hotel management platform for system security, [DE 325] at ¶7. Finally, there was no indication to PCFSI from any materials or details provided by Oracle that Oracle's upgrade (which was installed for the purpose of improving security, [DE 325] at ¶1) would have caused the unmasking. [DE 325] at ¶8.

Even if Plaintiff had opposed GHM's separately numbered statements of facts as required by LR56.1(b), Plaintiff would not have been able to rebut a single fact because Plaintiff never deposed a Jupiter Beach employee, a front-desk manager, the hotel manager, or a representative from Fee or TRS. And as will be seen below, Plaintiff's expert's report (which is unreliable because he wrote the report before any discovery or investigation in this case) could not form the basis to oppose summary judgment because it is not competent summary judgment evidence.

**II. GHM Objects to Plaintiff's Use of Inadmissible Expert Reports and the Sentinel Report.**

Even if Plaintiff had properly rebutted GHM's indisputable facts, Plaintiff's summary judgment evidence is not competent and cannot be considered by this Court. First, Plaintiff's expert report authored by Don Coker fails the clear and unequivocal test for competence at the summary judgment stage—compliance with Rule 56(c)(4).[6] Plaintiff did not submit a declaration by Mr. Coker made under penalty of perjury pursuant to 28 U.S.C. § 1746 with the Opposition [DE 336], and neither Mr. Coker's Report [DE 290-14] nor his Rebuttal Report [DE 290-15] contain any such declaration before his signatures. See [DE 290-14] at p.24; [DE 290-15] at p.8. Mr. Coker's omission of any such declaration under penalty of perjury is not an oversight. Mr. Coker did not conduct any factual investigation in this case and wrote his report based solely on the pleadings; indeed, no one would declare under penalty of perjury that facts are true without conducting any factual investigation.[7] And it cannot be claimed that he was unaware of this requirement. In Mr. Coker's prior cases, which Plaintiff cites and even attaches in this litigation, See Coker Report from 2008, [DE 315-1] at CM/ECF p. 10., Mr. Coker signs

---

[6] The requirement was previously found in Rule 56(e), which has since been relocated in the 2010 amendment to Rule 56(c)(4). The comment provides that the relocation did not change the requirement. As a result, prior to 2010, courts reference the requirement as a 56(e) requirement. See Carr v. Tatangelo, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), as amended (Sept. 29, 2003) ("Unsworn statements "do[ ] not meet the requirements of Fed. Rule Civ. Proc. 56(e)" and cannot be considered by a district court in ruling on a summary judgment motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970). Because the preliminary report was submitted without attestation, it had no probative value and properly was not considered by the district judge in ruling on the officers' summary judgment motions.").

[7] His failure to investigate, *inter alia*, forms the basis of a pending Daubert Motion, [DE 300].

his reports with the statutorily mandated language. See 28 U.S.C. § 1746(2) (providing template declaration language that: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)").

The law is clear that a declaration or a report without a proper accompanying declaration made under penalty of perjury is not competent summary judgment evidence. Beard v. Green, 0822284CIVSEITZ, 2010 WL 411084, at *10 (S.D. Fla. Jan. 29, 2010) (holding that although affidavit included words that demonstrated an intent to state the truth, the document that did not comply with the "specific requirements of 28 U.S.C. § 1746" was not competent summary judgment evidence); Estrella v. Ltd Fin. Servs., LP, 8:14-CV-2624-T-27AEP, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015) ("Plaintiffs declaration is neither sworn nor in compliance with 28 U.S.C. § 1746 and cannot be considered." (citing Dudley v. City of Monroeville, Ala., 446 Fed. App'x 204, 207 (11th Cir. 2011))); Diamond Heads, LLC v. Everingham, 8:07-CV-462-T-33TBM, 2009 WL 1046067, at *6 n.11 (M.D. Fla. Apr. 20, 2009) ("[I]n view of the long history in federal case law which supports the proposition that unsworn statements are insufficient to support or oppose a Rule 56 motion, I decline to consider Dr. Stolkin's report as a 'disclosure material on file' particularly here where it is unsigned, unsworn, and undated."). Application of this requirement is consistent in other jurisdictions, as well.[8]

Plaintiff's only support for his unsubstantiated factual statements, such as "unmasking was easy to spot but went on for months and involved hundreds or thousands of transactions,"[9]

---

[8] See Winstead v. Georgia Gulf Corp., 77 Fed. Appx. 267, 271 (5th Cir. 2003) (holding expert report that was not certified or sworn was not competent summary judgment evidence); Deitrick v. Costa, 4:06-CV-01556, 2015 WL 1606714, at *6 (M.D. Pa. Apr. 9, 2015) ("[T]here is a line of Third Circuit precedent excluding unsworn expert materials as incompetent evidence on summary judgment." (citations omitted)); Damiani v. Duffy, CV 12-1637-RGA, 2017 WL 4401885, at *7 (D. Del. Oct. 4, 2017) ("[N]o declaration or sworn affidavit was provided with the expert report. Our appellate court has found that unsworn testimony 'is not competent to be considered on a motion for summary judgment.'" (citations omitted)); AOP Ventures, Inc. v. Steam Dist., LLC, EDCV151586VAPKKX, 2016 WL 7336730, at *11 (C.D. Cal. Oct. 11, 2016) ("Courts in the Ninth Circuit have routinely held that unsworn expert reports are inadmissible." (citations omitted)); Hatcher v. SCM Group N. Am., Inc., 167 F. Supp. 3d 719, 724–25 (E.D. Pa. 2016) ("[R]eport is not competent for consideration at summary judgment, because it provides neither an affidavit nor an acceptable alternative "subscribed in proper form as true under penalty of perjury to substitute for an affidavit." (citations omitted)); Tuohey v. Chenal Healthcare, LLC, 4:15CV00506 JLH, 2017 WL 2177981, at *3 (E.D. Ark. May 17, 2017) ("[A]n unsworn expert report, standing alone, does not constitute admissible evidence that can be considered at the summary judgment stage of the proceedings, and will not defeat a motion for summary judgment . . . ." (citations omitted)).

[9] This Court recognized in denying certification that the maximum possible number of FACTA violative transactions, based on speculative evidence, could have been about 1,000 transactions.

4

is Coker's own expert reports and not any other source. See Plaintiff's Additional Statement of Facts, [DE 336-1] at ¶6 (citing only to Coker's report and not to any testimony under oath or declaration under penalty of perjury). Aside from Plaintiff's use of incompetent summary judgment evidence, these fabricated statements cannot overcome the competent summary judgment testimony by Rich Ade and Mike Walsh explaining exactly why it would not have been easy for a hotel manager to discover an unmasked expiration date in this very limited, isolated circumstance when other POS locations were compliant and most other folios printed from the same location were compliant. Ade Transcript, [DE 290-4] at pp.70, 72; Walsh Transcript, [DE 290-13] at p.149, lns-3-23.[10] And it bears noting that GHM's expert Erik Laykin, who properly included a declaration made under penalty of perjury,[11] after extensive factual development and investigation, explained how the Jupiter Beach Resort was overwhelmingly compliant and that only in the rarest of circumstances would a folio print with an unmasked expiration date. [DE 281-01] at CM/ECF p. 15 (Fig.2). This competent, undisputed, and indisputable summary judgment evidence of full compliance before installation of the defective Oracle software, and continuing partial compliance thereafter, shows that there could never be a showing of "reckless disregard" to justify an award of statutory damages under §1681n.

Further, Plaintiff attaches, now for the first time in this litigation, a "Consumer Sentinel Network" report regarding identity theft. Presumably, Plaintiff is attempting to overcome GHM's factual challenge to Plaintiff's Article III standing by providing evidence in opposition to GHM's summary judgment motion. However, Plaintiff's attachment of this "Report" suffers the same flaw as Mr. Coker's Reports; there is no indication as to where Plaintiff obtained this report (not even a website), no indication who wrote it (aside from it purportedly being a federal publication), and it is submitted without any certification, declaration, or attestation. Plaintiff's evidence is not self-authenticating, does not fall within a hearsay exception, and is not certified (like the certified public records defendants provided to this Court at the motion-to-dismiss

---

[10] These citations are expressly provided in GHM's Statement of Material Facts in separately numbered paragraphs. [DE 325] at p.8¶8, p.9¶14. That GHM must to rebut Plaintiff's incompetent evidence, which is not responsive in paragraph form to GHM's statement of facts, forces GHM to unfairly incur additional expense when the rules provide for an orderly system to avoid this type of expense to a party or imposition on the judiciary's resources.

[11] Mr. Laykin's Expert Report properly provides: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 2nd day of June, 2017, at Los Angeles, California. *Erik Laykin*." See Laykin Report, [DE 281-01] at CM/ECF p. 54.

5

stage). This Court should therefore ignore the Sentinel Report as well as Coker's reports.

### III. Plaintiff's Statement of Material Facts is Marred with Misrepresentations[12]

1.-2. Paragraphs 1 - 2 are not supported by competent summary judgment evidence.

3. Paragraph 3 is a misstatement and the misstatement is irrelevant. Rich Ade did not testify that two different systems process credit card and debit card transactions. He testified that the receipts generated by the software systems at the Resort Gift Shop POS properly masked expirations dates. The receipt generating software is different than the processing of a transaction with a credit card company by the OPERA system at the front desk.

6. Paragraph 6 is not supported by competent summary judgment evidence because Mr. Coker's reports are not declared true under penalty of perjury. Regardless, even if they were, Plaintiff misrepresents the contents of Mr. Coker's Rebuttal Report, [DE 290-15]. Neither the citations Plaintiff provides in Paragraph 6 nor a search of the entire document use "objectively unreasonable" to describe any of the defendants' conduct. The only competent evidence in this case demonstrates that it would not be obvious to recognize unmasked expiration dates. [DE 325] at ¶¶8,14.[13]

7. Paragraph 7 is not supported by competent summary judgment evidence because Mr. Coker's reports are not declared true under penalty of perjury.

8. Paragraph 8 is an embellishment. Plaintiff—despite contenting GHM did not submit a Statement of Material Facts—cites to GHM's statement of facts as Plaintiff's only support. GHM's Statement of Material Facts does not state that Plaintiff "took the trouble and his time to ensure" his receipt was safeguarded. See [DE 325] at p.10, ¶19.

9. Paragraph 9 is a misrepresentation and embellishment of GHM's answers to interrogatories. GHM's answer does not state that "GHM has known for years that FACTA required it to ensure that its PM system masks credit and debit card expiration dates." Instead, it

---

[12] Although Plaintiff skirts his obligation to rebut GHM's Statement of Material Facts and all of GHM's facts are deemed admitted, GHM in an abundance of caution provides this time-consuming rebuttal to Plaintiff's procedurally improper submission of facts that should have been responsive to GHM's separately numbered paragraphs. GHM's incorporated rebuttal to Plaintiff's Statement of Facts is approximately 6 pages, with the body of the Reply at 10 pages, in compliance with LR7.1.

[13] Importantly, Plaintiff characterizes Mr. Ade's testimony as "self-serving." [DE 336] at 5. However, Plaintiff has deposed Mr. Ade twice. The second time was pursuant to court order over defendants' objections, ultimately permitting Plaintiff to cross examine Mr. Ade on the contents of his declaration in a second deposition. Thus, Plaintiff has had full opportunity to vet Mr. Ade's testimony and declarations.

states that "GHM had industry knowledge of FACTA through its LLC manger Rich Ade. . . ." [DE 251-06] at p.8 ¶17.

10. Paragraph 10 is a misrepresentation that is irrelevant. Rich Ade is an officer of OPL, but he is not an officer of GHM, he is the LLC manager. [DE 251-06] at p.8 ¶17. GHM does not dispute that it had knowledge of FACTA.

11. Paragraph 11 is a misrepresentation of Mr. Ade's testimony. Mr. Ade did not testify that GHM used OPL's name instead of its own to gain economic advantage. Mr. Ade was specifically testifying about Cliff Lazenby, who undisputedly works for PCFSI, about his and PCFSI employees' improper use of the OPL's name. [DE 153-3] Ade Transcript, 87:25-89:12. In the same transcript Plaintiff cites, Mr. Ade specifically indicated that Mr. Lazenby also uses the proper name of "Ocean Properties Hotels and Resorts & Affiliates." Id. Plaintiff's subsequent citation likewise does not support the proposition that GHM used OPL's name. [DE 153-3] Ade Transcript, 92:2-19. That passage only refers to Mr. Lazenby and PCFSI's, controller, Bob Garcia, who (like Mr. Lazenby), does not work for GHM.

13. Paragraph 13 is a misrepresentation of Mr. Lazenby's testimony. Plaintiff is mistaken that "Defendants installed an update to the PM system . . . ." First, none of the defendants in this case installed Oracle's defective upgrade. Plaintiff's citations [DE 251-5] at 71:6-73:22; 77:1-80:20] do not say any of the defendants in this case installed an update, or even that they chose to have someone else install an update. Instead, Mr. Lazenby testified that he and Dan Rich made the decision to go to Oracle to ask Oracle to address this deficiency. [DE 251-5] at 78:4-9. Further, Mr. Lazenby's testimony in other portions of his transcript is far clearer that Mr. Lazenby provided Oracle with access to the Jupiter Beach Resort & Spa server, at which point Oracle installed the upgrade. [DE 251-5] at 119:13-23; 122:15-17. Plaintiff's footnote with paragraph 13 is equally misleading. GHM did not intend to or purposely print folios with violative information. To the contrary, the Jupiter Beach Resort and even Oracle sales personnel themselves were unaware that the OPERA upgrade unmasked expiration dates until OPL was sued. GHM and the other defendants learned, only after being sued, that Oracle programmed software to print expiration dates when Oracle engineering revealed later that it was "intended functionality." In fact, defendants only learned of the "intended functionality" language in Oracle's emails once Oracle produced documents in this case in response to Plaintiff's subpoena.

14. Paragraph 14 is a misrepresentation of the emails produced in this case and is

7

irrelevant to GHM's Motion for Summary Judgment. OPL did not describe Cliff Lazenby as an IT director. Cliff Lazenby is solely a PCFSI employee who described himself as an OPL IT Director. See Lazenby Deposition, [DE 298-09] at 15:9. 261:19-262:24. Mr. Lazenby admitted he was in error in doing so, and his W-2's show he was at all times only a PCFSI employee.

16. Paragraph 16 is a misrepresentation because GHM, Fee, and TRS were not previously sued for a FACTA violation. Plaintiff's citation is to GHM's Motion for Summary Judgment, at footnote 6, which undisputedly does not state that anyone was previously sued. [DE 325] at p.3, n.6. It is also incorrect that any of the defendants fixed the defective upgrade that caused the unmasking—PCFSI's employees went back to Oracle to resolve this issue.

17. Paragraph 17 is a misrepresentation. No one (not OPL, GHM, TRS, Fee, PCFSI, or any of the hotel employees or the hotel manager) knew folios were printed with expiration dates. [DE 130-5] at ¶8, 11; [DE 193] at ¶67.

18. Paragraph 18 is a misrepresentation. **Plaintiff misstates the contents of emails, which do not in any way suggest sensitive information would have printed in a folio or that there were "problems" printing.** First, Plaintiff cites to an email that is not in the record and that this Court cannot review about a splash screen indicating that computers will have to be associated with printers after the upgrade. Nothing in that email related to content of any form or report printed from Opera. Mr. Lazenby's transcript demonstrates **that, in reality, an Oracle employee was providing direction to associate a printer to a terminal.** [DE 290-8] at 248:16-19. Mr. Lazenby specifically testified when challenged there was no mention of "error." [DE 290-8] at 247:2-5. Thus, Plaintiff's insinuation that there was "receipt-printing problems" is wholly unfounded. Second, Plaintiff miscites an exhibit. The exhibit is [DE 251-09], not [DE 254-01] (there is no [DE 254-1] in this case). Even a cursory review of the screenshot (at the proper cite) in the email shows that it relates in no way to printing. It is a perfectly ordinary business need for a computer system to capture and display a credit card expiration date to an employee so that an employee can choose which card to charge. It is clear that the email at [DE 251-09] does not relate to printing a folio in any way, nor is the email about improper information displaying. Even clearer, the splash screen related to a guest's pre-authorization amount at "check in," when no guest would ever receive a checkout folio.

19. Paragraph 19 is a misrepresentation. Again, no one was aware that a folio printed with an unmasked expiration date. [DE 130-5] at ¶8, 11; [DE 193] at ¶67. Plaintiff cannot

8

represent what a hotel employee could have seen without even attempting to depose a front desk employee, a hotel manager, or anyone at Fee or TRS.

20. Paragraph 20 is a misrepresentation. Audit pack folios were not presented to guests—they were after-the-fact corrections which did not constitute a copy of what a guest would have seen. [DE 290-13] at 157.[14] No deposition transcript stands for the proposition that a hotel manager saw copies of, or had any knowledge of any audit pack folios or their content.

21. Paragraph 21 is a misrepresentation and draws a conclusion based on a size of receipts delivered at other point-of-sale locations in the Jupiter Beach Resort. Plaintiff cites GHM's Motion, [DE 325] at 20, for the proposition that Jupiter properly masked expiration dates on smaller receipts and then draws the conclusion that Opera's printout would have been more conspicuous. GHM's Motion does not state that other point-of-sale locations printed smaller receipts.[15]

22. Paragraph 22 is a mischaracterization and oversimplification of Jupiter's expensive, sophisticated, time-consuming tokenization project that eliminates security risks both in storage and transmission of sensitive electronic data all aimed with the paramount goal of protecting its guests against identity theft, which by itself is evidence that the Jupiter Beach Resort did not act with reckless disregard of FACTA or any law.. [DE 298-05] at p.17.

23. Paragraph 23 is a mischaracterization of the relationship between Oracle and its customers. Oracle markets its Oracle Hospitality Opera Property Premium Cloud Service as the

---

[14] It is not a FACTA violation to maintain internal documents that were never given to a guest and that with sensitive information. Moreover, FACTA does not prohibit exposing expiration dates on internet receipts, mailed receipts, or receipts displayed on a screen. Smith v. Zazzle.com, Inc., 589 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) ("a merchant's internet receipt that is automatically displayed on a computer screen is not subject to FACTA's truncation requirement"); Kivo v. Blumberg Exelsior, Inc., 982 F. Supp. 2d 217, 219 (E.D.N.Y. 2013) ("This Court finds that the Defendant's proposed interpretation of Section 1681c(g)—interpreting the Section as applying only to receipts that result from in-person transactions—is objectively reasonable and thus grants the Defendant's motion to dismiss."); Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 798 (7th Cir. 2010) (affirming district court that held at the motion to dismiss stage that an electronic receipt was not a "receipt" within the meaning of FACTA); Turner v. Ticket Animal, LLC, 08-61038-CIV, 2009 WL 1035241, at *3 (S.D. Fla. 2009) (dismissing complaint and holding that "print" under FACTA can only be to imprint onto paper or some other tangible surface).

[15] In the Opposition, [DE 336] at 4, Plaintiff cites GHM's Motion at page 15 for the proposition that other POS locations print smaller receipts. It is worth noting that nowhere on Motion [DE325], at p.15, does GHM represent receipts distinct from the folios are smaller. It is simply not a fact that is supported. Considering that it now forms the basis of Plaintiff's "conspicuousness" argument, GHM is obligated to note that the fact has no evidentiary support.

"most sophisticated and comprehensive" system that "provides all the tools" from handling reservations to checking guests in and out and "performing accounting and billing functions." [DE 298-09] at 278:4-16. Moreover, Oracle represents that "system security is always a priority" and that many other technology vendors "do not offer compliance with payment card industry standards." [DE 298-09] at 279:19-280:2. Oracle represents that they save their customers time and money and help "protect the integrity of your reputation and your brand." Id. The Jupiter Beach Resort relied on Oracle to provide solutions for printing functions and to troubleshoot the content of the forms in the Opera system. [DE 298-09] 281:14-25. Oracle's own internal emails recognized that Oracle's sales director had, in the past, known that unmasking expiration dates was a problem and that Oracle personnel had a "massive push" to get their clients off of prior versions that could not comply with federal law. [DE 226-02] at p.4. Thus, there is zero support from Plaintiff's citation that Oracle's relationship with its customers is limited.

24. Paragraph 24 is a misrepresentation of Cliff Lazenby's testimony. Cliff Lazenby testified that they did not rely on Oracle's predecessor, Micros for PCI compliance, and that once Oracle acquired Micros, they relied on Oracle for its expertise. [DE 290-08] at 295:4-16. Note that Plaintiff's subsequent citation, to 305:5-9 is not a page with testimony. Worse, Cliff Lazenby did not "admit to the unreliability of Oracle . . . ." To the contrary, Mr. Lazenby stated, "I wouldn't say that, no. Concerns with how they would provide customer support, vendor support, but not about the system. The system was the Cadillac of PMS systems out there." [DE 290-8] at 83:4-13.

25. Paragraph 25 is another misrepresentation designed to mislead this Court from the true nature of Mr. Ade's testimony. Mr. Ade expressly stated, "No," when asked if "identifying the expiration date on the receipts was an easy -- easy find, as well?" [DE 290-06] at 131:2-5. Mr. Ade then explained that a person would not see the expiration date of a credit card on a folio if the person was looking at it because the front-desk clerks are focusing on checking guests out and in, not focusing on whether the date is exposed or X's are there. [DE 290-06] at 131:9-12. His answer was not a concession that an expiration date was easy to identity, and he only stated that it was the same size font as everything else on the folio. [DE 290-06] at 131:18-19.

26. Paragraph 26 is Plaintiff's counsel's description of the folio, not a fact supported by the record under penalty of perjury. The documents are not titled "receipt," they are titled

"INFORMATION INVOICE." If anything, when looking for sensitive information, the expiration date does not appear in plain sight, because a viewer's eyes are drawn to the XXXXXXXXXXXX6543 that precedes the expiration date.

### Response to Plaintiff's Non-Numbered Factual Statements

A.  Plaintiff incorrectly states "hotel staff could regularly see on the face of the receipts that they disclosed card expiration dates." [DE 336] at 1. There is no citation to any record evidence that supports hotel staff could regularly see on the face of receipts that they disclosed expiration dates. This is flatly contradicted by GHM's Statement of Material Facts and unsupported because Plaintiff did not even request to depose a Resort employee or manager.

B.  Plaintiff incorrectly states GHM's co-defendants, OPL and Oprock, point the finger at GHM because it is a knowing violation. [DE 336] at 1. Not true. No party has ever indicated that the unmasking was done by a defendant intentionally or with reckless disregard.

C.  Plaintiff incorrectly states that "even GHM's expert admits fraud stemming from paper receipts continues to occur today." [DE 336] at p.3. Plaintiff's source for this statement is his own statement of facts (citing [DE 336-1] at ¶6), which do not support Plaintiff's statement. To the contrary, Mr. Laykin testified that the risks of identity theft Plaintiff identifies are "infinitesimally small." [DE 290-10] at 92, ln. 8.

D.  Plaintiff incorrectly states that "Defendants' own witness admitted to the unreliability of Oracle." [DE 336] at 4. Mr. Lazenby is not Defendants' witness. He is a non-party's employee who provides services to the Jupiter Beach Resort. Most importantly, as previously addressed in Paragraph 24, above, Mr. Lazenby did not admit to the unreliability of Oracle.

E.  Plaintiff incorrectly states that GHM "let is [sic] system continue to print expiration dates on customer transaction receipts for over three months . . . ." [DE 336] at 3. It is undisputed that no defendants or non-party PCFSI had knowledge that expiration dates were printing. [DE 325] at p.8, ¶¶8, 10.

### IV.  Plaintiff's Misapplication of Legal Principles
**A. No Defendant had Knowledge that Opera Printed Would have Print an Expiration Date.**

Shockingly, Plaintiff argues that Defendants had knowledge that they were printing folios with expiration dates, constituting a "knowing" violation under section 1681n. [DE 336] at 6. Plaintiff ignores the undisputed facts in the record and misunderstands what constitutes a

11

"knowing" violation entirely.[16]  Here, there can never be a knowing violation because the record is undisputed that no defendants, hotel employees, general manager, or PCFSI knew an expiration date was printing.[17]  Indeed, Plaintiff's argument that someone at Jupiter had knowledge is rank speculation unsupported by any evidence in this case.  [DE 336] at 6.  Plaintiff never deposed or even asked to depose a front-desk employee, a manager, or anyone else at the hotel.  Instead, Plaintiff uses countless misrepresentations to gin up an argument of knowledge with no legitimate basis in the record.  Plaintiff improperly argues that Defendants knew that folios were being printed with unmasked expiration dates and delivered to guests.  [DE 336] at 6.  But, even if there was knowledge and it was not immediately cured, Collins stands for the proposition that this would be "human error" and only mere negligence.

Plaintiff tries to trump up "knowledge" with a "should have known" standard by stating that front desk employees sent emails about printing, or that based on a speculative estimate of

---

[16] It must be noted that Plaintiff's position now is entirely inconsistent with their allegations of willfulness, all of which are false.  Aside from OPL's suit in 2008, the only allegations of willfulness in the second amended complaint have been conclusively disproved by GHM (going far beyond its obligation at summary judgment).   The only *factual* allegations that defendants acted willfully under §1681 are that "Defendants once again chose to . . . print receipts displaying expiration dates," [DE 47] at ¶40, "It is Defendants' policy and procedure to issue an electronically printed receipt to individuals at the point of sale – i.e., immediately upon receipt of credit card payment," [DE 47] at ¶46, that "Defendants knowingly . . . include the expiration date," [DE 47] at ¶47, that defendants had years to comply (implying Defendants had not been in compliance for years), [DE 47] at ¶50.  **None of these allegations are true.**  No defendant knew that Oracle's software caused unmasking, the Jupiter Beach Resort does not have a policy to issue a receipt (final settled folios are only issued at the request of the guest and are very rarely issued), and the Jupiter Beach Resort was in full truncation compliance until Oracle installed an upgrade that unknowingly unmasked expiration dates.

[17] Admittedly, the cases are rare that interpret only the "knowing" component of willfulness because parties usually litigate whether printing of an expiration date was done so recklessly.  Nonetheless, the courts in this jurisdiction appear to apply an actual knowledge requirement for the "knowing" component of a willful violation under FACTA.  See Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, L.L.C., 592 Fed. Appx. 876, 883 (11th Cir. 2015) ("And even the allegations related to the Car Rental Companies' knowledge of FACTA's requirements, read in the context of the other allegations of the complaint, assert only that the Car Rental Companies had *notice* of FACTA's requirements, not that they had subjective knowledge of FACTA's requirements. *But notice does not necessarily equate with actual knowledge.*" (emphasis added)); Torongo v. Roy, 176 F. Supp. 3d 1320, 1325 (S.D. Fla. 2016) (citing Crupar–Weinmann v. Paris Baguette America, Inc., No. 13–cv–7013, 2014 WL 2990110, at *4 (S.D.N.Y. June 30, 2014) ("[T]o survive defendant's motion to dismiss, plaintiff's Complaint must plead sufficient facts to support a plausible inference that defendant knew that its conduct was violating [FACTA], and not simply that defendant knew about the existence of the [FACTA] provision at issue.")).

how many guests could have possibly received a folio, someone must have seen one.[18] First, there is no evidence to support that the way audit pack folios printed (to include expiration dates for internal purposes and never given to customers) is the way that customer-facing folios print.[19]

Second, a simple review by this Court of the emails that Plaintiff discusses demonstrates the embellishment and shows that no reasonable person would have interpreted an expiration date displaying in a computer system's payment processing application as raising a "red flag" that sensitive credit card information would print on a receipt.[20] [DE 251-09]. And an email about instructions from Oracle on how to tie a computer to a printer has absolutely nothing to do with the contents in the folio printout, which was testified to by both Lazenby and Rich.[21]

## V.  **No Defendants Acted in Reckless Disregard of the Law**
### A.  *Keller* **is Directly on Point**

When Plaintiff's misrepresentations about the facts of this case are stripped away, Keller is directly on point. Plaintiff wholly ignores the standard for recklessness in FACTA cases by arguing that a reading of the FACTA statute must be objectively reasonable.[22] First, recklessness under FACTA in the Eleventh Circuit (applying Supreme Court precedent) requires recognition of "an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Keller, 464 Fed.Appx. at 824 (quoting Safeco Ins. Co. of Am., 551 U.S. at 68). Plaintiff asks this Court to ignore the Eleventh Circuit (and the Supreme Court) while Plaintiff improperly tries to couch "recklessness" as a "more lenient test." [DE 336] at 9. Plaintiff even

---

[18] The actual number of guests and which guests could have possibly received a folio is not possible to verify because (as this Court rightly recognized in denying class certification), the Opera system does not store this information.  GHM's expert provided an estimate based on an approximate amount of guests that might come to the front desk to checkout.  Often, those guests would not ever even request a folio because they still would have in their possession the folio slid under the door which did not unmask expiration dates.

[19] Other than Plaintiff's folio (and maybe 2 if Chris Legg's folios are considered) there is no evidence that any other folio handed to a guest was printed with an unmasked expiration date, and even employing speculation, the number would have been very small. At best, this could be simple negligence, but even that is far from being established by the record evidence here.

[20] One would expect a computer system to show the credit card expiration date so that the user who is processing the payment can chose card valid at the time.

[21] Indeed, the Oracle technical personnel were responsible for setting the system at the time the upgrade was implemented, Lazenby [DE 298-09] at 246:2-4, which is further confirmed by the fact that Oracle was giving directions via email on how to designate which printer the computer printed to at the time of the upgrade, [DE 298-09] at 273:11-13.  Cliff Lazenby's interpretation of the email is that a printer task needed to be set up, which did not involve the content of the printout. [DE 298-09] at 273:14-274:5.

[22] As will be seen below, objective unreasonableness is not an analysis applicable in this case.

13

goes so far as to state that the Eleventh Circuit misstates the test for recklessness. [DE 336] at 10. However, it is hard for the Eleventh Circuit to "misstate" the Supreme Court when the Eleventh Circuit quoted the high court's exact language. In the absence of actual knowledge, recklessness under FACTA requires harm "so obvious that it should be known."

Plaintiff essentially argues that he need not make any showing as to the circumstances of this case because Congress decided that masking expiration dates was important. Plaintiff's minimization—to the point of arguing a strict liability standard for statutory damages—is understandable considering Plaintiff failed to conduct any merits discovery as to any employee at the Jupiter Beach Resort.

### B. Plaintiff Misrepresents *Collins*.

Plaintiff also misrepresents to this Court GHM's citation to Collins v. Experian Info. Sols., Inc., 775 F.3d 1330, 1336 (11th Cir. 2015). See [DE 336] at 14 ("GHM also cites Collins . . . which *reversed* the grant of summary judgment against plaintiff." (emphasis Plaintiff's)). GHM's citation to Collins was correct. [DE 325] at 14 n.16. The Eleventh Circuit affirmed summary judgment for defendant as to a second claim, for willful damages under 15 U.S.C. §1681n. Collins, 775 F.3d at 1336 ("Therefore, we ***affirm*** the district court's grant of summary judgment . . . ."). Collins, and the plethora of cases cited in GHM's Motion support that, where (as here) Plaintiff has no evidence that printing and delivering a receipt with sensitive information was anything more than a mistake, human error, or mere negligence, summary judgment for defendants is proper.

Collins is especially significant here because Eleventh Circuit agreed Experian's behavior merely negligent despite two incidents where Experian employees "took no steps other than contacting Equable." In Collins, which was decided under the under the same statute for statutory damages identical to the one at issue here, the Court (as it did in Keller) quoted Safeco for the proposition that a company does not act with reckless disregard "unless the action . . . shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." 775 F.3d at 1336 (quoting Safeco, 551 U.S. at 69). Here, being in complete compliance before the Oracle upgrade and being entirely unaware that expiration dates were exposed when the credit card number was properly truncated is not reckless in any way. It is unknowing, accidental, and at very, very worst, merely careless or negligent like in Collins, which requires summary judgment.

### C. Plaintiff's "objective unreasonable" analysis is misplaced.

As a final point, Plaintiff's incorrectly argues that this court must conduct an analysis of whether any of the defendants' conduct was "objectively unreasonable." This argument is flawed, first, because the cases Plaintiff relies upon concern facts where the party printing and delivering a receipt either (1) knew a receipt was printing with possibly sensitive information but thought the statute permitted the information to be printed or (2) after the fact, the party argues that, regardless of their prior knowledge, it would have been reasonable to believe that FACTA did not prohibit printing such information. The question in those cases becomes whether the reading is objectively reasonable, and the subjective belief of the defendant is inapposite. Here, this analysis does not apply because no defendant argues that the printing, if all true, was not prohibited by the act.

The "objectively unreasonable" analysis manifests when a party argues that they thought the information that printing was compliant, such as membership number. Hammer v. Sam's E., Inc., 901 F. Supp. 2d 1133, 1138 (W.D. Mo. 2012), aff'd, 754 F.3d 492 (8th Cir. 2014). Or, the "objectively unreasonable" analysis manifests when an entity reads the act as not requiring truncation on mailed receipts. Kivo v. Blumberg Exelsior, Inc., 982 F. Supp. 2d 217, 225 (E.D.N.Y. 2013).[23] Here, no defendant bases their summary judgment motion on the position that a guest customer should be permitted to be presented with a folio containing an expiration date, which would require this Court to analyze whether a defendant's interpretation of the statute is objectively unreasonable.

Defendants could have argued that had they known (which they did not), it would have been objectively reasonable to read the statue as permitting printing on folios because they are not receipts. Instead, the easier argument prevails because it is wholly undisputed that no one ever had any knowledge that expiration dates were unmasked and once made aware, the unmasking was remedied without delay. There is no genuine issue of fact—the defendants never acted knowingly or recklessly.

### D. In the end, Plaintiff at Best (which is disputed) Could Only Establishes Negligence.

Plaintiff's only argument here (which is different than what Plaintiff alleged in their

---

[23] Plaintiff is also correct that "only a reading that is 'objectively unreasonable' can be deemed a 'willful' violation." See Van Straaten v. Shell Oil Products Co. LLC, 678 F.3d 486, 489 (7th Cir. 2012). That principal has no application here because Defendants do not contend they misread the statute for some excusable reason.

15

complaint as a basis for willfulness) is that someone at the hotel should have discovered the FACTA violation sooner. The very concept establishes a lack the intent required for a finding of recklessness. Plaintiff repeatedly harps on Serota v. Ocean Properties, Ltd., No. 8-cv-80624 (S.D. Fla. filed June 10, 2008), as a basis for knowledge of FACTA does not show that GHM or any other defendants acted knowingly or recklessly. First, it is undisputed that the Jupiter Beach Resort and Spa or the defendants in this case (GHM Jupiter, LLC, OpRock Fee, LLC, and OpRock TRS, LLC) were not parties to that suit. Second, GHM never contends it was unaware of FACTA.[24]

In addition to the plainly obvious application of Keller and Collins, Courts applying recklessness standards in other causes of action consistently hold that the stringent recklessness standard is far above negligence and requires scienter, resulting in holdings that a failure to discover a dangerous condition may be negligent, but are not reckless. McLean v. Alexander, 599 F.2d 1190, 1202 (3d Cir. 1979) (in securities regulation, "may have been negligent in not discovering management's fraud, but it did not act with reckless disregard for the truth"); see also In re Zagg, Inc. Sec. Litig., 797 F.3d 1194, 1201 (10th Cir. 2015) ("Allegations of conduct that amount to negligence or even gross negligence will not suffice. Rather, it must be "something akin to conscious disregard." (citations omitted)).

## VI. Plaintiff Lacks Article III Standing.

Plaintiff argues that GHM presents no basis for this court to "reconsider" its prior decision. [DE 336] at pp. 15-20. Plaintiff's argument is flawed in two respects. First, this Court has the inherent authority to reconsider any nonfinal ruling, such as a ruling addressing Article III standing.[25] Second, GHM's argument is that a factual challenge to standing (necessarily happening here for the first time and not at a motion to dismiss) is proper because Plaintiff must

---

[24] Even if it the Jupiter Beach Resort was not aware of FACTA's truncation requirements, using a legally distinct entity with very minor overlapping ownership (OPL and the Jupiter Beach Resort have overlapping ownership of approximately 7%) would hardly form the basis to impute knowledge on a company. And regardless, ignorance of the law's existence (which GHM does not assert) is not a defense.

[25] "[U]nder Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment." Mitchell v. JCG Indus., 842 F. Supp. 2d 1080, 1082 (N.D. Ill. 2012) (citing Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge")).

16

meet his evidentiary burden to prove Article III standing.[26] Plaintiff has offered no competent, substantial evidence that rebuts GHM's evidence to show that Plaintiff did not discover the violation immediately or that someone else saw the non-compliant receipt. GHM recognizes that, after GHM filed its Motion for Summary Judgment, this Court denied class certification and held that its prior cases are not reconcilable with Second and Seventh Circuit cases. [DE 330] at 10-11. Thus, considering that lack of Article III standing has been raised to this Court in this case countless times and that a challenge to Article III standing can never be waived, GHM relies on its challenge to Article III standing in its Motion for Summary Judgment and its Opposition to Class Certification and requests this Court reconsider.[27]

Respectfully submitted this 10th day of October 2017.

                                          SHUTTS & BOWEN, LLP
                                        200 South Biscayne Boulevard
                                        Suite 4100
                                        Miami, Florida 33131
                                        Telephone: 305-347-7305
                                        Facsimile: 305-381-9982
                                        *Attorneys for Ocean Properties, Ltd. and GHM Jupiter, LLC*

                                  By: __s/ Jake Monk, Esq.__
                                          Frank A. Zacherl
                                          Florida Bar No. 868094
                                          fzacherl@shutts.com
                                          Jake Monk
                                          Florida Bar No. 100321
                                          jmonk@shutts.com

---

[26] U.S. Postal Serv. v. Am. Postal Workers Union, Miami Area Local, 07-21682-CIV, 2009 WL 901502, at *3 (S.D. Fla. Mar. 31, 2009) ("In contrast to a facial attack, when a factual attack is brought 'the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56' by examining and weighing evidence related to the court's subject matter jurisdiction—it's authority to hear the case—and giving no presumptiveness of truth to the plaintiff's allegations." (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1528-59 (11th Cir. 1990)).

[27] GHM only adds here that since GHM filed its Motion for Summary Judgment two weeks ago, a recent Southern District of Florida case dismissed a FACTA complaint, holding a Plaintiff failed to allege an injury sufficient to confer Article III standing. See Gesten v. Burger King, No. 17-22541-Civ-Scola (S.D. Fla. Sept. 27, 2017) (dismissing FACTA complaint and holding Plaintiff failed to allege injury in fact sufficient to confer standing). This Court has considered and relied upon the same authorities as the Court did in Burger King.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Jake Monk, Esq.
*Counsel for Ocean Properties and GHM*

## SERVICE LIST

Keith Keogh
Michael R. Karnuth
Keogh Law, LTD
55 W. Monroe Street
Suite 3393
Chicago, IL 60603
312-726-1092
Keith@KeoghLaw.com
MKarnuth@KeoghLaw.com

Bret Leon Lusskin, Jr.,
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Suite 302
Aventura, FL 33180
954-454-5841
blusskin@lusskinlaw.com

Scott David Owens
Patrick Crotty
Sean Holas
Scott D. Owens, P.A.
3800 S. Ocean Drive
Suite 235
Hollywood, FL 33019
954-589-0588
scott@scottdowens.com
patrick@scottdowens.com
sean@scottdowens.com

Stuart I. Grossman, P.A.
Jason K. Kellogg, P.A.
Victoria J. Wilson, Esq.
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
Telephone:  (305) 403-8788
Facsimile:  (305) 403-8789
sig@lklsg.com
jk@lklsg.com
vjw@lklsg.com

MIADOCS 15460648 5