**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 9:16-cv-80502-Bloom/Valle

| | |
|---|---|
| JUSTIN BOUTON, individually and, ) <br> on behalf of others similarly situated, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OCEAN PROPERTIES, LTD., ) <br> a foreign corporation, ) <br> OPROCK JUPITER FEE, LLC, ) <br> a foreign limited liability company, ) <br> OPROCK JUPITER TRS, LLC, ) <br> a foreign limited liability company, and ) <br> GHM JUPITER, LLC, ) <br> a foreign limited liability company. ) <br> ) <br>     Defendants. ) <br> / | **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

**OCEAN PROPERTIES, LTD.'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

In a last-ditch effort to tie Ocean Properties, Ltd. (a legally distinct entity) to the Jupiter Beach Resort & Spa, Plaintiff tells a long, drawn-out, procedurally improper story in violation of Local Rule 56.1(a)—while failing to respond to OPL's statement of facts—about how the Walsh family (not OPL), owns multiple businesses, limited family trusts own multiple properties, and how Rockwood Capital's desire to work with the Walsh family in real-estate investment, resulted in a clause in management contracts related to working with the Walshes, not OPL. None of these facts relate to possible liability of OPL. This Court expressly stated that it does not "disregard the distinct legal identities at issue in this case" and that "Plaintiff will bear the eventual burden to establish which specific Defendant, if any, is liable for the FACTA violation alleged." [DE 116] at 13.

Now, even in response to OPL's Motion for Summary Judgment, after depositions of OPL's corporate representative and OPL's President, the only evidence Plaintiff offers is that OPL is listed in a shared marketing website run by PCFSI and based on unsworn printouts of inadmissible news articles not written by OPL (mostly of regarding other resorts), and the same tired argument that OPL has overlapping officers with the Resort. Overlapping officers and directors at legally distinct entity has never been sufficient in this jurisdiction, or anywhere, to pierce the corporate veil or support any theory of liability asserted in the Second Amended Complaint. This specious case can continue no longer because Plaintiff can produce no evidence that the legally distinct entity, OPL, was involved in the purported FACTA violation in any way.

It is undisputed that OPL owns one hotel in Delray Beach, Florida and has a handful of employees.[1] OPL has no direct or indirect ownership in the Jupiter Beach Resort ("Resort"). The Court has already made this finding in a prior Order [DE 235] where the Court observed that it is a Walsh entity, not OPL, that owns an approximately 7% interest in the entity that ultimately

---

[1] OPL's few employees are dedicated to the operation of the Delray Beach Marriott and have never been involved in the operation of the Resort on any level. Further they have no capability to operate the Ocean Properties and Affiliates websites, nor provide any IT or other services to the Resort. [DE193] at ¶31. Plaintiff never took any of these employees' depositions to contradict Mike Walsh's and Rich Ade's unequivocal testimony on these subjects. OPL employees have nothing to do with the Jupiter Beach Resort or its operations or the operations of any hotel other than the Delray Beach Marriott. OPL's only hotel, the Delray Beach Marriott (and its previously owned hotel, the Holiday Inn Lakeside) never printed a folio with and unmasked expiration date.

owns the Resort. Therefore, neither OPL nor the Walshes can legally control the entities that own the Resort—only Rockwood entities can, and it is undisputed that no Rockwood entity operated the Resort on a daily basis. The only entity that operated the Resort and whose employee handed Bouton the folio that is the basis of this action is GHM.

The Plaintiff's claim that OPL owns and controls the Resort and many other entities relevant to this case is wholly false.

### I.  OPL's Material Facts are Deemed Admitted Because Plaintiff Failed to Respond to OPL's Statement of Material Facts.

Plaintiff has now dodged his procedural obligation under Local Rule 56.1(a) as to all defendants, failing to properly respond to all Statements of Facts in all motions for summary judgment. Rule 56(a) provides: "Statements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant . . ." OPL's Motion contains a procedurally proper "STATEMENT OF MATERIAL FACTS" with separately numbered paragraphs, containing sentences, each with citations to competent summary judgment evidence (depositions or declarations made under penalty of perjury). Plaintiff's failure to controvert OPL's fact section requires that all facts set forth in OPL's motion are deemed admitted.[2] This rule protects litigants and this Court.[3]

In an abundance of caution, OPL attempts to rebut Plaintiff's most egregious factual representations:

### II.  OPL's Rebuttal to Plaintiff's Fact Statement[4]

---

[2] For brevity, OPL joins the citations in GHM's Reply [DE 348].

[3] Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) ("[O]ur sister courts have repeatedly stressed the vital function of rules such as Local Rule 56.1, reinforcing stern admonitions with rather colorful imagery. See, e.g., Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) ("Given the vital purpose that such rules serve, litigants ignore them at their peril."); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (internal quotation marks omitted). We hold the rule in similarly high esteem.").

[4] OPL omits any discussion of Plaintiff's misstatements about computer screenshots, [DE 337] at 8, or any other misrepresented evidence related to the complete lack of knowledge or recklessness, which would be necessary to support a claim for statutory damages under FACTA. OPL joined GHM's Motion for Summary Judgement and joins GHM's Reply in Support of Summary Judgment where Plaintiff's mischaracterizations of evidence related to willfulness are fully rebutted.

2

A. Plaintiff improperly contends that OPL "admits that it operated the Jupiter Beach Resort" and explicitly stated it would protect credit card information. [DE 337] at 1. Plaintiff's cite [DE 47-12] is a website titled, "Ocean Properties Hotels and Resorts & Affiliates." First, the website [DE 47-12] does not even reference the Jupiter Beach Resort. Second, and far more importantly, OPL assigned the rights to the OPAL trademark to PCFSI, the entity that controls the website. Assignment, [DE 193-3]. OPL did not admit it operated the Resort.

B. Plaintiff cites to another website, [DE 47-4]. When Plaintiff had the opportunity to confront OPL's President, Mike Walsh, regarding the contents of the website, Mr. Walsh stated that he never reviewed these websites and, in fact, the website was factually inaccurate. Specifically, Plaintiff's counsel examined Mr. Walsh on the "about us" page that forms the basis of Plaintiff's facts, and Mr. Walsh testified that the website was factually inaccurate, including the facts about the year OPL was formed, who started OPL, and that the website "was not even close to being right" and that he had "never seen it." [DE 290-13] at 23:24-25-:23.

C. Plaintiff incorrectly states that OPL's owners own 1000 Market Street, Portsmouth, NH and 1001 E. Atlantic Ave., Delray Beach, FL. [DE 337] at 3. Plaintiff's citations actually demonstrate that those buildings are owned by Walsh limited family partnerships. [DE 290-06] at 34:11-35:6. Mike Walsh specifically explained that as part of these Walsh family limited trusts, he was not a beneficiary, and that they had a separate trustee, which limited control. [DE 290-13] at 111:21-113:13.

D. Plaintiff mistakenly states that OPL registered several websites, including oplhotels.com and oceanprop.com. [DE 337] at 4. Rich Ade's testimony very clearly states that PCFSI employees registered domains and that PCFSI maintained the content of the websites. [DE 290-06] at 109:22-110:7, 111:13-17.

E. Plaintiff incorrectly states that "OPL provides the Jupiter Beach Resort with other resources to operate the hotel, including telephone and emails for those supporting their credit card processing." [DE 337] at 5, n.5. Nothing in this statement is true. OPL does not provide the Jupiter Beach Resort resources to operate the hotel, phones, or emails, and PCFSI does not operate the resort. Plaintiff's citations to Rich Ade's transcript state that a PCFSI employee (Matt Tobin) is the registrant for Opalcollection.com; [DE 290-06] at 24:15-24. Plaintiff's next citation reveals that PCFSI maintains products and services. [DE 290-06] at 109:22-24. Plaintiff's next citation to Rich Ade's transcript states that "It's talking about Portsmouth

3

Corporate Financial Services . . . That's what Portsmouth Corporate Financial Services does." [DE 290-06] at 146:7-15.  Plaintiff's final citation states "That's correct. Referring to Portsmouth Corporate Financial Services and our Florida company as well.  Hotel Providers."  [DE 290-06] at 147:12-14.

      F.  Plaintiff incorrectly states that that OPL featured Jupiter on OPL's brochures.  [DE 337] at 5.  Again, Plaintiff's citations are a misleading.  Plaintiff's first citation, [DE 290-06] at 100:19-102:05, reveals that Mr. Ade repeatedly corrected Plaintiff's counsel when Plaintiff's counsel stated that the brochure said Ocean Properties, Ltd.  Instead, Mr. Ade repeated, "It says Ocean Properties, Hotels and Resorts & Affiliates."  [DE 290-06] at 101:7-8.  And when Plaintiff's counsel questioned further, Mr. Ade stated that it was a "joint marketing program." [DE 290-06] at 101:15-16.  And Plaintiff creates a misimpression that OPL somehow controls the OPAL collection, which is the subject of the second brochure.  [DE 290-06] at 153:6-8.  It is undisputed that OPL had nothing to do with the selection of the hotels that make up the OPAL collection. OPAL was a shared marketing concept for non-branded hotels, created by PCFSI; PCFSI decided the members of the OPAL collection. [DE 193] at ¶14. OPL did not create and has absolutely no involvement in the operation of the OPAL Collection. [DE 193] at ¶18.  Mr. Walsh testified that he was not familiar with the OPAL brochures.  [DE 290-13] at 21:10-24.  Mr. Walsh stated that he did not agree that OPL markets any the 12 hotels, which would include the Jupiter Beach Resort, on the website.  [DE 290-13] at 19:23-20:1.

      G.  Plaintiff incorrectly suggests that Cliff Lazenby entered into a contract on TRS's behalf because he was given authority by Rich Ade "an OPL officer."  [DE 337] at 5. The Contract represents on its face indicates that he entered into it on behalf of TRS.  Plaintiff's citations to Mr. Lazenby's transcript, [DE 290-8] 225:2-17., 227:20-228:9, absolutely do not say that Mr. Lazenby was given authority by Rich Ade in a capacity as "an OPL officer."  Rich Ade is also the President of PCFSI, and Plaintiff's implication that Mr. Ade was acting as an officer of OPL while directing PCFSI employees' actions is flatly contradicted by the record. [DE 193] at ¶¶62,73.  No one ever testified in this case that Mr. Ade acted in his capacity as an OPL executive while fulfilling his duties at PCFSI.

      H.  Plaintiff continues to misstate the facts by stating that "Despite such reservations, OPL continued to use Oracle."  As OPL set forth in its motion for summary judgment, OPL does not own, operate, or manage the Resort.  The Resort has no centralized receipt generation with

4

any other hotel and generates all its own receipts through its own property management system ("PMS"). It is even more telling that the only hotel OPL does own and operate, the Delray Beach Marriott, does not use Opera because Marriott hotels use a proprietary PMS system pursuant to their franchise agreements. [DE 171-02] at CM/ECF p. 17. Pursuant to indisputable facts, OPL does not use Opera.

### III. OPL Objects to Plaintiff's Reliance on Incompetent Evidence

First, OPL objects to Plaintiff's reliance on the same news articles he used to survive the motion to dismiss. See, e.g., [DE 337] at 5 (citing "February 2016 news article"). Plaintiff did not submit the article with an affidavit or a declaration that the statements in the articles—not authored by any OPL employee—were sworn under penalty of perjury. The statements in these articles are pure hearsay, are not admissible, and will not permit Plaintiff to survive summary judgment absent a declaration, certification, or attestation sufficient to satisfy Rule 56(c)(4).

Second, OPL objects to Plaintiff's argument that prior argument of counsel is evidence. As Plaintiff has done before, Plaintiff puts emphasis on pleadings and argument of counsel, all of which are taken out of context, in an attempt to create an evidentiary record that Mr. Lazenby is employed by OPL. [DE 128, at 2]. His W-2 for years makes it clear he is not and never has been an OPL employee. Plaintiff ignores the fundamental tenet that "arguments and statements of counsel are not evidence." Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.), 482 F.3d 1118, 1122 n.1 (9th Cir. 2007). Further, and more importantly, "[a]rguments in pleadings and statements of counsel (or of pro se parties) are not evidence." In re Zapata, BAP CC-11-1184, 2012 WL 4466283, at *5 (B.A.P. 9th Cir. Sept. 28, 2012) (citing Runningeagle v. Ryan, 686 F.3d 758, 776 (9th Cir.2012), aff'd, 656 Fed. Appx. 357 (9th Cir. 2016). The statements referenced by Plaintiff, [DE 337] at 6, n.6, are only arguments at a hearing or statements in surrebuttal in support of a motion to dismiss taken out of context—they are not evidence. The undisputed (and conclusive) evidence in this case (including W-2s and sworn testimony) is that Cliff Lazenby is employed by and works only for PCFSI, not OPL.

### IV. There is No Genuine Issue of Fact On OPL's Liability

Plaintiff refuses to acknowledge that OPL is a legally distinct entity and that it is black-letter law that to reach a sister company and Plaintiff must pierce the corporate veil. Plaintiff does not even acknowledge OPL's argument or discuss Molinos Valle Del Cibao, C. por A. v.

5

Lama, 633 F.3d 1330, 1349 (11th Cir. 2011), or the other cases OPL cites. Instead, Plaintiff argues that OPL could be directly liable, OPL could be part of a common enterprise, or that OPL could be vicariously liable. And Plaintiff asks this Court to rely upon website evidence that was not created by OPL, is not recognizable by OPL's President, and was disputed factually by OPL's President in a sworn deposition.

**A.  Direct Liability**

First, OPL cannot be directly liable because there is no issue of fact as to Plaintiff's allegations. The case law is clear that to impose direct liability, OPL would have to be the Parent of Fee, TRS, and GHM which it clearly OPL is not.[5] OPL's "Statement of Material Facts" expressly sets forth each fact supported by competent summary judgment evidence that Plaintiff chose not to rebut. Even if this court were inclined to consider Plaintiff's facts despite their failure to comply with the rules, Plaintiff's argument as to why this Court should consider the website statements fails. Plaintiff pleads that this Court consider the website representations as "an admission by a party opponent." [DE 377] at 10. Plaintiff overlooks that the statements were not made by OPL or any defendant in this case—the website content was exclusively controlled and maintained by non-party PCFSI. Indeed, as set forth in OPL's Material Statement of Facts, OPL did not create and has absolutely no involvement in the operation of the "OPAL Collection." [DE 193] at ¶18. OPL does not have any input in the "Ocean Properties and Affiliates" or "OPAL" websites described in the Second Amended Complaint. [DE 193] at ¶ 12. The website domain is administered by PCFSI. [DE 166-03] at 19, ln.2. Unlike Plaintiff's citations to Plaintiff's website attachments to the Second Amended Complaint, which are interpreted based on argument of Plaintiff's counsel, OPL's citations are supported by declarations made under penalty of perjury and by depositions under oath. Cases are legion holding that a shared-marketing website, even if owned and run by OPL, would not create any liability for OPL for actions of the Resort or GHM. [DE 326] at 20-24.

---

[5] "Direct liability" as opposed to indirect liability presupposes a parent-subsidiary relationship. In re Managed Care Litig., 298 F. Supp. 2d 1259, 1309 (S.D. Fla. 2003) ("Direct liability is therefore imposed when the parent has 'forced the subsidiary to take the complained-of action in disregard of the subsidiary's distinct legal personality.'" (quoting Pearson v. Component Technology Corp., 247 F.3d 471 (3rd Cir.2001))); see also United States v. Bestfoods, 524 U.S. 51, 67-68 (1998) (clarifying distinction between direct and derivative liability). Here, there is no parent-subsidiary relationship between OPL and the owner, lessee, or manager of the Resort, nor is there a parent-subsidiary relationship between OPL and PCFSI.

Again, as exactly set forth in OPL's Statement of Material Facts: OPL does not have and has not had contracts to operate or manage any hotels other than the Delray Beach Marriott during the relevant time period (March 1, 2015, to present). [DE 130-05] at ¶13. OPL, its officers, and six (6) employees did not have any direct or indirect involvement in the FACTA violation alleged to have occurred at the Jupiter Beach Resort. [DE 193] at ¶35. OPL's employees have never worked at the Jupiter Beach Resort and did not hand the Plaintiff the folio alleged to violate FACTA in this case. [DE 193] at ¶35. The Jupiter Beach Resort's contract with Oracle was signed by Cliff Lazenby, who, according to the contract, signed on behalf of TRS. Jupiter's Oracle Contract [DE 99-01]. Cliff Lazenby works as an employee of PCFSI only and has never been an OPL employee. Declaration of Rich Ade [DE 130-5] at ¶7. Mr. Lazenby is paid by PCFSI. Lazenby W-2, [DE 130-5] at p.8. OPL was not a party (nor could it be) to the contract with Oracle for the instillation of the defective upgrade that purportedly caused the unmasking at the Jupiter Beach Resort. [DE 99-01].

The installation of the Defective Oracle Software at the Jupiter Beach Resort had nothing to do with OPL and was solely the result of actions by Oracle, with access to Jupiter's computers provided by PCFSI employees, who were supporting IT platforms at the Jupiter Beach Resort. [DE 193] at 69. PCFSI employee, Cliff Lazenby, at Oracle's urging, made the decision to allow the installation of the Defective Oracle Software at the Jupiter Beach Resort and the 11 Hotels. [DE 193] at ¶70. Neither OPL nor any of its shareholders or officers or directors (including Rich Ade in any capacity) participated in the decision to allow Oracle to install the Defective Software at the Jupiter Beach Resort had any knowledge that the Defective Oracle Software existed or was being installed anywhere. [DE 193] at ¶73. Plaintiff has presented no evidence that could show the legal entity OPL was involved in installing Oracle's upgrade, managing the Resort, or printing or delivering the purportedly defective folio.

**B.  Common Enterprise**

Plaintiff's reliance on other federal cases is this circuit and others is inapposite because holding one company liable for the acts of another company (to, in effect, set aside the doctrines of corporate separateness), is governed by Florida law. Plaintiff's reliance on an "enterprise theory" is problematic because an enterprise theory, as plaintiff describes it, is actually an alternative to federal veil-piercing under federal common law, not recognized as a theory creating liability for OPL under Florida law. In cases related to liability under 15 U.S.C. §1681,

7

*et seq.*, courts apply state law when determining whether to pierce the corporate veil. DeGraziano v. Verizon Communications, Inc., 325 F. Supp. 2d 238, 246 (E.D.N.Y. 2004) (applying New York corporate law); Hopkins v. Trans Union, L.L.C., 03-5433 ADM/RLE, 2004 WL 1854191, at *4 (D. Minn. Aug. 19, 2004) (applying Minnesota corporate law); Ditty v. CheckRite, Ltd., Inc., 973 F. Supp. 1320, 1336 (D. Utah 1997) (applying Utah corporate law); State Capital Title & Abstract Co. v. Pappas Bus. Services, LLC, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (applying New Jersey corporate law); Stich v. BAC Home Loans Servicing, LP, 10-CV-01106-CMA-MEH, 2011 WL 1135456, at *3 n.5 (D. Colo. Mar. 29, 2011) (applying Colorado corporate law). Plaintiff points to no cases that suggest 15 U.S.C. §1681, et seq., displaces the protections of state corporate law as has been the case in FTC and NLRB cases. This precludes any possibility that federal common law's "enterprise theory" (a theory not recognized by Florida courts) can displace Florida's strict corporate law requiring veil piercing in this case.

      Further, Florida corporate law controls this forum, not Georgia's, Nevada's, or Indiana's, or Illinois'. [DE 337] at 12 n.2 & 12-13 (citing cases, none of which apply Florida law); Garcia v. Kashi Co., 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014) (applying Florida law in veil piercing analysis); Oginsky v. Paragon Properties of Costa Rica LLC, 784 F. Supp. 2d 1353, 1373–74 (S.D. Fla. 2011) (applying Florida law in veil piercing analysis after choice of law analysis related to state corporate law). Even if there were a dispute on which state's law applied, the analysis would have required this Court to look to Florida' choice of law provision to determine which state's laws govern, which ultimately will point back to Florida law in this case. See Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) (holding Florida corporate law controls); In re World Vision Entm't, Inc., 275 B.R. 641, 661 (Bankr. M.D. Fla. 2002) (applying Florida's "most significant relationships" test to determine which state's veil piercing law applies and stating that "[t]he decision whether to pierce the corporate veil is a question of state law."). Again, Plaintiff's heavy reliance on Georgia law or any other cases applying other state's laws is unavailing.[6]

---

[6] Under the true facts of this case, Plaintiff really proposes double piercing. In traditional veil piercing, a party attempts to pierce the corporate veil in order to hold the corporate shareholders liable for the actions of the corporation. In re Friedlander Capital Mgmt. Corp., 411 B.R. 434, 440 (Bankr. S.D. Fla. 2009). Under reverse veil piercing, a party attempts to pierce the corporate veil in order to hold the corporation liable for the actions of the shareholders. Id. at

Even if some form of veil piercing could be asserted here, for veil piercing in Florida, Plaintiff would have to show that OPL formed or used TRS, FEE and GHM for fraud or an improper purpose. <u>Molinos Valle Del Cibao, C. por A. v. Lama</u>, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting <u>Gasparini v. Pordomingo</u>, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008)). And there is not a shred of evidence that would support fraud or improper purpose even if Plaintiff had alleged the theory.

Whether other jurisdictions applying other states' cases hold differently is irrelevant, and there has been no argument that federal common law displaces state law in this field. But even if Plaintiff could clear these hurdles, facts supporting a Federal common law piercing theories and an "enterprise" theory are not established here. OPL only has six employees, does not use Opera as its PMS system at the only hotel it manages (the Delray Beach Marriott), does not have commingled funds with the Jupiter Beach Resort, and did not direct the acquisition of the software or oversee or participate its defective upgrade in any way and was in no way involved in or directed a GHM employee to hand a receipt to Plaintiff. Stated plainly, even if "enterprise liability" could be a theory, OPL can never be considered part of any "enterprise" operating the Resort.

## C.  Vicarious Liability

For the first time, Plaintiff sheds light on the vicarious liability theory by defining the entity that is the principal (OpRock/GHM) that conferred authority on the agent (OPL). [DE 337] at 15 ("Under Plaintiff's vicarious liability theory, Oprock/GHM, as the entities owning and managing the Jupiter Beach Resort are the principals and OPL their agent."). Plaintiff's argument fails entirely because, for OPL to be liable, it would have had to commit an act (the agent can be liable for its acts whereas the principal is liable for the acts of the agent upon with the principal conferred authority). Plaintiff's theory is no different than his direct liability theory discussed above.

---

440-41.  Here, because OPL undisputedly committed no act or was involved in the Opera upgrade in any way, Plaintiff really seeks a "double pierce," meaning that the owners, officers, and directors of the Jupiter Beach Resort are liable (pierce 1) and that a "reverse pierce" occurs because OPL is liable (pierce 2) for the actions of its owners, officers, and directors they took in a non-OPL capacity.  Florida strongly protects the corporate form, and Plaintiff cannot pierce up to the Walshes and pierce again down to OPL absent veil piercing allegations in this jurisdiction.

Plaintiff adds in his paragraph beginning with "*First*" that that OPL (as the agent) could be liable for authorizing the principal (GHM) to implement a software upgrade. [DE 337] at 16. Certainly GHM did not need to confer authority on OPL for OPL to turn around and confer the authority back to GHM so that GHM could confer authority to PCFSI to upgrade the system. OPL's involvement is unnecessary and did not occur based on the undisputed facts in this case.

Plaintiff's paragraph beginning with "*Second*" argues that OPL may be held liable for the torts of GHM /OpRock when they act for the benefit of OPL in the scope of OPL's employment. [DE 337] at 16. Plaintiff's argument raises the question of whether Plaintiff's "reverse respondeat superior" theory holds water (Plaintiff is essentially arguing the employee would be liable for the torts of the employer). However, this Court need not address this issue because it is undisputed that OPL did not employ OpRock or GHM in any capacity (and neither employed OPL). As Mr. Ade points out, to do so would violate separateness covenants of (and cause a default in) a $295 Million Dollar note and mortgage.

Plaintiff's paragraph beginning with "*Finally*" argues that OPL could be liable to Plaintiff for holding out GHM/OpRock to third parties under an apparent authority theory if Bouton relied on the apparent authority. [DE 337] at 16. Plaintiff's argument fails legally and practically. First, in determining whether an apparent agency has arisen, the focus is on the principal's actions and communications to the third party, not the agent's. See, e.g., Sun Life Assurance Co. of Canada (U.S.) v. Imperial Holdings, Inc., No. 13-80385, 2014 WL 12452450, at *3 (S.D. Fla. Jun. 26, 2014); In re Brican Am. LLC Equip. Lease Litig., No. 10-md-02183, 2014 WL 250246, at *6 (S.D. Fla. Jan. 22, 2014). Thus, OPL's purported website representations (which are not OPL's) are irrelevant. Second, "Apparent agency exists where the alleged principal makes a manifestation that causes a third party to reasonably believe that the alleged agent had the authority to act for the benefit of the principal, and the third party reasonably acts on such belief to his detriment." Gayou v. Celebrity Cruises, Inc., No. 11–23359–CIV, 2012 WL 2049431, at *9 (S.D. Fla. June 5, 2012) (emphasis added); Suter v. Carnival Corp., 2007 A.M.C. 2564, 2573 (S.D. Fla. 2007) ("[T]o hold a principal liable for the acts of its purported agent under the doctrine of apparent authority, 'a party must show that, when dealing with the supposed agent, he [or she] has relied on the agent's authority in good faith, in the exercise of reasonable prudence.'" (quoting Wells Fargo Bus. Credit v. Ben Kozloff, Inc., 695 F.2d 940, 945 (5th Cir. 1982))). Absent reliance on the representation to his detriment, Plaintiff's reliance on apparent agency

fails. Third, considering that Plaintiff states that the principal is GHM/OpRock, and that OPL is the agent, an apparent authority theory would be unnecessary to bind GHM/OpRock with Plaintiff contractually (although, this is not a breach of contract case) because GHM/OpRock, as the principals in the scenario have actual authority to enter into a transaction. Moreover, even if he had alleged reliance (and even if he had alleged that OPL delivered the receipt), the theory would support holding the principal in the relationship liable, not OPL. <u>Flaherty v. Royal Caribbean Cruises, Ltd.</u>, 15-22295, 2015 WL 8227674, at *6 (S.D. Fla. Dec. 7, 2015).

It must be noted that OPL denies Plaintiff's unsupported statement that OPL "significantly advanced the FACTA violations using the GHM/OpRock Defendants' facilities and the Jupiter Beach name." [DE 337] at 17. The only evidence is that OPL had nothing at all to do with ownership or the operation of the Resort or GHM. There is no factual dispute as to Plaintiff's vicarious liability theory. No scenario presents even the possibility of vicarious liability and judgment is appropriate as a matter of law.

**V.  OPL Joins GHM's Reply in Support of GHM's Motion for Summary Judgment.**

Regardless of possible feigned corporate structure theories for OPL liability, it is clear that OPL did not act willfully or recklessly here and could not have. For the limited purpose of this argument, OPL adopts GHM's Reply as to how it could never have been willful or reckless in the issuance of the folio to Plaintiff.

Respectfully submitted this 10th day of October 2017.

                SHUTTS & BOWEN, LLP
                200 South Biscayne Boulevard
                Suite 4100
                Miami, Florida 33131
                Telephone: 305-347-7305
                Facsimile: 305-381-9982
                *Attorneys for Ocean Properties, Ltd. and GHM Jupiter, LLC*

                By: __s/ Jake Monk, Esq.__
                  Frank A. Zacherl
                  Florida Bar No. 868094
                  fzacherl@shutts.com
                  Jake Monk
                  Florida Bar No. 100321

jmonk@shutts.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Jake Monk, Esq.
*Counsel for Ocean Properties and GHM*

## SERVICE LIST

Keith Keogh
Michael R. Karnuth
Keogh Law, LTD
55 W. Monroe Street
Suite 3393
Chicago, IL 60603
312-726-1092
Keith@KeoghLaw.com
MKarnuth@KeoghLaw.com

Bret Leon Lusskin, Jr.,
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Suite 302
Aventura, FL 33180
954-454-5841
blusskin@lusskinlaw.com

Scott David Owens
Patrick Crotty
Sean Holas
Scott D. Owens, P.A.
3800 S. Ocean Drive

Suite 235
Hollywood, FL 33019
954-589-0588
scott@scottdowens.com
patrick@scottdowens.com
sean@scottdowens.com

Stuart I. Grossman, P.A.
Jason K. Kellogg, P.A.
Victoria J. Wilson, Esq.
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
Telephone:  (305) 403-8788
Facsimile:  (305) 403-8789
sig@lklsg.com
jk@lklsg.com
vjw@lklsg.com

MIADOCS 15464803 3